# In Re:

*FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, et al.*

*LARISA IVANOVNA MARKUS, et al.*

---

*April 6, 2020*

---

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*

Min-U-Script® with Word Index

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  FOREIGN ECONOMIC INDUSTRIAL BANK           Lead Case No.

8  LIMITED, "VNESHPROMBANK" LTD., AND         16-13534-mg

9  STATE CORPORATION "DEPOSIT INSURANCE

10 AGENCY",

11         Debtors.

12

13 - - - - - - - - - - - - - - - - - - - - -x

14 In the Matter of:

15 LARISA IVANOVNA MARKUS AND                 Main Case No.

16 YURI VLADIMIROVICH ROZHKOV,                19-10096-mg

17         Debtors.

18 - - - - - - - - - - - - - - - - - - - - -x

19 ROZHKOV,

20         Plaintiff,                         Adv. Proc. No.

21 v.                                         19-01413-mg

22 LARMAR FOUNDATION, et al.,

23         Defendants.

24 - - - - - - - - - - - - - - - - - - - - -x

25

1

2  YURI ROZHKOV AND THE STATE CORPORATION DEPOSIT INS,

3          Plaintiff,                      Adv. Proc. No.

4  v.                                      19-01414-mg

5  LARMAR FOUNDATION, et al.,

6          Defendants.

7  - - - - - - - - - - - - - - - - - - - -x

8

9          United States Bankruptcy Court

10         One Bowling Green

11         New York, New York

12

13         April 6, 2020

14         10:00 AM

15

16

17

18  B E F O R E:

19  HON. MARTIN GLENN

20  U.S. BANKRUPTCY JUDGE

21

22

23

24

25

1

2    16-13534-mg Foreign Economic Industrial Bank Limited, "Vn and

3    State Corporation "Deposit Insurance Agency &q Ch. 15

4    Doc #194 Case Management Conference.

5

6    19-10096-mg Larisa Ivanovna Markus and Yuri Vladimirovich

7    Rozhkov  Ch. 15

8    Doc# 247 Case Management Conference.

9

10   Adversary proceeding: 19-01413-mg Rozhkov v. LARMAR Foundation

11   et al

12   Doc# 10 Case Management Conference.

13

14   16-13534-mg Foreign Economic Industrial Bank Limited, "Vn and

15   State Corporation "Deposit Insurance Agency&q

16   Adversary proceeding: 19-01414-mg Yuri Rozhkov and The State

17   Corporation Deposit Ins. v. LARMAR Foundation et al

18    Doc# 10 Case Management Conference

19

20   Transcribed by:  Linda Ferrara

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24   (973)406-2250

25   operations@escribers.net

**4**

1
2   A P P E A R A N C E S:

3   MARKS & SOKOLOV LLC

4          Attorneys for Debtor

5          1835 Market Street

6          17th Floor

7          Philadelphia, PA 19103

8

9   BY:   BRUCE S. MARKS, ESQ. (TELEPHONICALLY)

10          NINA KHAN, ESQ. (TELEPHONICALLY)

11

12

13   THE LAW OFFICE OF DANIEL A. SINGER PLLC

14          Attorneys for Protax Entities and the LM Entities

15          630 3rd Avenue

16          18th Floor

17          New York, NY 10017

18

19   BY:   DANIEL A. SINGER, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

1

2    LAW OFFICE OF VICTOR A. WORMS

3          Attorney for Larisa Markus

4          65 Broadway

5          Suite 750

6          New York, NY 10006

7

8    BY:    VICTOR A. WORMS, ESQ. (TELEPHONICALLY)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           P R O C E E D I N G S

2             THE COURT:  All right.  This is Judge Glenn.  We're

3    here in two Chapter 15 cases, Foreign Economic Bank Limited,

4    16-13534, and Larisa Markus, 19-10096, and in two adversary

5    proceedings, Rozhkov v. LARMAR, et al., 19-01413, and 19-01414.

6             May I have the appearances of counsel please?  First

7    for the Foreign representatives?

8             MR. MARKS:  Your Honor, this is Bruce Marks.  I

9    represent the Deposit Insurance Agency, as a foreign

10   representative for  Vneshprombank, and I represent Mr. Rozhkov

11   as the trustee for Ms. Markus.

12            I believe on the line we have Nina Khan of my office,

13   and I'm hopeful that Sergey Sokolov of our Moscow office is

14   also on the line.

15            THE COURT:  Yes, I see that he's joined, as well.  All

16   right.

17            And for Mr. Worms, and Mr. Singer, could you make your

18   appearances please?  First Mr. Singer?

19            MR. SINGER:  -- Protax entities.

20            THE COURT:  Mr. Singer, I couldn't hear you.

21            MR. SINGER:  Hello?

22            THE COURT:  Could you make your appearance again?

23            MR. SINGER:  Yes.

24            THE COURT:  Yes, go ahead.

25            MR. SINGER:  Daniel Singer.  I'm here for what is

1  commonly referred to as the LM Entities, and the Protax

2  Entities.

3          THE COURT:  Okay.

4          MR. WORMS:  Hello?

5          THE COURT:  Mr. Worms?  Mr. Worms, are you there?

6          MR. WORMS:  -- 15 proceedings.

7          THE COURT:  I'm sorry, I couldn't hear.

8          MR. WORMS:  Hello?

9          THE COURT:  Mr. Worms, could you make your appearance

10 again?

11         MR. WORMS:  Yes.  Yes, Your Honor.

12         THE COURT:  Yes, go ahead.  Make your appearance.

13         MR. WORMS:  Victor A. Worms appearing for the debtor,

14 Larisa Markus, and the bank, but only in reference to the

15 Chapter 15 proceeding, only the Chapter 15 proceeding, Your

16 Honor.

17         THE COURT:  Did you not file an appearance in the

18 adversary proceedings?

19         MR. WORMS:  I -- I'm not -- no, Your Honor, and I made

20 it clear to Mr. Marks in a written submission that I would not

21 be appearing for -- in the adversary proceeding.  I was not

22 retained, and I have no authority or --

23         THE COURT:  Okay.

24         MR. WORMS:  -- authorization to act in connection with

25 the adversary proceedings, Your Honor.

1        THE COURT:  All right.  That's fine.  Thank you very

2   much, Mr. Worms.

3        All right.  The case -- the cases, plural, are

4   scheduled for case management conferences today.  I had

5   previously ordered that status reports be filed, and I received

6   three that I've reviewed.  I have Mr. Marks' April 2, 2020

7   letter in both Chapter 15 cases.  I have from that same date,

8   April 2, I have Mr. Singer's letter regarding all of those

9   cases, and then today, there was an additional filing by Mr.

10  Singer, April 6th, 2020 letter from Mr. Singer with further

11  information.  So I've reviewed all of those.

12       Let me -- I think both Mr. Marks' letter, and Mr.

13  Singer's letter, long letter, first request that discovery

14  continue to be stayed.  There's a disagreement whether that

15  should be for four weeks or six weeks, 30 days that Mr. Marks

16  has asked for in his April 2 letter, 30 days while settlement

17  discussions go on, and Mr. Singer's April 2 letter asked for a

18  longer period than that.

19       First, Mr. Marks, is there any update that you wish to

20  make other than what's included in your April 2 letter?

21       MR. MARKS:  Well, Your Honor, on Friday, as the Court

22  may or may not know, Judge Liman essentially affirmed the

23  sanctions order and the fees order, he affirmed for the most

24  part, and then remanded two issues for Your Honor which we're

25  prepared to discuss today, and we only got the decision, a

 1  50-some page decision late in the afternoon on Friday, so we

 2  did not -- have not submitted that yet to the Court.

 3          MR. WORMS:  Your Honor?

 4          THE COURT:  And I did receive the opinion -- hold on,

 5  Mr. Worms.  I did receive and review Judge Liman's decision, so

 6  it is a lengthy opinion.  I want to review it further, but I

 7  will do that.

 8          Mr. Marks, is there anything else that you want to

 9  update the Court on?

10          MR. MARKS:  Well, we do want to proceed, Your Honor,

11  before Your Honor on the issues for remand.  I'm prepared to

12  discuss our thinking on that now, or we can do that at some

13  later time after Your Honor has had a chance to review the

14  opinion.

15          MR. WORMS:  May I respond briefly, Your Honor?

16          THE COURT:  We'll come -- we will talk about that.

17  No, just wait a second, Mr. Worms.  We will discuss further

18  proceedings in light of the remand from Judge Liman.  We'll

19  come to that a little later in the hearing.

20          Other than the issue of sanctions against Mr. Worms,

21  are there any other issues that you wish to update, Mr. Marks?

22          MR. MARKS:  No, I think our letter of April 2nd lays

23  out what we think the Court asked us to do.  I don't see a need

24  to rebut Mr. Singer's letter.  We could just proceed as Your

25  Honor sees fit.

1          THE COURT:  Okay.  Mr. Singer, is there anything you

2    wish to update further?

3          MR. SINGER:  No, I think there's no update on

4    settlement.  I mean, I am waiting for Mr. Heinz's (ph.) review

5    of the agreement as I said in my letter, and again if something

6    comes up that I feel I need to respond to in addition, I will

7    do so.

8          I mean, I didn't want to go into tremendous detail

9    about restrictions that would be in place regardless for doing

10   discovery at this time.  I think to a large extent, that's

11   obvious to everybody, but if it becomes necessary, I'll

12   elaborate more on that and other details as it becomes

13   necessary in this phone call.

14         THE COURT:  Okay.  Mr. Worms, what did you want to

15   add?

16         MR. WORMS:  A few things, Your Honor.  With respect to

17   the district court's decision, it specifically found that the

18   bankruptcy court held me in criminal contempt, and it vacated

19   that portion that --

20         THE COURT:  No, it didn't.  No.

21         MR. WORMS:  I'm sorry, Judge?

22         THE COURT:  Go ahead.  No, go ahead.  Go ahead, Mr.

23   Worms.

24         MR. WORMS:  Yes, Judge, because I had a chance to

25   read, and reread the district court's decision.  So one, it

1    found that I was held in criminal contempt in violation of my

2    constitutional rights by the bankruptcy court.  It also found

3    that the bankruptcy court could not impose sanctions on me

4    under Rule 37 of the Federal Rules of Civil Procedure.  What it

5    did do is remand to determine to the extent which the Court

6    could act pursuant to its inherent authority, which as the

7    Court knows, is a much more circumscribed scope because this is

8    not an Article III court.

9         I have today filed an appeal with the Second Circuit

10    of Judge Liman's decision, specifically relating to the issues

11    of the inherent authority, although the nature of the appeal is

12    much broader in scope but the central point, Your Honor, and

13    it's going to become central when we get to the Second Circuit,

14    is the scope of an Article I court is it -- co-extensive with

15    an Article III court, in respect to inherent authority.

16         So Mr. Marks' statement that the Court essentially

17    affirmed, is not a fair statement because it was a specific

18    finding by the district court that I was held in criminal

19    contempt in violation of my due process right, and furthermore

20    that the predicate which Mr. Marks argued for his legal fees

21    which is Rule 37, does not apply to me because I'm a nonparty,

22    and Rule 37 only applies to parties, which I'm not.

23         So I am not going to waste the Court's time going over

24    all the details of Judge -- the district court's decision.  I

25    just wanted to highlight those two portions as being fairly

1  salient, and also to advise the Court that I did file a notice

2  of appeal with the Second Circuit today.

3          THE COURT:  All right.  I disagree with a lot of what

4  you've said but now is not the time to deal with it, other than

5  one point.  Judge Liman remanded the matter to me, and

6  consequently I do not believe there's a final decision

7  appealable to the Second Circuit, but you'll have to deal with

8  the Second Circuit about that.

9          In any event, I conclude that the matter has been

10  remanded to me and that I have jurisdiction over it, and will

11  go forward on remand from Judge Liman.

12          I think your recitation of the portion of his decision

13  with respect to contempt is entirely inaccurate.

14          MR. WORMS:  Judge --

15          THE COURT:  And so, I am going to schedule -- no,

16  stop, do not interrupt -- I'm going to schedule further

17  proceedings with respect to the remand from Judge Liman.

18          You also have a motion to withdraw that's pending, Mr.

19  Worms.  I will not deal with the motion to withdraw -- for you

20  to withdraw as counsel until the sanctions issues have been

21  resolved by me.  So we're going to -- let me say right now,

22  your motion to withdraw is denied without prejudice.  I will

23  schedule further proceedings on remand from the district court.

24  I do not believe that it is appealable to the Second Circuit.

25  If you think that I am improperly going forward with matters

1   before me on remand, you'll have to take that up either with

2   Judge Liman or with the Second Circuit.  We will come out of

3   today's hearing with a schedule to go forward on the issues as

4   to which Judge Liman has remanded the matter.

5           MR. WORMS:  All right.

6           THE COURT:  I do have --

7           MR. WORMS:  I do have on -- one point, Your Honor --

8           THE COURT:  -- some other questions, let me deal with

9   right now.

10          No, not yet, Mr. Worms.  I will tell you when you may

11  speak.

12          One of the other issues that I do want to raise, a

13  question that I want Mr. Worms to address is the other matters

14  that are currently on appeal in the district court that I

15  believe were on appeal before different judges.

16          Mr. Marks' April 2nd letter on pages 5 -- on page 5,

17  he has a chart on pending appeals.  The sanctions order, and

18  the attorney's fee order were both pending before Judge Liman,

19  and he issued his ruling and remanded the matter, but it

20  doesn't address the three, four, five, and six in the chart on

21  page 5 of Mr. Marks' April 2nd letter.

22          And Mr. Worms, are you counsel on those appeals?  I

23  believe you were the one who appealed the turnover order in the

24  Markus case.  I believe you appealed.  That's items three and

25  four in Mr. Marks' letter, and it lists two other matters, as

1   well, as to which appeals are pending.

2          Mr. Worms, can you tell me what other appeals do you

3   have pending in the district court before different district

4   judges?

5          MR. WORMS:  Sure, Your Honor.  I only have one appeal,

6   and that is the appeal of the turnover order.  That is before

7   Judge Torres.  I have already, and on a timely basis, submitted

8   my appellate brief.  There have been a series of extensions and

9   adjournments requested and granted at the request of both Mr.

10  Marks, who is -- I think he's taken two extensions already, and

11  Mr. Singer also has a separate appeal before a separate judge

12  on the turnover order.  I believe he's taken three extensions.

13  So I'm the only one who filed a brief timely, Judge, and has

14  not taken an extension yet.

15         THE COURT:  All right.  Mr. Singer, do you have -- are

16  your appeals pending before different judges or also before

17  Judge Torres?

18         MR. SINGER:  There's two different appeals.  One is

19  the turnover order which is before Judge Torres, and the other

20  one is discovery before -- his name is escaping me now,

21  Judge -- Judge Woods, Gregory Woods, and if Mr. Worms is

22  correct, we have sought extensions from Judge Torres.  One is

23  still pending.  I haven't received a response.  Frankly, I

24  assume it's granted at this point because it's past the time,

25  and we -- on consent.  We have another one before Judge Woods

1  where discovery, which I will be -- discuss this with Mr. Marks

2  outside of this conference, but I will be filing an extension

3  for that, as well.

4          And this is -- there's two issues -- I don't want

5  to -- it's already in letters I've submitted to the Court, so I

6  don't waste the Court's time.  I mean, there's two issues for

7  this extension.  One has been settlement, and the other one has

8  been the coronavirus issue, which I am sure everybody's very

9  familiar with.  So I don't want to waste the Court's time on

10 that, but that's effectively the status at this point.

11         MR. MARKS:  Judge, it's Mr. Marks.  I'm back.  I hit

12 the --

13         THE COURT:  Yes.

14         MR. MARKS:  I meant to hit the -- sorry about that, I

15 hit the wrong button.

16         THE COURT:  Go ahead.  Do you want to address the

17 issue of the still pending appeals?

18         MR. MARKS:  Yeah, what Mr. Worms said, Your Honor, was

19 partly correct but partly not quite correct.  Both Ms. Markus

20 and the LM, Protax Entities filed appeals of the turnover

21 order.  So they are -- the appeals are now both before Judge

22 Torres, and as Mr. Worms stated, he did file his appellate's

23 brief on time.

24         Mr. Worms opposed consolidating the two appeals, even

25 though they concern the same order and essentially the same

1    issues, and then Mr. Singer began to ask for extensions.

2            Our position was that we wanted to file a consolidated

3    brief that would respond to both Mr. Worms' appeal, and Mr.

4    Singer's appeal.  So each time Mr. Singer asked for an

5    extension, we asked for a similar extension, so that we would

6    be able to coordinate the filing of one response to both

7    appeals. So that's why that has been delayed.

8            Mr. Singer, I believe, requested three extensions.  He

9    just requested one recently that the Court hasn't ruled on.  I

10   don't think it's ruled on it, but I think we assumed that it

11   would be granted because of the situation.  So as soon as Mr.

12   Singer files his brief, it's our intent to file one brief, file

13   it in -- well, one copy in one case, one copy in the other

14   case, so that Judge Torres can rule.

15           Alternatively, we're ready to -- at this point because

16   of the delay, we're ready to file our brief in response to Mr.

17   Worms' appeal, and we'll deal with Mr. Singer's appeal as it

18   comes fit.

19           And on the discovery --

20           THE COURT:  Am I correct that Judge -- no, wait just a

21   second.  Am I correct that Judge Torres denied a stay of the

22   turnover order?

23           MR. MARKS:  I don't believe that -- I'm -- I don't

24   recall.

25           MR. WORMS:  Can I interject, Your Honor?

1    THE COURT:  I believe remember reading the copy of --

2    just a second -- I believe I recall, maybe it's I'm mistaken

3    about this but I think that Mr. Worms had sought a stay of the

4    turnover order in the Judge Torres, in an order entered on the

5    docket, denied that motion.  Am I incorrect about that?

6    MR. WORMS:  Judge, let me respond to that, if I might?

7    There was a motion --

8    THE COURT:  Go ahead, Mr. Worms.

9    MR. WORMS:  Thank you, Your Honor.  There was a motion

10    made prior to the transfer of the monies from Mr. Singer's

11    account to have a stay of the Court's order because the Court's

12    order directed Mr. Singer to transfer the money to the account

13    of the foreign representative's counsel.  So that motion for a

14    stay of that transfer, that was what was denied, Judge, and the

15    money was subsequently --

16    THE COURT:  Thank you, Mr. Worms.

17    MR. WORMS:  -- transferred to Mr. Marks's account, as

18    I understand it.

19    MR. SINGER:  And I'll just agree that --

20    THE COURT:  Okay.

21    MR. SINGER:  -- because I was the one doing the

22    transferring, I will say it was transferred as I had set forth

23    in my letter before --

24    THE COURT: Just stop for a second.  Hold on, Mr.

25    Singer.  Mr. Singer, I should've said this at the start.  So

1   with our hearing today, and actually with all of the telephone

2   hearings that the Court is conducting, we're using Court

3   Solutions, which you're all called into.  The hearing is being

4   recorded by Court Solutions.  At the end of each day, they

5   email MP3 files to the Court, and if anyone wishes to order a

6   transcript, they may do so in the normal manner from the Court.

7   So the Court will have the MP3 files.

8          One of the things that's very important with all of

9   our telephone hearings is that before each of you speaks, you

10  identify yourself on the record, so it can be clear who was

11  speaking.

12         Mr. Singer, you had started to speak without

13  identifying yourself.  So that's just a reminder to everybody.

14  It's sometimes a little hard to remember that but before each

15  of you responds to any questions or addresses anything to the

16  Court, even though it may seem repetitive, you need to

17  specifically identify yourself for the record.  I should've

18  said that earlier.  Okay.

19         MR. SINGER:  So my apologies, Your Honor.

20         THE COURT:  All right.

21         MR. SINGER:  Sorry.  May I speak?

22         THE COURT:  Quite all right -- quite all right.

23         MR. SINGER:  With that understanding, may I speak?

24         THE COURT:  Yes, go ahead.

25         MR. SINGER:  Okay.  So I just was saying briefly,

1   so -- and I set forth in my April 2nd letter, the transfers

2   were made timely, in fact, slightly ahead of time with -- from

3   my account, and also from the 550 Park Avenue account, and it's

4   our position was that was the end of the turnover, and

5   regardless -- and there was no -- and as far as my

6   recollection, though I haven't reviewed the document, as Mr.

7   Worms stated, was that the turnover was denied -- I mean, the

8   stay was denied, and that's why the transfers went forward.

9          THE COURT:  All right.  From reading the

10   correspondence from Mr. Marks and Mr. Singer, it does appear to

11   me that there remains a dispute about the scope of the turnover

12   obligations by Mr. Singer, or Mr. Singer's clients.  I'm not

13   going to resolve those today.  I certainly agree to putting

14   further litigation on hold for 30 days while the parties try

15   and complete a settlement.

16          Let me make a couple of comments here.  So with

17   respect to any property that remains subject to dispute with

18   respect to the turnover order, I think there are a couple of

19   issues that clearly arise.  The recognition order in the Markus

20   case was entered on April 1, 2019, and it's ECF docket number

21   29.

22          With respect to the separate freeze order that Judge

23   Vyskocil had entered, I didn't note the ECF docket number but

24   the order was entered in 2019.  Mr. Marks, in his

25   correspondence certainly has taken the position that any

1  transfers made of property of the debtor after the recognition

2  order on April 1, 2019 is void, again I'm not ruling today, I'm

3  just noting the position taken by Mr. Marks with respect to the

4  recognition order, and I think in my turnover order, I

5  specifically recognize -- I think I specifically recognized,

6  and did state that any transfer would be void after the -- and

7  I'm not altering what I've already ruled, so that certainly

8  raises questions that may have to be further addressed in

9  subsequent decisions.

10          With respect to the issue about any fees that were

11  paid to -- and I think this specifically focuses on Mr. Singer

12  for now because that's what's addressed in the correspondence,

13  but it could equally relate to fees paid to Mr. Worms after the

14  date of the recognition order.  The automatic stay is triggered

15  upon recognition.

16          I would call to -- with respect to attorney's fees, I

17  would call to counsel's attention the decision in the Southern

18  District of New York in SEC v. Princeton Economic

19  International, Ltd., 84 F.Supp 2d 443 (S.D.N.Y. 2000).  It was

20  an opinion that Judge Richard Owen, who has since passed away

21  but he specifically ordered a turnover of funds that had been

22  paid to attorneys and I won't further go into an analysis of

23  the opinion.  If the issues -- I raise that now because there's

24  obviously a dispute between certainly Mr. Singer and Mr. Marks

25  as to whether or not fees that were paid to counsel would have

1    to be turned over.  And in this SEC v. Princeton Economics

2    International, Ltd., that is certainly an issue that Judge Owen

3    addressed in his written opinion.  He also -- he cites other

4    cases, including a decision by then District Judge Denny Chin,

5    who is now a judge on the Second Circuit in another case.

6           So I just call that opinion to counsel's attention, if

7    the Court -- if it's necessary to have further proceedings with

8    respect to the payment of attorney's fees, that -- or any fees

9    that were certainly paid after the recognition order, and

10   we'll -- I'm not going to deal with that today, other than to

11   point out that decision, and note the difference of opinion.

12          So to be clear, and I would ask Mr. Marks to prepare a

13   proposed order.  I really want to avoid any issues about what

14   the Court's ruling, et cetera.  So prepare a proposed order

15   that provides a thirty-day stay on discovery, and other

16   litigation deadlines in the cases, and this would apply to both

17   the Chapter 15 cases and the two adversary proceedings.

18          And I'm going to require written status reports --

19   obviously, I don't want to know the details of the settlement

20   positions of the parties, but certainly do want to know whether

21   a settlement is reached.  So I am going to require written

22   status reports on or before Friday, May 7, 2020, at 5 p.m., or

23   sooner if a settlement has been reached.

24          And let me -- I do want to ask, the only thing I want

25   to ask about the settlement problem, and I want to address this

1   to Mr. Marks, in Mr. Singer's letter, he indicates that Dentons

2   is counsel for the foreign representatives with respect to

3   pursuing the settlements, and is that accurate, Mr. Marks?

4            MR. MARKS:  It is accurate, Your Honor, that there's

5   an attorney from Dentons' office in Moscow, although he might

6   be outside Moscow now, has been the drafter of the settlement

7   agreement, and he has had I think two conference calls with Mr.

8   Singer, one most recently.  However, it's not accurate to say

9   that we're not in -- well, while he's the drafter of it, our

10  law firm is involved with the settlement. We're aware of the

11  outstanding issues.  We're aware of the current draft.  There's

12  been delays.  I'm not going to lay blame on anybody.  I don't

13  think that helps the Court, but as we sit here today, there's

14  no settlement.  There's still substantial issues that are out

15  there, and our client instructed us that we should be given

16  another 30 days, and if there's no settlement, then they want

17  to go forward.

18           MR. SINGER:  Your Honor, this is Daniel Singer.  May I

19  respond --

20           THE COURT:  Okay.

21           MR. SINGER:  May I respond?

22           THE COURT:  So what I would ask is -- go ahead, Mr.

23  Singer.  Go ahead.

24           MR. SINGER:  So I differ with Mr. Marks, and again

25  I've been primarily involved in this, there aren't any

1   substantive issues that are still at sync (ph.).  What are at

2   issue at this point are mechanical issues, and it was an

3   extremely productive conversation that was had last Monday.

4   The complication had arisen, how to get -- certain

5   misunderstandings of how things worked here versus in Russia,

6   and I think we largely resolved a lot of those, and where we

7   left it with Mr. Hinds was he was going to consult with his

8   client, and get me a redraft, but it's not really substantive

9   issues, they're mechanical, and I think that I just want to be

10  clear on that.  So you know, that's the differing point with

11  Mr. Marks.

12          THE COURT:  Okay.  I don't want to -- thank you very

13  much, Mr. Singer, and it's not my intention to inject myself

14  into any of the settlement discussions as I may have to be a

15  finder of fact with respect to disputed issues of fact in the

16  case.

17          Mr. Singer, in your letter you raised the issue about

18  mediation.  The issue gets complicated here because this is a

19  multi-jurisdiction, multi-country series of issues.  What I

20  would say is is that if counsel agree, and certainly mediation

21  can be helpful in many matters, and you can also -- you

22  obviously can agree consensually upon a mediator.

23          I guess the one thing I want to make clear today is

24  that I am agreeing to a 30-day pause in litigation while

25  efforts to reach a settlement are ongoing.

1    Mr. Marks, I want you and Mr. Singer to confer by
2  telephone over the next few days to work on a proposed schedule
3  that would kick in, if no settlement is reached within the
4  thirty-day period.

5    I recognize that the COVID-19 pandemic creates
6  difficulties for the Court, and for all counsel, and I'm very
7  mindful of that.  I do think that despite the pandemic and the
8  difficulties it presents, that there are many things that can
9  move forward if the litigation has to move forward.

10    For example, there's still not been an answer filed.
11  There's no reason that that can't happen.  And with respect to
12  discovery, some things become more difficult, others there's no
13  reason that they can't go ahead.

14    So Mr. Singer, and Mr. Marks, you do need to confer by
15  telephone, and try and reach agreement on a schedule that would
16  go forward starting in thirty days if no settlement is reached.
17  I've indicated that I want the written status reports by 5 p.m.
18  Friday, May 7th, or sooner if there is a settlement reached,
19  but otherwise it's going to be necessary to move forward.

20    With respect to the turnover disputes, and I -- from
21  reading Mr. Singer's letter, it appears that a substantial
22  amount of funds have been turned over, but it's obvious from
23  reading the correspondence, that there remains a dispute about
24  whether there are additional funds or assets that are required
25  to be turned over.

1        So let me ask Mr. Marks first.  One of the things --

2   you know, under current circumstances, I'm certainly prepared

3   to pause litigation over the turnover of funds that have not

4   yet been turned over that Mr. Marks, his view is it has to be

5   turned over, and Mr. Singer's view, it doesn't, but my concern

6   is there is either -- whether there is a freeze order or other

7   order in place that would prevent a further transfer of funds

8   that Mr. Marks contends should be turned over.

9        What I don't want -- what I want to be sure of is,

10  I'll agree to pause litigation about turnover of funds if the

11  pause is not used as a basis for any other transfers, whether

12  it's out of attorney trust accounts or otherwise.  Mr. Marks'

13  position about what are the consequences of the revocation of

14  the LM Trust, what are the consequences of the recognition

15  order.  I've pointed out to everybody the Princeton Economics

16  decision by Judge Owen.  I just want to be sure that if the

17  litigation is paused, that the foreign representative is not

18  disadvantaged because further action to remove funds from this

19  jurisdiction or from recovery by the foreign representative

20  occur.

21       Mr. Marks, do you want to address that first?

22       MR. MARKS:  Your Honor, this is Mr. Marks, and I

23  appreciate the opportunity.  It is something that we are

24  concerned about, and in a nutshell, the focus on the money is

25  that there was approximately 1.3 million dollars that was --

FOREIGN ECONOMIC INDUSTRIAL BANK; LARISA IVANOVNA MARKUS   26

1   the difference between the money that came from England, which

2   I'll just -- this is on page 6 of my letter, Your Honor, 5.38

3   million dollars came from the sale of Ms. Markus's property in

4   England.  Of that, 1.3 million dollars has not been transferred

5   to us because it was paid out to various people, including the

6   Protax Entities.  That is -- those proceeds were Ms. Markus's

7   property, and Mr. Bykov has directed after April 1st, 1.378

8   million of that to go to part himself, and in part to lawyers

9   and other people, and we want to recover that, and we think

10  that that falls within your turnover order because it was

11  property of Ms. Markus.

12          So we know that Mr. Bykov also received a substantial

13  amount of money from the sale of Ms. Markus's property in

14  London, which he arranged to have paid to BG Atlantic, which we

15  think is -- which is an entity which we believe that he

16  controls, and we think that there should be some assurance by

17  Mr. Bykov that he's retaining the 1.3 million dollars someplace

18  in the United States, so that it's not being dissipated.

19  That's our concern because there's a history, unfortunately, of

20  dissipation in this case.

21          THE COURT:  Okay.  Let me just -- and I've opened --

22  Mr. Marks, I've opened your letter to page 6 and --

23          MR. MARKS:  Yes.

24          THE COURT:  -- under turnover dispute with Bykov, it

25  indicates $1,378,420.92 --

1        MR. MARKS:  Right.

2        THE COURT:  -- and listed as Markus -- you paid

3    proceeds disbursed from LM Trust account.  Is it your belief

4    that those funds, at least were after the recognition order, in

5    accounts in the United States?

6        MR. MARKS:  No doubt about it.  They were transferred

7    after April 1st -- Your Honor, they were transferred, I believe

8    on March 29th, so therefore they were in the account, and they

9    had not been transferred out of the LM account as of April 1st.

10       THE COURT:  Okay.  Mr. Singer, are those funds still

11   present in the United States?

12       MR. SINGER:  The 1.3 million dollars, it's a

13   multi-tiered question.  I mean, no, by Mr. Marks's own

14   correspondence, I mean, a lot of this money has been spent in

15   the ordinary course of business.  So it's not in the United

16   States.  There is some money that has been frozen.  Right now,

17   there's 231,000 dollars in my escrow account.  As you recall,

18   Your Honor, some accounts were closed, okay, and there's

19   231,000 dollars in my escrow account for this.

20       Some of that money, I indicated in one of my -- in Mr.

21   Bykov's affidavit to the motion that about 36,000 dollars in

22   the LM -- and of that money had been frozen out of an abundance

23   of caution because that constituted monies that had been

24   transferred from the sale of the proceeds.  So within that

25   money that has been the "frozen", that 36,000 dollars.

1        I believe that -- and this is something we need to

2   confirm, I believe that Protax itself also had frozen some

3   monies after the freezing order went into effect based on the

4   freezing order.  I'd have to confirm the exact amount of that.

5   I wasn't actually involved in that, counseling at that point.

6   Rosenberg & Estis was dealing with that at that point.

7        So I think that there's some freeze -- I mean, there's

8   some monies there.  As far as the money that was paid to me

9   goes, that money has -- it was incurred even -- most -- almost

10  all of it was incurred prior to the freeze order going into

11  effect, and the remainder was incurred in -- that money doesn't

12  exist at this point.  So that's why I can say about how much

13  money is frozen at this time.

14       THE COURT:  Mr. Marks, you and Mr. Singer need to

15  discuss this issue further.  As I say, I'm certainly prepared

16  to pause the litigation for thirty days but in doing so, I'm

17  only willing to do that so long as funds as to which the

18  foreign representative claims the turnover was required, are

19  not further transferred or dissipated.

20       So Mr. Marks, you need to try and see if you can reach

21  an agreement with Mr. Singer.  It may require that he obtain

22  the information about what funds are where, et cetera.  If -- I

23  mean, I think that a pause in litigation is appropriate, so

24  long as the foreign representative is not further disadvantaged

25  by any further transfer of funds.  To the extent funds have

FOREIGN ECONOMIC INDUSTRIAL BANK; LARISA IVANOVNA MARKUS   29

1  been transferred properly or improperly in the past, the
2  foreign representative certainly may well have his rights as to
3  going after whatever parties received those funds, as to
4  whether they can be recovered, but the one thing that I want to
5  be crystal clear about is that a pause cannot be used as a
6  justification for any further transfer of funds that are
7  subject to the automatic stay because of recognition, because
8  they were Larisa Markus' property.

9          So as I say, I'm happy to agree to a thirty-day pause
10  in litigation but not insofar as it would further disadvantage
11  the foreign representatives.  So Mr. Marks, and Mr. Singer, now
12  is not the time for me to resolve it.  You need to see whether
13  you can come to an agreement about it.  If you can't, and if
14  Mr. Marks, you wish to proceed in some fashion to either freeze
15  funds, or obtain the turnover of funds, please notify the Court
16  in a letter, and we'll promptly schedule further proceedings to
17  the extent necessary.

18          MR. MARKS:  Your Honor, this is Mr. Marks.

19          THE COURT:  Mr. Marks, do you want to comment further,
20  and then I'll give Mr. Singer a chance.  Go ahead.

21          MR. MARKS:  Yeah, I do, Your Honor.  Your Honor, I
22  appreciate your flagging this.  It is an area of concern At
23  this -- we, I guess delayed pursuing this because of the
24  settlement but we don't want there to be the risk of further
25  harm.

1        The only thing, Your Honor, I would add is when -- if

2    we need to move forward with this which we can, it's not

3    difficult for us to file another turnover motion directed at

4    the 1.3 million, but we would most likely want to take a short

5    deposition of Mr. Bykov.  It would probably be two to three

6    hours.  It would only be focused on the issue of the funds that

7    would be subject to the turnover.  I don't think that it would

8    require the production of many documents, so there would be no

9    need for people to go in their offices.  Most documents are

10    electronic anyhow, but I just do want to flag that one issue

11    for the Court because we would want to get Mr. Bykov's

12    testimony because as Your Honor knows, we did have some issues

13    before where amended tax returns were filed on the eve of the

14    turnover hearing, and we don't want to see something like that

15    happen again.

16        THE COURT:  Mr. Marks, are you still there?

17        MR. MARKS:  Yes, Your Honor.

18        MR. SINGER:  This is Mr. Singer.  May I respond?

19        THE COURT:  Mr. Marks, are you there?

20        MR. MARKS:  Yes, yes, Judge.

21        THE COURT:  Hang on.  No, let me -- one of the

22    issues –

23        MR. MARKS:  I'm here.

24        THE COURT:  Yeah, let me finish, and then I'm going to

25    ask Mr. Marks to continue, and then I will give Mr. Singer a

1   chance to respond.  One of the issues about the technology, I

2   have you connected through my computer, and it went to sleep,

3   and the result was that Mr. Marks, you sort of cut off in the

4   middle of your remarks.  It may well have been recorded but

5   just so that I have the benefit of it, I would ask you to

6   repeat it, and then Mr. Singer, I absolutely will give you a

7   chance to respond.

8          This is as to the issue -- the last that I heard

9   before you cut off at my end, Mr. Marks, was that you thought

10  that you needed a short deposition of Mr. Bykov.  Is there

11  something you want to add after that?

12         MR. MARKS:  Your Honor again, this is Mr. Marks.  Yes,

13  Your Honor.  What I think I was saying was it's not a big deal.

14  We could file a motion for turnover, which would be directed at

15  this specific property.  We may be able to get some of the

16  property back directly from the attorneys who have it.  We've

17  been negotiating with the Kingsley -- Mr. Kingsley.

18         However, Your Honor, what we would want would be to I

19  think take a two-to-three-hour deposition of Mr. Bykov, again

20  only related to the issue of what's in the turnover motion.  In

21  part, Your Honor, we don't want to have another problem where

22  there's a story one day, and then it changes.  Your Honor may

23  recall on the eve of the turnover hearing, that Mr. Bykov filed

24  "amended tax returns" for 550 Park Avenue, and some other

25  entities, and we'd like to get his testimony down, so that Your

1  Honor would then be able to rule if there is a dispute.  That's

2  what I was saying, Judge.

3          And it can be done, obviously --

4          THE COURT:  Okay.  Mr. Singer, go ahead.

5          MR. MARKS:  -- remotely.

6          THE COURT:  You wanted to respond.

7          MR. SINGER:  Okay.  This is Mr. Singer --

8          THE COURT:  Go ahead, Mr. Singer.

9          MR. SINGER:  -- responding.  Yeah, so a couple of

10  issues, Your Honor.  So first of all, as I set forth in my

11  letter, we would be severely prejudiced at this point if we had

12  to go forward to defend this motion in this current

13  environment.  I'm working remotely.  I have some access to

14  documents, not everything.

15          Mr. Bykov has a compromised immune system for -- I'm

16  not going to into with the Court, but he is staying durations

17  that's outside the City of New York.  I believe he's somewhere

18  in the Hudson Valley.  And Protax itself has also worked

19  remotely and has limited access to documents and other

20  information.

21          So given how severe this motion is, and I would say

22  this for any motion, but given how severe, my position is that

23  this -- in all fairness, there's no situation where I can go

24  forward until things return to some sort of normalacy (sic).

25  That's number one.

1      Number two, as far as the deposition of Mr. Bykov

2   goes, again until things get returned to some sort of situation

3   of normalacy (sic), there's no situation where I could see in

4   fairness, the deposition of Mr. Bykov going forward.

5      You know, first of all, an in-person deposition is out

6   of the question in the current environment.  I don't think it's

7   even legal to be quite honest.  Number two, a virtual

8   deposition would be -- I'd be severely prejudiced by having to

9   defend my client remotely.

10      Number three, and I'm sorry, I have to say this, and I

11   set it forth in my letter, I find the timing of this request to

12   be extremely disturbing, and frankly rather shameful.  I mean

13   what is happening here is they could've done this -- first of

14   all, I don't really believe Mr. Marks thinks he's entitled to

15   this money because if he did, nobody in their right mind

16   would've waited six months to try to get over two million

17   dollars without doing anything.  So the logic itself vitiates

18   their argument.

19      Number two, I mean to bring this up in the current

20   environment, okay, is just unacceptable to me, and it's

21   completely improper, and I what think they're doing here is

22   that they're trying to utilize the Court to get some sort of

23   leverage in the settlement negotiation, and using the

24   coronavirus as a way of doing that when we're sort of down in

25   our defenses.

1      So in the unlikely event that this should go forward

2   at all, and I would -- and again in my letter, I said it should

3   not, my position very strongly is it has to wait until we get

4   to some sort of situation of normalacy (sic) which hopefully

5   for -- I'm sure everybody agrees on this phone call, will

6   hopefully happen sooner rather than later, but until that time,

7   I just can't properly defend any such application of the sort.

8         THE COURT:  May I ask you this question, Mr. Singer?

9         MR. SINGER:  Uh-hum.

10        THE COURT:  Let's assume that Mr. Bykov had in an

11   account the $1,378,420.92 that Mr. Marks identifies in his

12   unpaid six of his April 2 letter, just assume that for a

13   second.  Do you believe that Mr. Bykov should be free to

14   transfer that money outside the United States to the Caribbean

15   or someplace else tomorrow?

16        MR. SINGER:  Well, I don't -- first of all, to the

17   best of my knowledge, and again I obviously have no personal

18   knowledge of this, and I'm not going to go into privileged

19   communication, but there is no 1.3 million dollars sitting into

20   an account.  By Mr. Marks' own records, okay, that he had

21   gotten from us, that money had already been sent to various

22   transfers in the ordinary course of business.

23        So without attempting to brief any arguments on this

24   phone call, I mean obviously as I've hinted in multiple

25   letters, one of the "defenses" to this would be it was spent in

1  the ordinary course of business.

2          So this idea that there's some fund sitting around

3  somewhere is just not the case.  As I said, there is some --

4  there is about $231,000 in my escrow account, of which some of

5  it, about 36- was "frozen", okay, but there is the 231, and

6  that's not going anywhere, that's in my escrow account.  That's

7  not being touched obviously, okay.

8          And then, I believe there was some money that Protax

9  froze, and I can get a confirmation on how much they have

10  that's frozen, but beyond that, there isn't this one -- if

11  there's an idea that somehow there's 1.3 from these proceeds

12  sitting around somewhere, that's not -- I think I could say,

13  that's just not the case, even just looking at Mr. Marks' own

14  correspondence.  It was already transferred and spent.

15          THE COURT:  Well first off, let me say that I don't

16  know of any exception to the effect of Section 362 applying

17  upon the recognition of the foreign main proceeding, which is

18  what happened, and so I don't know of any ordinary course of

19  business exception to the automatic stay that applied upon

20  recognition.  I'm not making any determination whether the

21  funds at issue were or were not subject to the automatic stay

22  upon the entry of the recognition order on April 1, but it

23  clearly is an issue.

24          So Mr. Singer, I don't think your statement that well,

25  of course he could pay money out of it in the ordinary course

1  of business, I don't know of any exception.  Perhaps you're
2  able to brief that issue as a defense to any transfers that
3  were made after April 1.  That's not for the Court to decide
4  today.

5          What I am directing is -- I understand, Mr. Singer,
6  that the coronavirus pandemic creates significant problems for
7  everybody, including the Court.  I entered an order in another
8  matter last week where a deposition of two individuals that I
9  ordered to be limited to four hours each, go forward, and the
10 order provided for remote taking of the deposition.  Yes, that
11 presents some issues, I understand that, but the pandemic --
12 I'm not saying this is what's being engaged in here, the
13 pandemic and the problems that it creates for the Court and for
14 the parties can't be used as an excuse to permit improper
15 transfers of funds.

16         What you, Mr. Singer, and you, Mr. Marks, need to
17 discuss is whether you can reach an agreement, it may require
18 you to make some more disclosures, Mr. Singer, about where did
19 the money go, when did it go, was it after recognition on April
20 1st?  Was there funds of the Markus estate?  There's no estate
21 in a Chapter 15 case, the property in the United States that
22 would be subject to the stay that came into effect on
23 recognition.

24         And if you can't reach an agreement, Mr. Marks, you
25 can address the issue in a letter to the Court before the

1   status letter that I've asked for.  I hope that you're all able

2   to reach a settlement, and I don't doubt that the next thirty

3   days can best be spent trying to reach the settlement.  If Mr.

4   Marks, you're able to put off this issue of litigating over the

5   1.378 million dollars while the settlement goes forward, I hope

6   you're able to do that.

7          But Mr. Singer, just shouting pandemic isn't -- and

8   the problems that creates, which I acknowledge, cannot be used

9   as a justification for keeping out of the reach of the foreign

10  representative, property that is subject to turnover, okay.  We

11  won't dwell on that further now.  I'm directing you, Mr. Marks,

12  and you, Mr. Singer, to have a further discussion about it, and

13  see whether you can either agree to pause that issue as well

14  for the thirty days or otherwise, but otherwise, Mr. Singer, it

15  is not going to -- you know, I will -- we'll have, if we have

16  to have another telephone hearing, we will, but let's see

17  whether you and Mr. Marks are able to reach an agreement about

18  it.

19         So let me see, I have some other notes of questions

20  that I had that I want to deal with.

21         MR. SINGER:  Your Honor, may I respond very briefly,

22  just one point?

23         THE COURT:  Go ahead.  First identify yourself on the

24  record.

25         MR. SINGER:  I'm sorry, it's Daniel Singer.  I just

1  had one point to highlight.

2          THE COURT:  Go ahead.

3          MR. SINGER:  Okay.  Yeah, so far as -- and I'm not

4  going to reiterate what I've already said, and it's already --

5  most of it's in my letter, so I don't belabor the Court with

6  that, but I will say that as far as where the money has gone,

7  Mr. Marks knows where this money is, it's actually in his

8  letter, because he has the transfers outlined, and it's already

9  been disclosed.  So there's no mystery about where this money

10  has gone.  I'm happy -- and again, I'm happy to discuss with

11  Mr. Marks for any illumination he might like on that but it's

12  not like at this point there's some sort of mystery to that.

13  There's been full disclosure.

14          I just had a question and perhaps, and I apologize if

15  I missed this, when did you want Mr. Marks -- there's a status

16  report due on May 7th, but when did you want Mr. Marks and I to

17  report back to you?  I'm sorry.

18          THE COURT:  What I indicated is that I do want the

19  written status -- this is separate from this 1.378 million

20  dollars.  There I want the two of you to see whether you can

21  agree to pause that issue for the next thirty days or not, and

22  that, one or both of you ought to file a status letter with

23  respect to just that issue, okay?

24          What I wanted, and what I ordered is I want a written

25  status report from whoever wants to file one by on or before

 1   Friday, May 7th at 5 p.m., or sooner if the settlement is
 2   reached.  That really goes to the entire dispute, and if there
 3   is no settlement, how you move forward.  I've directed that the
 4   two of you, Mr. Singer and Mr. Marks, talk about if no
 5   settlement is reached by the what is -- by the end of
 6   thirty-day period, what should be the schedule going forward.
 7   I view that as a separate issue than I do this issue that Mr.
 8   Marks has raised with respect to the further turnover
 9   immediately, okay?  I hope that's responsive to your question,
10   Mr. Singer.  It was a fair question.

11        MR. SINGER:  I'm sorry, I do.  It is.  But I want to
12   be clear, so I want to make sure I understand it.  So I'm
13   sorry, I understand the May 7th letter, but the other letter
14   where we're supposed to update the Court on what's going to
15   happen with the schedule if it doesn't succeed with settlement,
16   and the one point -- if we need to involve the Court with the
17   1.3, as you said, with the turnover issues, when do you want
18   that filed with the Court?

19        THE COURT:  I want the two of you to confer, and I
20   want you to deal specifically with the issue of the turnover of
21   the 1.378 million, and if Mr. Marks wants to go forward with
22   further proceedings promptly, not after thirty days, the letter
23   ought to indicate that, and if we have to have a further
24   telephone conversation, we will.

25        MR. SINGER:  Okay.

FOREIGN ECONOMIC INDUSTRIAL BANK; LARISA IVANOVNA MARKUS   40

1          THE COURT:  It seems to me that the issues of the

2   global settlement are a broader set of issues than just the

3   1.378 million dollars.  Is that clear, Mr. Singer?

4          MR. SINGER:  Yes, and I will also say in the letter, I

5   mean without going into detail of the settlement, that none of

6   that -- and this is the problem I'm having with this, and I

7   respect what Your Honor is saying, and I understand it, is that

8   this not part --

9          THE COURT:  Now you're being repetitive, Mr. Singer.

10          MR. SINGER:  I apologize.

11          THE COURT:  Mr. Singer?

12          MR. SINGER:  I apologize.

13          THE COURT:  Mr. Singer, okay, you can stop now.  I

14   think I've been clear about what I want.  I don't want to hear

15   any further argument about it.

16          MR. SINGER:  Uh-hum.

17          THE COURT:  Mr. Marks --

18          MR. MARKS:  Your Honor?

19          THE COURT:  -- are there other issues that we need to

20   take up today?

21          MR. MARKS:  Your Honor, just on this issue, may we

22   have until Friday, Your Honor, for Mr. Singer and I to meet and

23   confer, and to report back to Your Honor on the -- what I will

24   call the 1.3 million dollar issue?

25          THE COURT:  Absolutely.

1          MR. MARKS:  Okay.  Your Honor, I just --

2          THE COURT:  And I don't expect the two of you to meet

3     other than by telephone.

4          MR. MARKS:  No, absolutely, Your Honor.  I just want

5     to say one thing, all of us are affected by the pandemic, okay?

6     We put in our letter about that, but you know --

7          THE COURT:  Mr. Marks?  Mr. Marks?

8          MR. MARKS:  Yeah.

9          THE COURT:  Mr. Marks?  Mr. Marks?

10         MR. MARKS:  Yeah.

11         THE COURT:  I don't want to hear any more about the

12    pandemic, okay?

13         MR. MARKS:  Fair enough, Judge.

14         THE COURT:  Okay.  Are there other issues that I need

15    to take -- so you're going to prepare the -- a proposed order

16    for the thirty-day pause.

17         MR. MARKS:  Yes, Your Honor.

18         THE COURT:  Okay.  Just so we get that clear, filed on

19    the record.  There's no delay in that.  You'll do that within

20    the next couple of days.  I want to see that, okay?

21         MR. MARKS:  I don't think Mr. -- well, I will work

22    with Mr. Singer on it because I understand the issues with Mr.

23    Worms are not going to be subject to that stay order, right,

24    Your Honor?  I'm sorry, you --

25         THE COURT:  What is it that you intend to proceed?

1  No, Mr. Worms, we're going to deal with in a couple -- in a

2  minute, Mr. Marks, a schedule for going forward on the issues

3  on remand.  That's not subject to this thirty-day pause.

4        MR. MARKS:  Fair enough.  So then I will confer with

5  Mr. Singer on it.  I don't think that there's -- I don't

6  believe that there's anything, I'll double-check, but I don't

7  think there's anything that we've set forth in our letter that

8  would impact Mr. Worms, but we'll -- I'll check that, Your

9  Honor.

10        THE COURT:  Okay.

11        MR. MARKS:  I understand what Your Honor wants me to

12  do.  So I think the answer to Your Honor's question is we'll

13  submit a proposed stay order to Your Honor in the next couple

14  days.  We will have a proposed order to Your Honor on what to

15  do after thirty days, if it doesn't settle.  We'll have that to

16  Your Honor by I think May 7th, and Mr. Singer and I will report

17  back to the Court by Friday where we stand on the 1.3 million.

18        THE COURT:  Okay.  All right.  Now let's deal with the

19  issues on remand from Judge Liman's decision of last Friday.

20  On that score, Mr. Marks, and Mr. Worms, the two of you need to

21  confer by telephone, and try and reach an agreement on the

22  schedule for this Court to go forward on the issues on remand

23  from Judge Liman.

24        On that score, the schedule should include one

25  additional filing by each of you.  You should agree on the

1  dates, addressing the issues that Judge Liman has sent back to

2  this Court on remand.

3        If you're unable to reach an agreement on that

4  schedule by this Friday, and it is not subject to the thirty-

5  day pause, you can each submit written proposed schedules by 5

6  p.m. Friday, and I will consider each of those, and enter an

7  order with the schedule.

8        So again to be clear, on the issue -- on the question

9  of the issues on remand from Judge Liman, with respect to

10  sanctions for contempt, and attorney's fees to Mr. Marks' firm,

11  you are to confer -- the two of you are to confer and seek to

12  reach an agreement on the schedule that will apply.  The

13  schedule should include one additional filing by each of you.

14        And in terms of a hearing date, after I receive -- I

15  will set a further hearing after seeing the proposed schedule.

16  The proposed schedule can leave open a date for a telephone

17  hearing on the issues on remand.

18        Mr. Marks, do you understand that?

19        MR. MARKS:  This is Mr. Marks.  Yes, Your Honor.

20        THE COURT:  Okay.  Mr. Worms, do you understand that?

21        MR. WORMS:  I understand what the Court said, but I

22  have one issue if I might raise it, Judge, and that has to do

23  with the additional filing.  As Mr. Singer indicated, and I am

24  not seeking to suggest that the pandemic can be used

25  prophylactically, but I am at a disadvantage, Your Honor,

1  because in order to make a substantive filing, I need access to

2  a law library.  I usually use the NYU Law School Library, where

3  I went to school, and I also have documents in my office which

4  I will need access to.

5          So I hope the Court, and I hope Mr. Marks will give

6  some consideration to that in whatever schedule is proposed to

7  the Court because I am at a disadvantage by my inability to

8  have access to a functioning law library.

9          THE COURT:  Do you have an account with Lexis or

10  Westlaw?

11          MR. WORMS:  I have online access, Judge, but I am from

12  the old school, and we research initially by books.  I go to

13  the library at NYU.  I sit there.  I research, Judge.  It is

14  how I've done it all my life as a lawyer.  I understand that

15  the Court wants to move ahead, and I'm not seeking to delay

16  that, Judge, but I do feel I am at a disadvantage by virtue of

17  my inability to access a law library.

18          So I will leave it to the Court.  I understand --

19          THE COURT:  Mr. Worms?

20          MR. WORMS:  If I might, Your Honor, I'm not --

21          THE COURT:  Mr. Worms, do you have -- Mr. Worms,

22  please answer my question.  Do you have an account with Westlaw

23  or Lexis, yes or no?

24          MR. WORMS:  I do not.

25          THE COURT:  With neither of them?

1            MR. WORMS:  I do not, Judge.

2            THE COURT:  Okay.  Well, you and Mr. Marks will confer

3    on the schedule, and if you can't agree, you can submit

4    separate letters dealing with it, and I will take those into

5    account in setting a schedule.

6            MR. WORMS:  May I raise one other issue?

7            THE COURT:  Anything else on the issue of -- go ahead.

8            MR. WORMS:  This is Mr. Worms.  Your Honor, I did have

9    occasion to read the Court's transcript from the July 4th

10   hearing in the adversary proceeding where you indicated that

11   given the settlement posture of the case, you would not be

12   disinclined to entertain a motion to vacate as respect to the

13   orders that are the predicate for the sanctions and legal fees.

14   I just want to know, is the Court still inclined to entertain a

15   motion to vacate or is the Court not so inclined, Judge?

16           THE COURT:  I don't know what was said on that

17   transcript.  I don't have it in front of me.  If you have a

18   position about it, Mr. Worms, put it in writing, and I'll

19   consider it.

20           MR. WORMS:  Okay.  Very good, Your Honor.  Thank you.

21           THE COURT:  Okay.  But the only other thing I would

22   ask one of my law clerks who, they're on the phone, is with

23   respect to Mr. Worms' motion to be relieved as counsel, one of

24   you can prepare an order that denies that motion without

25   prejudice --

1          MR. WORMS:  Can I ask one --

2          THE COURT:  -- and I've indicated the reasons that --

3    no, just stop, Mr. Worms.  I'm denying the motion without

4    prejudice because the Court has been directed by the district

5    court to address issues on remand from Judge Liman.  I would

6    add additionally, that Mr. Worms is counsel of record on an

7    appeal of the turnover order that's pending before Judge

8    Torres, and until that appeal is resolved, I will not relieve

9    Mr. Worms as counsel of record for Ms. Markus in the Chapter 15

10   case before me.

11         So an order will be prepared by one of my clerks.

12   I'll review it, and I will enter an order on the docket with

13   respect to that motion to be relieved.

14         Mr. Worms, what else did you want to say?

15         MR. WORMS:  Judge, and this -- the issue I want to

16   raise is, Judge, my motion to be relieved, or to withdraw, goes

17   to the issue of payment.  So the Court is suggesting that I

18   should work for free, and I should be an indentured servant

19   here with no compensation until such time as the appeal is

20   resolved before Judge Torres.  I think that's particularly

21   unfair to me, Judge.

22         Mr. Marks gets paid.  Mr. Singer gets paid.  I have to

23   work, essentially like a slave with no compensation, and I made

24   a motion to the Court specifically because I'm not being paid,

25   and you've just said Your Honor, that I am going to stay on

1   this case until such time as Judge Torres resolved the trust

2   appeal.  I think that would obligate me, not only to write the

3   reply briefs but to argue them all for free, Judge.  I think

4   that is patently unfair, but I guess the double standard

5   continues to be applied to me, especially being held in

6   criminal contempt by this court.

7          THE COURT:  Have you moved to be relieved as counsel

8   in the matter before Judge Torres?

9          MR. WORMS:  I have not yet done so, Judge, but you've

10  already denied my motion, and you're going to issue an order

11  essentially saying I cannot not leave this case until that

12  appeal is resolved.  So it essentially locks me in for the

13  indefinite future, Judge, as a lawyer without compensation

14  in -- vis-a-vis of the Thirteenth Amendment which as the Court

15  well knows, is the very amendment that dealt with the issue of

16  indentured servitude.

17         THE COURT:  Do you intend to move to be relieved in

18  the appeal before Judge Torres, or you're going to go ahead and

19  proceed with that case?

20         MR. WORMS:  Judge, I don't know what that situation

21  is.  What I would like, Judge, is to have a determination on

22  the merits of my motion with respect to being withdrawn.  I

23  don't think that the one has to do with the other.  You can

24  still proceed with the remand --

25         THE COURT:  I just denied the -- Mr. Worms -- Mr.

1  Worms, I've denied your motion without prejudice.

2        All right.  Any other matters for today?

3        MR. WORMS:  What about my compensation, Judge?

4        THE COURT:  I don't pay you, Mr. Worms, and the fact

5  that you are counsel of record in this case, as of last Friday

6  there are issues on remand from Judge Liman specifically

7  addressing you.  I am going to address the issues on remand.

8  I've directed you and Mr. Marks to try and reach an agreement

9  on a schedule.  If you can't, I will set the schedule.

10        I am not relieving you as counsel of record in the

11  Chapter 15 case until I have resolved the issues that are on --

12  that were sent back to me last Friday on remand from Judge

13  Liman.  You are also counsel of record on an appeal from an

14  order before me, whether that issue -- whether that's affirmed

15  or overruled, we'll have to wait and see.  That's the ruling

16  for today.

17        Is there anything else you want to lay out on the

18  record, Mr. Worms?  Go ahead.  I will give you another one more

19  minute.

20        MR. WORMS:  Nothing further, Judge.  I think the

21  record speaks for itself.

22        MR. MARKS:  Your Honor, this is Mr. Marks.  May I just

23  add one other thing?

24        THE COURT:  Yes, go ahead.

25        MR. MARKS:  Your Honor, I just wanted to add in terms

FOREIGN ECONOMIC INDUSTRIAL BANK; LARISA IVANOVNA MARKUS   49

1   of Mr. Worms, there's also the Rule 11 motion that's pending

2   against him.  We haven't submitted our reply brief yet.  I just

3   didn't want Your Honor to lose track of that.

4          THE COURT:  Okay.  I clearly had.  All right.

5          Mr. Singer, anything else for today?

6          MR. SINGER:  No, Your Honor, thank you.

7          THE COURT:  All right.  Bear with me just a second,

8   please.  All right.  We are in recess until 2 o'clock this

9   afternoon.  Thank you very much all of you.

10         MR. SINGER:  Thank you.

11    (Whereupon these proceedings were concluded)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                              I N D E X
 3    RULINGS:                                    PAGE    LINE
 4    Mr. Worms' motion to withdraw is             12      22
 5    denied without prejudice.
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                        C E R T I F I C A T I O N

2

3    I, Linda Ferrara, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    Linda Ferrara (CET-656)

10   AAERT Certified Electronic Transcriber

11

12   eScribers

13   352 Seventh Ave., Suite #604

14   New York, NY 10001

15

16   Date:  April 9, 2020

17

18

19

20

21

22

23

24

25

FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, et al. v.
LARISA IVANOVNA MARKUS, et al.

April 6, 2020

## #

**#194 (1)**
3:4
**#604 (1)**
3:22

## $

**$1,378,420.92 (2)**
26:25;34:11
**$231,000 (1)**
35:4

## &

**&q (1)**
3:3

## A

**able (8)**
16:6;31:15;32:1;
36:2;37:1,4,6,17
**absolutely (3)**
31:6;40:25;41:4
**abundance (1)**
27:22
**access (7)**
32:13,19;44:1,4,8,
11,17
**account (17)**
17:11,12,17;19:3,
3;27:3,8,9,17,19;
34:11,20;35:4,6;
44:9,22;45:5
**accounts (3)**
25:12;27:5,18
**accurate (1)**
22:3,4,8
**acknowledge (1)**
37:8
**act (2)**
7:24;11:6
**action (1)**
25:18
**actually (3)**
18:1;28:5;38:7
**add (6)**
10:15;30:1;31:11;
46:6;48:23,25
**addition (1)**
10:6
**additional (5)**
8:9;24:24;42:25;
43:13,23
**additionally (1)**
46:6
**address (8)**
13:13,20;15:16;
21:25;25:21;36:25;
46:5;48:7
**addressed (3)**
20:8,12;21:3
**addresses (1)**
18:15
**addressing (2)**
43:1;48:7
**adjournments (1)**
14:9
**Adv (1)**
2:3
**Adversary (8)**
3:10,16;6:4;7:18,
21,25;21:17;45:10
**advise (1)**
12:1
**affected (1)**
41:5
**affidavit (1)**
27:21
**affirmed (4)**
8:22,23;11:17;
48:14
**afternoon (2)**
9:1;49:9
**again (13)**
6:22;7:10;10:5;
20:2;22:24;30:15;
31:12,19;33:2;34:2,
17;38:10;43:8
**against (2)**
9:20;49:2
**Agency (2)**
3:3;6:9
**Agency&q (1)**
3:15
**agree (10)**
17:19;19:13;
23:20,22;25:10;
29:9;37:13;38:21;
42:25;45:3
**agreeing (1)**
23:24
**agreement (12)**
10:5;22:7;24:15;
28:21;29:13;36:17,
24;37:17;42:21;
43:3,12;48:8
**agrees (1)**
34:5
**ahead (22)**
6:24;7:12;10:22,
22,22;15:16;17:8;
18:24;19:2;22:22,
23;24:13;29:20;
32:4,8;37:23;38:2;
44:15;45:7;47:18;
48:18,24
**al (4)**
2:5;3:11,17;6:5
**almost (1)**
28:9
**altering (1)**
20:7

**Alternatively (1)**
16:15
**although (2)**
11:11;22:5
**amended (2)**
30:13;31:24
**Amendment (2)**
47:14,15
**amount (3)**
24:22;26:13;28:4
**analysis (1)**
20:22
**apologies (1)**
18:19
**apologize (3)**
38:14;40:10,12
**appeal (19)**
11:9,11;12:2;
13:14,15;14:5,6,11;
16:3,4,17,17;46:7,8,
19;47:2,12,18;48:13
**appealable (2)**
12:7,24
**appealed (2)**
13:23,24
**appeals (11)**
13:17,22;14:1,2,
16,18;15:17,20,21,
24;16:7
**appear (1)**
19:10
**appearance (4)**
6:22;7:9,12,17
**appearances (2)**
6:6,18
**appearing (2)**
7:13,21
**appears (1)**
24:21
**appellate (1)**
14:8
**appellate's (1)**
15:22
**application (1)**
34:7
**applied (2)**
35:19;47:5
**applies (1)**
11:22
**apply (3)**
11:21;21:16;43:12
**applying (1)**
35:16
**appreciate (2)**
25:23;29:22
**appropriate (1)**
28:23
**approximately (1)**
25:25
**April (20)**
2:13;8:6,8,10,16,
17,20;9:22;13:16,21;
19:1,20;20:2;26:7;

27:1;7,9;34:12;35:22;
36:3,19
**area (1)**
29:22
**argue (1)**
47:3
**argued (1)**
11:20
**argument (2)**
33:18;40:15
**arguments (1)**
34:23
**arise (1)**
19:19
**arisen (1)**
23:4
**around (2)**
35:2,12
**arranged (1)**
26:14
**Article (3)**
11:8,14,15
**assets (1)**
24:24
**assume (3)**
14:24;34:10,12
**assumed (1)**
16:10
**assurance (1)**
26:16
**Atlantic (1)**
26:14
**attempting (1)**
34:23
**attention (2)**
20:17;21:6
**Attorney (3)**
5:3;22:5;25:12
**attorneys (2)**
20:22;31:16
**attorney's (4)**
13:18;20:16;21:8;
43:10
**authority (4)**
7:22;11:6,11,15
**authorization (1)**
7:24
**automatic (4)**
20:14;29:7;35:19,
21
**Avenue (3)**
3:22;19:3;31:24
**avoid (1)**
21:13
**aware (3)**
22:10,11
**away (1)**
20:20

## B

**back (7)**
15:11;31:16;

38:17;40:23;42:17;
43:1;48:12
**Bank (4)**
3:2,14;6:3;7:14
**Bankruptcy (5)**
2:9,20;10:18;11:2,
3
**based (1)**
28:3
**basis (2)**
14:7;25:11
**Bear (1)**
49:7
**become (2)**
11:13;24:12
**becomes (2)**
10:11,12
**began (1)**
16:1
**belabor (1)**
38:5
**belief (1)**
27:3
**benefit (1)**
31:5
**best (2)**
34:17;37:3
**beyond (1)**
35:10
**BG (1)**
26:14
**big (1)**
31:13
**blame (1)**
22:12
**books (1)**
44:12
**both (10)**
8:7,12;13:18;14:9;
15:19,21;16:3,6;
21:16;38:22
**Bowling (1)**
2:10
**brief (10)**
14:8,13;15:23;
16:3,12,12,16;34:23;
36:2;49:2
**briefly (3)**
9:15;18:25;37:21
**briefs (1)**
47:3
**bring (1)**
33:19
**broader (2)**
11:12;40:2
**Broadway (1)**
5:4
**Bruce (1)**
6:8
**business (5)**
27:15;34:22;35:1,
19;36:1
**button (1)**

19-01413-mg    Doc 30-3    Filed 04/11/20    Entered 04/11/20 16:09:16    Exhibit
FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, et al.    Transcript - Pg 54 of 62
LARISA IVANOVNA MARKUS, et al.                                                April 6, 2020

15:15
**Bykov (13)**
26:7,12,17,24;
30:5;31:10,19,23;
32:15;33:1,4;34:10,
13
**Bykov's (2)**
27:21;30:11

## C

**call (7)**
10:13;20:16,17;
21:6;34:5,24;40:24
**called (1)**
18:3
**calls (1)**
22:7
**came (3)**
26:1,3;36:22
**can (30)**
9:12;14:2;16:14,
25;18:10;23:21,21,
22;24:8;28:12,20;
29:4,13;30:2;32:3,
23;35:9;36:17,25;
37:3,13;38:20;
40:13;43:5,16,24;
45:3,24;46:1;47:23
**Caribbean (1)**
34:14
**Case (23)**
3:4,8,12,18;8:3,4;
13:24;16:13,14;
19:20;21:5;23:16;
26:20;35:3,13;
36:21;45:11;46:10;
47:1,11,19;48:5,11
**cases (7)**
6:3;8:3,7,9;21:4,
16,17
**caution (1)**
27:23
**central (2)**
11:12,13
**certain (1)**
23:4
**certainly (11)**
19:13,25;20:7,24;
21:2,9,20;23:20;
25:2;28:15;29:2
**cetera (2)**
21:14;28:22
**Ch (2)**
3:3,7
**chance (3)**
9:13;10:24;29:20;
31:1,7
**changes (1)**
31:22
**Chapter (8)**
6:3;7:15,15;8:7;
21:17;36:21;46:9;

48:11
**chart (2)**
13:17,20
**check (1)**
42:8
**Chin (1)**
21:4
**Circuit (8)**
11:9,13;12:2,7,8,
24;13:2;21:5
**circumscribed (1)**
11:7
**circumstances (1)**
25:2
**cites (1)**
21:3
**City (1)**
32:17
**Civil (1)**
11:4
**claims (1)**
28:18
**clear (11)**
7:20;18:10;21:12;
23:10,23;29:5;
39:12;40:3,14;
41:18;43:8
**clearly (3)**
19:19;35:23;49:4
**clerks (2)**
45:22;46:11
**client (3)**
22:15;23:8;33:9
**clients (1)**
19:12
**closed (1)**
27:18
**co-extensive (1)**
11:14
**comment (1)**
29:19
**comments (1)**
19:16
**commonly (1)**
7:1
**communication (1)**
34:19
**compensation (4)**
46:19,23;47:13;
48:3
**complete (1)**
19:15
**completely (1)**
33:21
**complicated (1)**
23:18
**complication (1)**
23:4
**compromised (1)**
32:15
**computer (1)**
31:2
**concern (4)**

15:25;25:5;26:19;
29:22
**concerned (1)**
25:24
**conclude (1)**
12:9
**concluded (1)**
49:11
**conducting (1)**
18:2
**confer (9)**
24:1,14;39:19;
40:23;42:4,21;43:11,
11;45:2
**Conference (6)**
3:4,8,12,18;15:2;
22:7
**conferences (1)**
8:4
**confirm (2)**
28:2,4
**confirmation (1)**
35:9
**connected (1)**
31:2
**connection (1)**
7:24
**consensually (1)**
23:22
**consent (1)**
14:25
**consequences (2)**
25:13,14
**consequently (1)**
12:6
**consider (2)**
43:6;45:19
**consideration (1)**
44:6
**consolidated (1)**
16:2
**consolidating (1)**
15:24
**constituted (1)**
27:23
**constitutional (1)**
11:2
**consult (1)**
23:7
**contempt (6)**
10:18;11:1,19;
12:13;43:10;47:6
**contends (1)**
25:8
**continue (2)**
8:14;30:25
**continues (1)**
47:5
**controls (1)**
26:16
**conversation (2)**
23:3;39:24
**coordinate (1)**

16:6
**copy (3)**
16:13,13;17:1
**coronavirus (3)**
15:8;33:24;36:6
**CORPORATION (4)**
2:2;3:3,15,17
**correspondence (6)**
19:10,25;20:12;
24:23;27:14;35:14
**counsel (15)**
6:6;12:20;13:22;
17:13;20:25;22:2;
23:20;24:6;45:23;
46:6,9;47:7;48:5,10,
13
**counseling (1)**
28:5
**counsel's (2)**
20:17;21:6
**couple (6)**
19:16,18;32:9;
41:20;42:1,13
**course (6)**
27:15;34:22;35:1,
18,25,25
**Court (151)**
2:9;6:2,15,20,22,
24;7:3,5,7,9,12,17,
23;8:1,21;9:2,4,9,16,
23;10:1,14,18,20,22;
11:2,3,5,7,8,14,15,
16,18;12:1,3,15,23;
13:6,8,14;14:3,15;
15:5,13,16;16:9,20;
17:1,8,16,20,24;
18:2,2,4,5,6,7,16,20,
22,24;19:9;21:7;
22:13,20,22;23:12;
24:6;26:21,24;27:2,
10;28:14;29:15,19;
30:11,16,19,21,24;
32:4,6,8,16;33:22;
34:8,10;35:15;36:3,
7,13,25;37:23;38:2,
5,18;39:14,16,18,19;
40:1,9,11,13,17,19,
25;41:2,7,9,11,14,18,
25;42:10,17,18,22;
43:2,20,21;44:5,7,9,
15,18,19,21,25;45:2,
7,14,15,16,21;46:2,4,
5,17,24;47:6,7,14,17,
25;48:4,24;49:4,7
**court's (10)**
10:17,25;11:23,
24;15:6,9;17:11,11;
21:14;45:9
**COVID-19 (1)**
24:5
**creates (1)**
24:5;36:6,13;37:8
**criminal (4)**

10:18;11:1,18;
47:6
**crystal (1)**
29:5
**current (5)**
22:11;25:2;32:12;
33:6,19
**currently (1)**
13:14
**cut (2)**
31:3,9

## D

**Daniel (3)**
6:25;22:18;37:25
**date (4)**
8:7;20:14;43:14,
16
**dates (1)**
43:1
**day (3)**
18:4;31:22;43:5
**days (14)**
8:15,16;19:14;
22:16;24:2,16;
28:16;37:3,14;
38:21;39:22;41:20;
42:14,15
**deadlines (1)**
21:16
**deal (11)**
12:4,7,19;13:8;
16:17;21:10;31:13;
37:20;39:20;42:1,18
**dealing (2)**
28:6;45:4
**dealt (1)**
47:15
**debtor (2)**
7:13;20:1
**decide (1)**
36:3
**decision (14)**
8:25;9:1,5;10:17,
25;11:10,24;12:6,12;
20:17;21:4,11;
25:16;42:19
**decisions (1)**
20:9
**defend (3)**
32:12;33:9;34:7
**Defendants (1)**
2:6
**defense (1)**
36:2
**defenses (2)**
33:25;34:25
**delay (3)**
16:16;41:19;44:15
**delayed (2)**
16:7;29:23
**delays (1)**

19-01413-mg    Doc 30-3    Filed 04/11/20    Entered 04/11/20 16:09:16    Exhibit
FOREIGN ECONOMIC INDUSTRIAL BANK, LIMITED, et al. v.    Transcript - Pg 55 of 62
LARISA IVANOVNA MARKUS, et al.    April 6, 2020

22:12
**denied (9)**
12:22;16:21;17:5,
14;19:7,8;47:10,25;
48:1
**denies (1)**
45:24
**Denny (1)**
21:4
**Dentons (1)**
22:1
**Dentons' (1)**
22:5
**denying (1)**
46:3
**DEPOSIT (5)**
2:2;3:3,15,17;6:9
**deposition (9)**
30:5;31:10,19;
33:1,4,5,8;36:8,10
**despite (1)**
24:7
**detail (2)**
10:8;40:5
**details (3)**
10:12;11:24;21:19
**determination (2)**
35:20;47:21
**determine (1)**
11:5
**differ (1)**
22:24
**difference (2)**
21:11;26:1
**different (4)**
13:15;14:3,16,18
**differing (1)**
23:10
**difficult (2)**
24:12;30:3
**difficulties (2)**
24:6,8
**directed (7)**
17:12;26:7;30:3;
31:14;39:3;46:4;
48:8
**directing (2)**
36:5;37:11
**directly (1)**
31:16
**disadvantage (4)**
29:10;43:25;44:7,
16
**disadvantaged (2)**
25:18;28:24
**disagree (1)**
12:3
**disagreement (1)**
8:14
**disbursed (1)**
27:3
**disclosed (1)**
38:9

**disclosure (1)**
38:13
**disclosures (1)**
36:18
**discovery (7)**
8:13;10:10;14:20;
15:1;16:19;21:15;
24:12
**discuss (7)**
8:25;9:12,17;15:1;
28:15;36:17;38:10
**discussion (1)**
37:12
**discussions (2)**
8:17;23:14
**disinclined (1)**
45:12
**dispute (7)**
19:11,17;20:24;
24:23;26:24;32:1;
39:2
**disputed (1)**
23:15
**disputes (1)**
24:20
**dissipated (2)**
26:18;28:19
**dissipation (1)**
26:20
**district (11)**
10:17,25;11:18,
24;12:23;13:14;
14:3,3;20:18;21:4;
46:4
**disturbing (1)**
33:12
**Doc (1)**
3:4
**Doc# (3)**
3:8,12,18
**docket (4)**
17:5;19:20,23;
46:12
**document (1)**
19:6
**documents (5)**
30:8,9;32:14,19;
44:3
**dollar (1)**
40:24
**dollars (14)**
25:25;26:3,4,17;
27:12,17,19,21,25;
33:17;34:19;37:5;
38:20;40:3
**done (4)**
32:3;33:13;44:14;
47:9
**double (1)**
47:4
**double-check (1)**
42:6
**doubt (2)**

27:6;37:2
**down (2)**
31:25;33:24
**draft (1)**
22:11
**drafter (2)**
22:6,9
**due (2)**
11:19;38:16
**durations (1)**
32:16
**dwell (1)**
37:11

**E**

**earlier (1)**
18:18
**ECF (2)**
19:20,23
**Economic (4)**
3:2,14;6:3;20:18
**Economics (2)**
21:1;25:15
**effect (4)**
28:3,11;35:16;
36:22
**effectively (1)**
15:10
**efforts (1)**
23:25
**either (4)**
13:1;25:6;29:14;
37:13
**elaborate (1)**
10:12
**electronic (1)**
30:10
**else (6)**
9:8;34:15;45:7;
46:14;48:17;49:5
**email (1)**
18:5
**end (4)**
18:4;19:4;31:9;
39:5
**engaged (1)**
36:12
**England (2)**
26:1,4
**enough (2)**
41:13;42:4
**enter (2)**
43:6;46:12
**entered (5)**
17:4;19:20,23,24;
36:7
**entertain (2)**
45:12,14
**entire (1)**
39:2
**entirely (1)**
12:13

**entities (6)**
6:19;7:1,2;15:20;
26:6;31:25
**entitled (1)**
33:14
**entity (1)**
26:15
**entry (1)**
35:22
**environment (3)**
32:13;33:6,20
**equally (1)**
20:13
**escaping (1)**
14:20
**eScribers (1)**
3:21
**escrow (2)**
27:17,19;35:4,6
**especially (1)**
47:5
**ESQ (1)**
5:8
**essentially (6)**
8:22;11:16;15:25;
46:23;47:11,12
**estate (2)**
36:20,20
**Estis (1)**
28:6
**et (6)**
2:5;3:11,17;6:5;
21:14;28:22
**eve (2)**
30:13;31:23
**even (5)**
15:24;18:16;28:9;
33:7;35:13
**event (2)**
12:9;34:1
**everybody (5)**
10:11;18:13;
25:15;34:5;36:7
**everybody's (1)**
15:8
**exact (1)**
28:4
**example (1)**
24:10
**exception (3)**
35:16,19;36:1
**excuse (1)**
36:14
**exist (1)**
28:12
**expect (1)**
41:2
**extension (5)**
14:14;15:2,7;16:5,
5
**extensions (6)**
14:8,10,12,22;
16:1,8

**extent (4)**
10:10;11:5;28:25;
29:17
**extremely (2)**
23:3;33:12

**F**

**fact (4)**
19:2;23:15,15;
48:4
**fair (4)**
11:17;39:10;
41:13;42:4
**fairly (1)**
11:25
**fairness (2)**
32:23;33:4
**falls (1)**
26:10
**familiar (1)**
15:9
**far (5)**
19:5;28:8;33:1;
38:3,6
**fashion (1)**
29:14
**Federal (1)**
11:4
**fee (1)**
13:18
**feel (2)**
10:6;44:16
**fees (10)**
8:23;11:20;20:10,
13,16,25;21:8,8;
43:10;45:13
**Ferrara (1)**
3:20
**few (2)**
10:16;24:2
**file (11)**
7:17;12:1;15:22;
16:2,12,16;30:3;
31:14;38:22,25
**filed (9)**
8:5;11:9;14:13;
15:20;24:10;30:13;
31:23;39:18;41:18
**files (3)**
16:12;18:5,7
**filing (7)**
8:9;15:2;16:6;
42:25;43:13,23;44:1
**final (1)**
12:6
**find (1)**
33:11
**finder (1)**
23:15
**finding (1)**
11:18
**fine (1)**

19-01413-mg    Doc 30-3    Filed 04/11/20    Entered 04/11/20 16:09:16    Exhibit
Transcript    Pg 56 of 62

FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, et al.
LARISA IVANOVNA MARKUS, et al.

April 6, 2020

8:1
**finish (1)**
30:24
**firm (2)**
22:10;43:10
**First (12)**
6:6,18;8:13,19;
25:1,21;32:10;33:5,
13;34:16;35:15;
37:23
**fit (2)**
9:25;16:18
**five (1)**
13:20
**flag (1)**
30:10
**flagging (1)**
29:22
**focus (1)**
25:24
**focused (1)**
30:6
**focuses (1)**
20:11
**Foreign (15)**
3:2,14;6:3,7,9;
17:13;22:2;25:17,
19;28:18,24;29:2,11;
35:17;37:9
**forth (5)**
17:22;19:1;32:10;
33:11;42:7
**forward (21)**
12:11,25;13:3;
19:8;22:17;24:9,9,
16,19;30:2;32:12,24;
33:4;34:1;36:9;37:5;
39:3,6,21;42:2,22
**found (3)**
10:17;11:1,2
**FOUNDATION (3)**
2:5;3:10,17
**four (4)**
8:15;13:20,25;
36:9
**Frankly (2)**
14:23;33:12
**free (3)**
34:13;46:18;47:3
**freeze (5)**
19:22;25:6;28:7,
10;29:14
**freezing (2)**
28:3,4
**Friday (12)**
8:21;9:1;21:22;
24:18;39:1;40:22;
42:17,19;43:4,6;
48:5,12
**front (1)**
45:17
**froze (1)**
35:9

**frozen (7)**
27:16,22,25;28:2,
13;35:5,10
**FSupp (1)**
20:19
**full (1)**
38:13
**functioning (1)**
44:8
**fund (1)**
35:2
**funds (21)**
20:21;24:22,24;
25:3,7,10,18;27:4,
10;28:17,22,25;25;
29:3,6,15,15;30:6;
35:21;36:15,20
**further (29)**
8:10;9:6,17;10:2;
12:16,23;19:14;20:8,
22;21:7;25:7,18;
28:15,19,24,25;29:6,
10,16,19,24;37:11,
12;39:8,22,23;40:15;
43:15;48:20
**furthermore (1)**
11:19
**future (1)**
47:13

### G

**gets (3)**
23:18;46:22,22
**given (4)**
22:15;32:21,22;
45:11
**GLENN (2)**
2:19;6:2
**global (1)**
40:2
**goes (5)**
28:9;33:2;37:5;
39:2;46:16
**good (1)**
45:20
**granted (3)**
14:9,24;16:11
**Green (1)**
2:10
**Gregory (1)**
14:21
**guess (3)**
23:23;29:23;47:4

### H

**Hang (1)**
30:21
**happen (4)**
24:11;30:15;34:6;
39:15
**happened (1)**

35:18
**happening (1)**
33:13
**happy (3)**
29:9;38:10,10
**hard (1)**
18:14
**harm (1)**
29:25
**hear (4)**
6:20;7:7;40:14;
41:11
**heard (1)**
31:8
**hearing (11)**
9:19;13:3;18:1,3;
30:14;31:23;37:16;
43:14,15,17;45:10
**hearings (2)**
18:2,9
**Heinz's (1)**
10:4
**held (4)**
10:18;11:1,18;
47:5
**Hello (3)**
6:21;7:4,8
**helpful (1)**
23:21
**helps (1)**
22:13
**highlight (2)**
11:25;38:1
**himself (1)**
26:8
**Hinds (1)**
23:7
**hinted (1)**
34:24
**history (1)**
26:19
**hit (3)**
15:11,14,15
**hold (3)**
9:4;17:24;19:14
**HON (1)**
2:19
**honest (1)**
33:7
**Honor (65)**
6:8;7:11,16,19,25;
8:21,24;9:3,10,11,
13,15,25;10:16;
11:12;13:7;14:5;
15:18;16:25;17:9;
18:19;22:4,18;
25:22;26:2;27:7,18;
29:18,21,21;30:1,12,
17;31:12,13,18,21,
22;32:1,10;37:21;
40:7,18,21,22,23;
41:1,4,17,24;42:9,
11,13,14,16;43:19,

25;44:20;45:8,20;
46:25;48:22,25;49:3,
6
**Honor's (1)**
42:12
**hope (5)**
37:1,5;39:9;44:5,5
**hopeful (1)**
6:13
**hopefully (2)**
34:4,6
**hours (2)**
30:6;36:9
**Hudson (1)**
32:18

### I

**idea (2)**
35:2,11
**identifies (1)**
34:11
**identify (3)**
18:10,17;37:23
**identifying (1)**
18:13
**III (2)**
11:8,15
**illumination (1)**
38:11
**immediately (1)**
39:9
**immune (1)**
32:15
**impact (1)**
42:8
**important (1)**
18:8
**impose (1)**
11:3
**improper (2)**
33:21;36:14
**improperly (2)**
12:25;29:1
**inability (2)**
44:7,17
**inaccurate (1)**
12:13
**inclined (2)**
45:14,15
**include (2)**
42:24;43:13
**included (1)**
8:20
**including (3)**
21:4;26:5;36:7
**incorrect (1)**
17:5
**incurred (2)**
28:9,10,11
**indefinite (1)**
47:13
**indentured (2)**

46:18;47:16
**indicate (1)**
39:23
**indicated (6)**
24:17;27:20;
38:18;43:23;45:10;
46:2
**indicates (2)**
22:1;26:25
**individuals (1)**
36:8
**Industrial (2)**
3:2,14
**information (3)**
8:11;28:22;32:20
**inherent (3)**
11:6,11,15
**initially (1)**
44:12
**inject (1)**
23:13
**in-person (1)**
33:5
**INS (2)**
2:2;3:17
**insofar (1)**
29:10
**instructed (1)**
22:15
**Insurance (3)**
3:3,15;6:9
**intend (2)**
41:25;47:17
**intent (1)**
16:12
**intention (1)**
23:13
**interject (1)**
16:25
**International (2)**
20:19;21:2
**interrupt (1)**
12:16
**into (12)**
10:8;18:3;20:22;
23:14;28:3,10;
32:16;34:18,19;
36:22;40:5;45:4
**involve (1)**
39:16
**involved (3)**
22:10,25;28:5
**issue (35)**
9:20;15:8,17;
20:10;21:2;23:2,17,
18;28:15;30:6,10;
31:8,20;35:21,23;
36:2,25;37:4,13;
38:21,23;39:7,7,20;
40:21,24;43:8,22;
45:6,7;46:15,17;
47:10,15;48:14
**issued (1)**

19-01413-mg   Doc 30-3   Filed 04/11/20   Entered 04/11/20 16:09:16   Exhibit
Transcript   Pg 57 of 62

FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, et al.
LARISA IVANOVNA MARKUS, et al.

April 6, 2020

13:19

**issues (41)**
8:24;9:11,21;
11:10;12:20;13:3,
12;15:4,6;16:1;
19:19;20:23;21:13;
22:11,14;23:1,2,9,
15,19;30:12,22;31:1;
32:10;36:11;39:17;
40:1,2,19;41:14,22;
42:2,19,22;43:1,9,
17;46:5;48:6,7,11

**items (1)**
13:24

**Ivanovna (1)**
3:6

## J

**joined (1)**
6:15

**JUDGE (70)**
2:20;6:2;8:22;9:5,
18;10:21,24;11:10,
24;12:5,11,14,17;
13:2,4,18;14:7,11,
13,17,19,21,21,22,
25;15:11,21;16:14,
20,21;17:4,6,14;
19:22;20:20;21:2,4,
5;25:16;30:20;32:2;
41:13;42:19,23;43:1,
9,22;44:11,13,16;
45:1,15;46:5,7,15,
16,20,21;47:1,3,8,9,
13,18,20,21;48:3,6,
12,20

**judges (3)**
13:15;14:4,16

**July (1)**
45:9

**jurisdiction (2)**
12:10;25:19

**justification (2)**
29:6;37:9

## K

**keeping (1)**
37:9

**Khan (1)**
6:12

**kick (1)**
24:3

**Kingsley (2)**
31:17,17

**knowledge (2)**
34:17,18

**knows (4)**
11:7;30:12;38:7;
47:15

## L

**large (1)**
10:10

**largely (1)**
23:6

**Larisa (5)**
3:6;5:3;6:4;7:14;
29:8

**LARMAR (4)**
2:5;3:10,17;6:5

**last (6)**
23:3;31:8;36:8;
42:19;48:5,12

**late (1)**
9:1

**later (3)**
9:13,19;34:6

**LAW (7)**
5:2;22:10;44:2,2,
8,17;45:22

**lawyer (2)**
44:14;47:13

**lawyers (1)**
26:8

**lay (2)**
22:12;48:17

**lays (1)**
9:22

**least (1)**
27:4

**leave (3)**
43:16;44:18;47:11

**left (1)**
23:7

**legal (1)**
11:20;33:7;45:13

**lengthy (1)**
9:6

**letter (38)**
8:7,8,10,12,13,13,
16,17,20;9:22,24;
10:5;13:16,21,25;
17:23;19:1;22:1;
23:17;24:21;26:2,
22;29:16;32:11;
33:11;34:2,12;
36:25;37:1;38:5,8,
22;39:13,13,22;40:4;
41:6;42:7

**letters (3)**
15:5;34:25;45:4

**leverage (1)**
33:23

**Lexis (2)**
44:9,23

**Library (5)**
44:2,2,8,13,17

**life (1)**
44:14

**light (1)**
9:18

**likely (1)**
30:4

**Liman (14)**
8:22;9:18;12:5,11,
17;13:2,4,18;42:23;
43:1,9;46:5;48:6,13

**Liman's (3)**
9:5;11:10;42:19

**Limited (5)**
3:2,14;6:3;32:19;
36:9

**Linda (1)**
3:20

**line (2)**
6:12,14

**listed (1)**
27:2

**lists (1)**
13:25

**litigating (1)**
37:4

**litigation (10)**
19:14;21:16;
23:24;24:9;25:3,10,
17;28:16,23;29:10

**little (2)**
9:19;18:14

**LLC (1)**
3:21

**LM (6)**
7:1;15:20;25:14;
27:3,9,22

**locks (1)**
47:12

**logic (1)**
33:17

**London (1)**
26:14

**long (3)**
8:13;28:17,24

**longer (1)**
8:18

**looking (1)**
35:13

**lose (1)**
49:3

**lot (3)**
12:3;23:6;27:14

**Ltd (2)**
20:19;21:2

## M

**main (1)**
35:17

**making (1)**
35:20

**Management (5)**
3:4,8,12,18;8:4

**manner (1)**
18:6

**many (3)**
23:21;24:8;30:8

**March (1)**
27:8

**Marks (101)**
6:8,8;7:20;8:15,
19,21;9:8,10,21,22;
11:20;14:10;15:1,11,
11,14,18;16:23;
19:10,24;20:3,24;
21:12;22:1,3,4,24;
23:11;24:1,14;25:1,
4,8,21,22,22;26:22,
23;27:1,6;28:14,20;
29:11,14,18,18,19,
21;30:16,17,19,20,
23,25;31:3,9,12,12;
32:5;33:14;34:11;
36:16,24;37:4,11,17;
38:7,11,15,16;39:4,
8,21;40:17,18,21;
41:1,4,7,7,8,9,9,10,
13,17,21;42:2,4,11,
20;43:18,19,19;44:5;
45:2;46:22;48:8,22,
22,25

**Marks' (10)**
8:6,12;11:16;
13:16,21,25;25:12;
34:20;35:13;43:10

**Marks's (2)**
17:17;27:13

**Markus (12)**
3:6;5:3;6:4,11;
7:14;13:24;15:19;
19:19;26:11;27:2;
36:20;46:9

**Markus' (1)**
29:8

**Markus's (3)**
26:3,6,13

**MARTIN (1)**
2:19

**matter (6)**
12:5,9;13:4,19;
36:8;47:8

**matters (5)**
12:25;13:13,25;
23:21;48:2

**May (31)**
6:6;8:22,22;9:15;
13:10;18:6,16,21,23;
20:8;21:22;22:18,
21;23:14;24:18;
28:21;29:2;30:18;
31:4,4,15,22;34:8;
36:17;37:21;38:16;
39:1,13;40:21;
42:16;45:6;48:22

**maybe (1)**
17:2

**mean (12)**
10:4,8;15:6;19:7;
27:13,14;28:7,23;
33:12,19;34:24;40:5

**meant (1)**
15:14

**mechanical (2)**
23:2,9

**mediation (2)**
23:18,20

**mediator (1)**
23:22

**meet (2)**
40:22;41:2

**merits (1)**
47:22

**middle (1)**
31:4

**might (5)**
17:6;22:5;38:11;
43:22;44:20

**million (15)**
25:25;26:3,4,8,17;
27:12;30:4;33:16;
34:19;37:5;38:19;
39:21;40:3,24;42:17

**mind (1)**
33:15

**mindful (1)**
24:7

**minute (1)**
42:2;48:19

**missed (1)**
38:15

**mistaken (1)**
17:2

**misunderstandings (1)**
23:5

**Monday (1)**
23:3

**money (23)**
17:12,15;25:24;
26:1,13;27:14,16,20,
22,25;28:8,9,11,13;
33:15;34:14,21;35:8,
25;36:19;38:6,7,9

**monies (4)**
17:10;27:23;28:3,
8

**months (1)**
33:16

**more (6)**
10:12;11:7;24:12;
36:18;41:11;48:18

**Moscow (3)**
6:13;22:5,6

**most (6)**
8:23;22:8;28:9;
30:4,9;38:5

**motion (26)**
12:18,19,22;17:5,
7,9,13;27:21;30:3;
31:14,20;32:12,21,
22;45:12,15,23,24;
46:3,13,16,24;47:10,
22;48:1;49:1

**move (7)**

FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, et al.
LARISA IVANOVNA MARKUS, et al.

April 6, 2020

24:9,9,19;30:2;
39:3;44:15;47:17
**moved (1)**
47:7
**MP3 (2)**
18:5,7
**much (7)**
8:2;11:7,12;23:13;
28:12;35:9;49:9
**multi-country (1)**
23:19
**multi-jurisdiction (1)**
23:19
**multiple (1)**
34:24
**multi-tiered (1)**
27:13
**myself (1)**
23:13
**mystery (2)**
38:9,12

## N

**name (1)**
14:20
**nature (1)**
11:11
**necessary (5)**
10:11,13;21:7;
24:19;29:17
**need (17)**
9:23;10:6;18:16;
24:14;28:1,14,20;
29:12;30:2,9;36:16;
39:16;40:19;41:14;
42:20;44:1,4
**needed (1)**
31:10
**negotiating (1)**
31:17
**negotiation (1)**
33:23
**neither (1)**
44:25
**New (6)**
2:11,11;3:23;5:6;
20:18;32:17
**next (5)**
24:2;37:2;38:21;
41:20;42:13
**Nina (1)**
6:12
**nobody (1)**
33:15
**none (1)**
40:5
**nonparty (1)**
11:21
**normal (1)**
18:6
**normalacy (3)**
32:24;33:3;34:4

**note (2)**
19:23;21:11
**notes (1)**
37:19
**notice (1)**
12:1
**notify (1)**
29:15
**noting (1)**
20:3
**number (7)**
19:20,23;32:25;
33:1,7,10,19
**nutshell (1)**
25:24
**NY (2)**
3:23;5:6
**NYU (2)**
44:2,13

## O

**obligate (1)**
47:2
**obligations (1)**
19:12
**obtain (2)**
28:21;29:15
**obvious (2)**
10:11;24:22
**obviously (7)**
20:24;21:19;
23:22;32:3;34:17,
24;35:7
**occasion (1)**
45:9
**occur (1)**
25:20
**o'clock (1)**
49:8
**off (4)**
31:3,9;35:15;37:4
**OFFICE (5)**
5:2;6:12,13;22:5;
44:3
**offices (1)**
30:9
**old (1)**
44:12
**One (51)**
2:10;10:25;12:5;
13:7,12,23;14:5,13,
18,20,22,25;15:7,7;
16:6,9,12,13,13,13;
17:21;18:8;22:8;
23:23;25:1;27:20;
29:4;30:10,21;31:1,
22;32:25;34:25;
35:10;37:22;38:1,22,
25;39:16;41:5;
42:24;43:13,22;45:6,
22,23;46:1,11;47:23;
48:18,23

**ongoing (1)**
23:25
**online (1)**
44:11
**only (13)**
7:14,15;8:25;
11:22;14:5,13;
21:24;28:17;30:1,6;
31:20;45:21;47:2
**open (1)**
43:16
**opened (2)**
26:21,22
operations@escribersnet (1)
3:25
**opinion (1)**
9:4,6,14;20:20,23;
21:3,6,11
**opportunity (1)**
25:23
**opposed (1)**
15:24
**order (50)**
8:23,23;13:17,18,
23;14:6,12,19;15:21,
25;16:22;17:4,4,11,
12;18:5;19:18,19,22,
24;20:2,4,4,14;21:9,
13,14;25:6,7,15;
26:10;27:4;28:3,4,
10;35:22;36:7,10;
41:15,23;42:13,14;
43:7;44:1;45:24;
46:7,11,12;47:10;
48:14
**ordered (4)**
8:5;20:21;36:9;
38:24
**orders (1)**
45:13
**ordinary (5)**
27:15;34:22;35:1,
18,25
**others (1)**
24:12
**otherwise (4)**
24:19;25:12;
37:14,14
**ought (2)**
38:22;39:23
**out (13)**
9:23;13:2;21:11;
22:14;25:12,15;
26:5;27:9,22;33:5;
35:25;37:9;48:17
**outlined (1)**
38:8
**outside (4)**
15:2;22:6;32:17;
34:14
**outstanding (1)**
22:11
**over (12)**

11:23;12:10;21:1;
24:2,22,25;25:3,4,5,
8;33:16;37:4
**overruled (1)**
48:15
**Owen (3)**
20:20;21:2;25:16
**own (3)**
27:13;34:20;35:13

## P

**page (5)**
9:1;13:16,21;26:2,
22
**pages (1)**
13:16
**paid (12)**
20:11,13,22,25;
21:9;26:5,14;27:2;
28:8;46:22,22,24
**pandemic (9)**
24:5,7;36:6,11,13;
37:7;41:5,12;43:24
**Park (2)**
19:3;31:24
**part (5)**
8:24;26:8,8;31:21;
40:8
**particularly (1)**
46:20
**parties (5)**
11:22;19:14;
21:20;29:3;36:14
**partly (2)**
15:19,19
**passed (1)**
20:20
**past (2)**
14:24;29:1
**patently (1)**
47:4
**pause (13)**
23:24;25:3,10,11;
28:16,23;29:5,9;
37:13;38:21;41:16;
42:3;43:5
**paused (1)**
25:17
**pay (2)**
35:25;48:4
**payment (2)**
21:8;46:17
**pending (10)**
12:18;13:17,18;
14:1,3,16,23;15:17;
46:7;49:1
**people (3)**
26:5,9;30:9
**Perhaps (2)**
36:1;38:14
**period (2)**
8:18;24:4;39:6

**permit (1)**
36:14
**personal (1)**
34:17
**ph (2)**
10:4;23:1
**phone (4)**
10:13;34:5,24;
45:22
**place (2)**
10:9;25:7
**Plaintiff (1)**
2:3
**please (5)**
6:6,18;29:15;
44:22;49:8
**plural (1)**
8:3
**pm (4)**
21:22;24:17;39:1;
43:6
**point (17)**
11:12;12:5;13:7;
14:24;15:10;16:15;
21:11;23:2,10;28:5,
6,12;32:11;37:22;
38:1,12;39:16
**pointed (1)**
25:15
**portion (2)**
10:19;12:12
**portions (1)**
11:25
**position (8)**
16:2;19:4,25;20:3;
25:13;32:22;34:3;
45:18
**positions (1)**
21:20
**posture (1)**
45:11
**predicate (2)**
11:20;45:13
**prejudice (4)**
12:22;45:25;46:4;
48:1
**prejudiced (2)**
32:11;33:8
**prepare (4)**
21:12,14;41:15;
45:24
**prepared (5)**
8:25;9:11;25:2;
28:15;46:11
**present (1)**
27:11
**presents (2)**
24:8;36:11
**prevent (1)**
25:7
**previously (1)**
8:5
**primarily (1)**

**FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, et al.**
**LARISA IVANOVNA MARKUS, et al.**

April 6, 2020

22:25

**Princeton (3)**
20:18;21:1;25:15

**prior (2)**
17:10;28:10

**privileged (1)**
34:18

**probably (1)**
30:5

**problem (3)**
21:25;31:21;40:6

**problems (3)**
36:6,13;37:8

**Proc (1)**
2:3

**Procedure (1)**
11:4

**proceed (6)**
9:10,24;29:14;
41:25;47:19,24

**proceeding (7)**
3:10,16;7:15,15,
21;35:17;45:10

**proceedings (12)**
6:5;7:6,18,25;
9:18;12:17,23;21:7,
17;29:16;39:22;
49:11

**proceeds (4)**
26:6;27:3,24;
35:11

**process (1)**
11:19

**production (1)**
30:8

**productive (1)**
23:3

**promptly (2)**
29:16;39:22

**properly (2)**
29:1;34:7

**property (11)**
19:17;20:1;26:3,7,
11,13;29:8;31:15,16;
36:21;37:10

**prophylactically (1)**
43:25

**proposed (10)**
21:13,14;24:2;
41:15;42:13,14;43:5,
15,16;44:6

**Protax (7)**
6:19;7:1;15:20;
26:6;28:2;32:18;
35:8

**provided (1)**
36:10

**provides (1)**
21:15

**pursuant (1)**
11:6

**pursuing (2)**
22:3;29:23

**put (3)**
37:4;41:6;45:18

**putting (1)**
19:13

## Q

**quite (4)**
15:19;18:22,22;
33:7

## R

**raise (5)**
13:12;20:23;
43:22;45:6;46:16

**raised (2)**
23:17;39:8

**raises (1)**
20:8

**rather (2)**
33:12;34:6

**reach (13)**
23:25;24:15;
28:20;36:17,24;37:2,
3,9,17;42:21;43:3,
12;48:8

**reached (7)**
21:21,23;24:3,16,
18;39:2,5

**read (2)**
10:25;45:9

**reading (4)**
17:1;19:9;24:21,
23

**ready (2)**
16:15,16

**really (4)**
21:13;23:8;33:14;
39:2

**reason (2)**
24:11,13

**reasons (1)**
46:2

**rebut (1)**
9:24

**recall (4)**
16:24;17:2;27:17;
31:23

**receive (3)**
9:4,5;43:14

**received (4)**
8:5;14:23;26:12;
29:3

**recently (2)**
16:9;22:8

**recess (1)**
49:8

**recitation (1)**
12:12

**recognition (14)**
19:19;20:1,4,14,
15;21:9;25:14;27:4;

29:7;35:17,20,22;
36:19,23

**recognize (2)**
20:5;24:5

**recognized (1)**
20:5

**recollection (1)**
19:6

**record (11)**
18:10,17;37:24;
41:19;46:6,9;48:5,
10,13,18,21

**recorded (2)**
18:4;31:4

**records (1)**
34:20

**recover (1)**
26:9

**recovered (1)**
29:4

**recovery (1)**
25:19

**redraft (1)**
23:8

**reference (1)**
7:14

**referred (1)**
7:1

**regarding (1)**
8:8

**regardless (2)**
10:9;19:5

**reiterate (1)**
38:4

**relate (1)**
20:13

**related (1)**
31:20

**relating (1)**
11:10

**relieve (1)**
46:8

**relieved (5)**
45:23;46:13,16;
47:7,17

**relieving (1)**
48:10

**remainder (1)**
28:11

**remains (3)**
19:11,17;24:23

**remand (18)**
9:11,18;11:5;
12:11,17,23;13:1;
42:3,19,22;43:2,9,
17;46:5;47:24;48:6,
7,12

**remanded (5)**
8:24;12:5,10;13:4,
19

**remarks (1)**
31:4

**remember (2)**

17:1;18:14

**reminder (1)**
18:13

**remote (1)**
36:10

**remotely (4)**
32:5,13,19;33:9

**remove (1)**
25:18

**repeat (1)**
31:6

**repetitive (2)**
18:16;40:9

**reply (2)**
47:3;49:2

**report (5)**
38:16,17,25;
40:23;42:16

**reports (4)**
8:5;21:18,22;
24:17

**represent (2)**
6:9,10

**representative (7)**
6:10;25:17,19;
28:18,24;29:2;37:10

**representatives (3)**
6:7;22:2;29:11

**representative's (1)**
17:13

**request (3)**
8:13;14:9;33:11

**requested (2)**
14:9;16:8,9

**require (5)**
21:18,21;28:21;
30:8;36:17

**required (2)**
24:24;28:18

**reread (1)**
10:25

**research (2)**
44:12,13

**resolve (2)**
19:13;29:12

**resolved (7)**
12:21;23:6;46:8,
20;47:1,12;48:11

**respect (23)**
10:16;11:15;
12:13,17;19:17,18,
22;20:3,10,16;21:8;
22:2;23:15;24:11,
20;38:23;39:8;40:7;
43:9;45:12,23;
46:13;47:22

**respond (11)**
9:15;10:6;16:3;
17:6;22:19,21;
30:18;31:1,7;32:6;
37:21

**responding (1)**
32:9

**responds (1)**
18:15

**response (3)**
14:23;16:6,16

**responsive (1)**
39:9

**restrictions (1)**
10:9

**result (1)**
31:3

**retained (1)**
7:22

**retaining (1)**
26:17

**return (1)**
32:24

**returned (1)**
33:2

**returns (2)**
30:13;31:24

**review (5)**
9:5,6,13;10:4;
46:12

**reviewed (3)**
8:6,11;19:6

**revocation (1)**
25:13

**Richard (1)**
20:20

**right (23)**
6:2,16;8:1,3;
11:19;12:3,21;13:5,
9;14:15;18:20,22,22;
19:9;27:1,16;33:15;
41:23;42:18;48:2;
49:4,7,8

**rights (2)**
11:2;29:2

**risk (1)**
29:24

**Rosenberg (1)**
28:6

**ROZHKOV (6)**
2:2;3:7,10,16;6:5,
10

**Rule (6)**
11:4,21,22;16:14;
32:1;49:1

**ruled (3)**
16:9,10;20:7

**Rules (1)**
11:4

**ruling (4)**
13:19;20:2;21:14;
48:15

**Russia (1)**
23:5

## S

**sale (3)**
26:3,13;27:24

**salient (1)**

19-01413-mg    Doc 30-3    Filed 04/11/20    Entered 04/11/20 16:09:16    Exhibit
FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, et al. v.
LARISA IVANOVNA MARKUS, et al.
Transcript - Pg 60 of 62
April 6, 2020

12:1

**same (3)**
8:7;15:25,25

**sanctions (7)**
8:23;9:20;11:3;
12:20;13:17;43:10;
45:13

**saying (6)**
18:25;31:13;32:2;
36:12;40:7;47:11

**schedule (23)**
12:15,16,23;13:3;
24:2,15;29:16;39:6,
15;42:2,22,24;43:4,
7,12,13,15,16;44:6;
45:3,5;48:9,9

**scheduled (1)**
8:4

**schedules (1)**
43:5

**School (3)**
44:2,3,12

**scope (4)**
11:7,12,14;19:11

**score (2)**
42:20,24

**SDNY (1)**
20:19

**SEC (2)**
20:18;21:1

**second (14)**
9:17;11:9,13;12:2,
7,8,24;13:2;16:21;
17:2,24;21:5;34:13;
49:7

**Section (1)**
35:16

**seeing (1)**
43:15

**seek (1)**
43:11

**seeking (2)**
43:24;44:15

**seem (1)**
18:16

**seems (1)**
40:1

**sees (1)**
9:25

**sent (3)**
34:21;43:1;48:12

**separate (6)**
14:11,11;19:22;
38:19;39:7;45:4

**Sergey (1)**
6:13

**series (2)**
14:8;23:19

**servant (1)**
46:18

**servitude (1)**
47:16

**set (8)**
17:22;19:1;32:10;
33:11;40:2;42:7;
43:15;48:9

**setting (1)**
45:5

**settle (1)**
42:15

**settlement (29)**
8:16;10:4;15:7;
19:15;21:19,21,23,
25;22:6,10,14,16;
23:14,25;24:3,16,18;
29:24;33:23;37:2,3,
5;39:1,3,5,15;40:2,5;
45:11

**settlements (1)**
22:3

**Seventh (1)**
3:22

**severe (2)**
32:21,22

**severely (2)**
32:11;33:8

**shameful (1)**
33:12

**short (2)**
30:4;31:10

**shouting (1)**
37:7

**sic (3)**
32:24;33:3;34:4

**significant (1)**
36:6

**similar (1)**
16:5

**Singer (93)**
6:17,18,19,20,21,
23,25,25;8:10,10;
10:1,3;14:11,15,18;
16:1,4,8,12;17:12,
19,21,25,25;18:12,
19,21,23,25;19:10,
12;20:11,24;22:8,18,
18,21,23,24;23:13,
17;24:1,14;27:10,12;
28:14,21;29:11,20;
30:18,18,25;31:6;
32:4,7,7,8,9;34:8,9,
16;35:24;36:5,16,18;
37:7,12,14,21,25,25;
38:3;39:4,10,11,25;
40:3,4,9,10,11,12,13,
16,22;41:22;42:5,16;
43:23;46:22;49:5,6,
10

**Singer's (11)**
8:8,13,17;9:24;
16:4,17;17:10;
19:12;22:1;24:21;
25:5

**sit (2)**
22:13;44:13

**sitting (3)**
34:19;35:2,12

**situation (6)**
16:11;32:23;33:2,
3;34:4;47:20

**six (4)**
8:15;13:20;33:16;
34:12

**slave (1)**
46:23

**sleep (1)**
31:2

**slightly (1)**
19:2

**Sokolov (1)**
6:13

**Solutions (2)**
18:3,4

**somehow (1)**
35:11

**someplace (2)**
26:17;34:15

**sometimes (1)**
18:14

**somewhere (3)**
32:17;35:3,12

**soon (1)**
16:11

**sooner (4)**
21:23;24:18;34:6;
39:1

**sorry (10)**
7:7;10:21;15:14;
18:21;33:10;37:25;
38:17;39:11,13;
41:24

**sort (8)**
31:3;32:24;33:2,
22,24;34:4,7;38:12

**sought (2)**
14:22;17:3

**Southern (1)**
20:17

**speak (4)**
13:11;18:12,21,23

**speaking (1)**
18:11

**speaks (2)**
18:9;48:21

**specific (2)**
11:17;31:15

**specifically (10)**
10:17;11:10;
18:17;20:5,5,11,21;
39:20;46:24;48:6

**spent (4)**
27:14;34:25;
35:14;37:3

**stand (1)**
42:17

**standard (1)**
47:4

**start (1)**
17:25

**started (1)**
18:12

**starting (1)**
24:16

**STATE (5)**
2:2;3:3,15,16;20:6

**stated (2)**
15:22;19:7

**statement (3)**
11:16,17;35:24

**States (7)**
2:9;26:18;27:5,11,
16;34:14;36:21

**status (10)**
8:5;15:10;21:18,
22;24:17;37:1;
38:15,19,22,25

**stay (14)**
16:21;17:3,11,14;
19:8;20:14;21:15;
29:7;35:19,21;
36:22;41:23;42:13;
46:25

**stayed (1)**
8:14

**staying (1)**
32:16

**still (9)**
14:23;15:17;
22:14;23:1;24:10;
27:10;30:16;45:14;
47:24

**stop (2)**
12:16;17:24;
40:13;46:3

**story (1)**
31:22

**strongly (1)**
34:3

**subject (9)**
19:17;29:7;30:7;
35:21;36:22;37:10;
41:23;42:3;43:4

**submission (1)**
7:20

**submit (3)**
42:13;43:5;45:3

**submitted (4)**
9:2;14:7;15:5;49:2

**subsequent (1)**
20:9

**subsequently (1)**
17:15

**substantial (3)**
22:14;24:21;26:12

**substantive (3)**
23:1,8;44:1

**succeed (1)**
39:15

**suggest (1)**
43:24

**suggesting (1)**
46:17

**Suite (1)**
3:22;5:5

**supposed (1)**
39:14

**Sure (6)**
14:5;15:8;25:9,16;
34:5;39:12

**sync (1)**
23:1

**system (1)**
32:15

---

# T

**talk (2)**
9:16;39:4

**tax (2)**
30:13;31:24

**technology (1)**
31:1

**telephone (9)**
18:1;9;24:2,15;
37:16;39:24;41:3;
42:21;43:16

**TELEPHONICALLY (1)**
5:8

**terms (2)**
43:14;48:25

**testimony (2)**
30:12;31:25

**therefore (1)**
27:8

**thinking (1)**
9:12

**Thirteenth (1)**
47:14

**thirty (7)**
24:16;28:16;37:2,
14;38:21;39:22;
42:15

**thirty- (1)**
43:4

**thirty-day (6)**
21:15;24:4;29:9;
39:6;41:16;42:3

**though (3)**
15:25;18:16;19:6

**thought (1)**
31:9

**three (7)**
8:6;13:20,24;
14:12;16:8;30:5;
33:10

**timely (3)**
14:7,13;19:2

**timing (1)**
33:11

**today (16)**
8:4,9,25;11:9;
12:2;18:1;19:13;
20:2;21:10;22:13;
23:23;36:4;40:20;
48:2,16;49:5

**FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, et al. v.**
**LARISA IVANOVNA MARKUS, et al.**

April 6, 2020

**today's (1)**
13:3
**tomorrow (1)**
34:15
**Torres (13)**
14:7,17,19,22;
15:22;16:14,21;
17:4;46:8,20;47:1,8,
18
**touched (1)**
35:7
**track (1)**
49:3
**Transcribed (1)**
3:20
**transcript (3)**
18:6;45:9,17
**transfer (8)**
17:10,12,14;20:6;
25:7;28:25;29:6;
34:14
**transferred (10)**
17:17,22;26:4;
27:6,7,9,24;28:19;
29:1;35:14
**transferring (1)**
17:22
**transfers (8)**
19:1,8;20:1;25:11;
34:22;36:2,15;38:8
**tremendous (1)**
10:8
**triggered (1)**
20:14
**trust (4)**
25:12,14;27:3;
47:1
**trustee (1)**
6:11
**try (6)**
19:14;24:15;
28:20;33:16;42:21;
48:8
**trying (2)**
33:22;37:3
**turned (6)**
21:1;24:22,25;
25:4,5,8
**turnover (31)**
13:23;14:6,12,19;
15:20;16:22;17:4;
19:4,7,11,18;20:4,
21;24:20;25:3,10;
26:10,24;28:18;
29:15;30:3,7,14;
31:14,20,23;37:10;
39:8,17,20;46:7
**two (24)**
6:3,4;8:24;11:25;
13:25;14:10,18;15:4,
6,24;21:17;22:7;
30:5;33:1,7,16,19;
36:8;38:20;39:4,19;

41:2;42:20;43:11
**two-to-three-hour (1)**
31:19

## U

**Uh-hum (2)**
34:9;40:16
**unable (1)**
43:3
**unacceptable (1)**
33:20
**under (3)**
11:4;25:2;26:24
**unfair (2)**
46:21;47:4
**unfortunately (1)**
26:19
**United (7)**
2:9;26:18;27:5,11,
15;34:14;36:21
**unlikely (1)**
34:1
**unpaid (1)**
34:12
**up (4)**
10:6;13:1;33:19;
40:20
**update (6)**
8:19;9:9,21;10:2,
3;39:14
**upon (5)**
20:15;23:22;
35:17,19,22
**use (1)**
44:2
**used (5)**
25:11;29:5;36:14;
37:8;43:24
**using (2)**
18:2;33:23
**usually (1)**
44:2
**utilize (1)**
33:22

## V

**vacate (2)**
45:12,15
**vacated (1)**
10:18
**Valley (1)**
32:18
**various (2)**
26:5;34:21
**versus (1)**
23:5
**VICTOR (3)**
5:2,8;7:13
**view (3)**
25:4,5;39:7
**violation (2)**

11:1,19
**virtual (1)**
33:7
**virtue (1)**
44:16
**vis-a-vis (1)**
47:14
**vitiates (1)**
33:17
**Vladimirovich (1)**
3:6
**Vn (2)**
3:2,14
**Vneshprombank (1)**
6:10
**void (2)**
20:2,6
**Vyskocil (1)**
19:23

## W

**wait (4)**
9:17;16:20;34:3;
48:15
**waited (1)**
33:16
**waiting (1)**
10:4
**wants (4)**
38:25;39:21;
42:11;44:15
**waste (3)**
11:23;15:6,9
**way (1)**
33:24
**week (1)**
36:8
**weeks (2)**
8:15,15
**Westlaw (2)**
44:10,22
**what's (5)**
8:20;20:12;31:20;
36:12;39:14
**Whereupon (1)**
49:11
**willing (1)**
28:17
**wish (4)**
8:19;9:21;10:2;
29:14
**wishes (1)**
18:5
**withdraw (5)**
12:18,19,20,22;
46:16
**withdrawn (1)**
47:22
**within (4)**
24:3;26:10;27:24;
41:19
**without (9)**

12:22;18:12;
33:17;34:23;40:5;
45:24;46:3;47:13;
48:1
**Woods (3)**
14:21,21,25
**work (4)**
24:2;41:21;46:18,
23
**worked (2)**
23:5;32:18
**working (1)**
32:13
**WORMS (80)**
5:2,8;6:17;7:4,5,5,
6,8,9,11,13,13,19,24;
8:2;9:3,5,15,17,20;
10:14,16,21,23,24;
12:14,19;13:5,7,10,
13,22;14:2,5,21;
15:18,22,24;16:25;
17:3,6,8,9,16,17;
19:7;20:13;41:23;
42:1,8,20;43:20,21;
44:11,19,20,21,21,
24;45:1,6,8,8,18,20;
46:1,3,6,9,14,15;
47:9,20,25;48:1,3,4,
18,20;49:1
**Worms' (3)**
16:3,17;45:23
**write (1)**
47:2
**writing (1)**
45:18
**written (8)**
7:20;21:3,18,21;
24:17;38:19,24;43:5
**wrong (1)**
15:15

## Y

**York (6)**
2:11,11;3:23;5:6;
20:18;32:17
**YURI (2)**
2:2;3:6,16

## 1

**1 (4)**
19:20;20:2;35:22;
36:3
**1.3 (10)**
25:25;26:4,17;
27:12;30:4;34:19;
35:11;39:17;40:24;
42:17
**1.378 (5)**
26:7;37:5;38:19;
39:21;40:3
**10 (2)**

3:12,18
**10:00 (1)**
2:14
**10001 (1)**
3:23
**10006 (1)**
5:6
**11 (1)**
49:1
**15 (11)**
3:3,7;6:3;7:6,15,
15;8:7;21:17;36:21;
46:9;48:11
**16-13534 (1)**
6:4
**16-13534-mg (2)**
3:2,14
**19-01413 (1)**
6:5
**19-01413-mg (1)**
3:10
**19-01414 (1)**
6:5
**19-01414-mg (2)**
2:4;3:16
**19-10096 (1)**
6:4
**19-10096-mg (1)**
3:6
**1st (4)**
26:7;27:7,9;36:20

## 2

**2 (7)**
8:6,8,16,17,20;
34:12;49:8
**2000 (1)**
20:19
**2019 (3)**
19:20,24;20:2
**2020 (4)**
2:13;8:6,10;21:22
**231 (1)**
35:5
**231,000 (2)**
27:17,19
**247 (1)**
3:8
**29 (1)**
19:21
**29th (1)**
27:8
**2d (1)**
20:19
**2nd (4)**
9:22;13:16,21;
19:1

## 3

**30 (4)**
8:15,16;19:14;

FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED "VEB",
LARISA IVANOVNA MARKUS, et al.

April 6, 2020

22:16
**30-day (1)**
  23:24
**352 (1)**
  3:22
**36- (1)**
  35:5
**36,000 (2)**
  27:21,25
**362 (1)**
  35:16
**37 (3)**
  11:4,21,22

### 4

**443 (1)**
  20:19
**4th (1)**
  45:9

### 5

**5 (7)**
  13:16,16,21;
  21:22;24:17;39:1;
  43:5
**5.38 (1)**
  26:2
**50-some (1)**
  9:1
**550 (2)**
  19:3;31:24

### 6

**6 (3)**
  2:13;26:2,22
**65 (1)**
  5:4
**6th (1)**
  8:10

### 7

**7 (1)**
  21:22
**750 (1)**
  5:5
**7th (5)**
  24:18;38:16;39:1,
  13;42:16

### 8

**84 (1)**
  20:19

### 9

**973406-2250 (1)**
  3:24