**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

In re:

      **LARISA MARKUS,**

           Debtor in a Foreign Proceeding.

Chapter 15

Case No. 19-10096 (MG)

-----------------------------------------------------------------x

In re:

      **FOREIGN ECONOMIC**
      **INDUSTRIAL BANK LIMITED,**
      **"VNESHPROMBANK" LTD.,**

           Debtor in a Foreign Proceeding.

Chapter 15

Case No. 16-13534 (MG)

-----------------------------------------------------------------x

      **YURI ROZHKOV AND THE STATE**
      **CORPORATION "DEPOSIT**
      **INSURANCE AGENCY,"**

               Plaintiffs,

         v.

      **LARMAR FOUNDATION; ILYA BYKOV;**
      **BG ATLANTIC, INC.; LM REALTY 31B,**
      **LLC; LM REALTY 27D, LLC; LM REALTY**
      **24C, LLC; LM REALTY 23H, LLC; LM**
      **REALTY 20A, LLC; LM REALTY 18 WEST,**
      **LLC; LM REALTY 10C, LLC; LM PROPERTY**
      **MANAGEMENT LLC; INNOVATIVE**
      **CONSTRUCTION GROUP, INC.; FIRST**
      **INTEGRATED CONSTRUCTION, INC.; AND**
      **LARISA MARKUS,**

               Defendants.

Adv. Pro. Case No. 19-01413 (MG)

-----------------------------------------------------------------x

      **YURI ROZHKOV AND THE STATE**
      **CORPORATION "DEPOSIT**
      **INSURANCE AGENCY,"**

Adv. Pro. Case No. 19-01414 (MG)

Plaintiffs,

v.

**LARMAR FOUNDATION; ILYA BYKOV; BG ATLANTIC, INC.; LM REALTY 31B, LLC; LM REALTY 27D, LLC; LM REALTY 24C, LLC; LM REALTY 23H, LLC; LM REALTY 20A, LLC; LM REALTY 18 WEST, LLC; LM REALTY 10C, LLC; LM PROPERTY MANAGEMENT LLC; INNOVATIVE CONSTRUCTION GROUP, INC.; FIRST INTEGRATED CONSTRUCTION, INC.; AND LARISA MARKUS**,

Defendants.

-------------------------------------------------------------x

## NOTICE OF HEARING TO CONSIDER A FOREIGN REPRESENTATIVE'S MOTION TO APPROVE THE SETTLEMENT AGREEMENT AND RELATED SERVICES AGREEMENT

**PLEASE TAKE NOTICE** that a hearing on the motion of Yuri Vladimirovich Rozhkov, the trustee and foreign representative (the "**Markus FR**" or "**Rozhkov**")[1] of the foreign debtor Larisa Markus, and the State Corporation "Deposit Insurance Agency," the trustee and foreign representative of the Foreign Economic Industrial Bank Limited, Vneshprombank Ltd., the largest creditor in Markus's Russian insolvency proceeding, for entry of an order approving the settlement agreement among Markus, the Markus FR, the Bank FR, Ilya Bykov ("**Bykov**"), LARMAR Foundation, the LM Entities, the Protax Entities, and BG Atlantic, Inc. (the "**U.S. Settlement Agreement**") and related services agreement between the Markus FR and Avenir Realty Inc. (the "**Motion**"), under 11 U.S.C. §§ 105(a), 363(b), 1509(b), 1521(a)(7) and (b), 1522(a) and (c); Bankruptcy Rules 2002(a)(3), 9014, and 9019(a); and Rules 9006-1 and 9014-1 of the Local Bankruptcy Rules for the Southern District of New York, will be held using Zoom for

---

[1] Capitalized terms not defined herein have the meaning given to them in the U.S. Settlement Agreement and the Services Agreement unless expressly stated otherwise.

Government[2] before the Honorable Martin Glenn, United States Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004-1408, Courtroom 523 (the "**Court**"), on **September 28, 2021 at 10:00 a.m. (Eastern Time),** or as soon thereafter as counsel can be heard (the "**Hearing**").

**PLEASE TAKE FURTHER NOTICE** that the instructions to participate in the Hearing using Zoom for Government may be obtained at: https://www.nysb.uscourts.gov/content/judge-martin-glenn. Parties that wish to appear at a zoom hearing, whether making a "live" or "listen only" appearance before the Court, need to make an eCourtAppearance through the Court's website **before September 27, 2021 at 4:00 p.m.**

**PLEASE TAKE FURTHER NOTICE** that any response or objection ("**Objection**") to the Motion must (a) conform to the Bankruptcy Rules and the Local Rules, (b) set forth the name of the objecting party, the nature and basis of the Objection, and specific grounds therefore, and (c) be filed with the Clerk of the Court (with a copy to be delivered to the Chambers of the Honorable Martin Glenn, One Bowling Green, New York, New York, 10004-1408, and (d) be served upon (i) attorneys to Markus FR, Herrick, Feinstein LLP, 2 Park Avenue, New York, NY 10016 (Attn: George V. Utlik, Esq., Stephen B. Selbst, Esq., and Rachel H. Ginzburg, Esq.) and via e-mail at gutlik@herrick.com, sselbst@herrick.com, and rginzburg@herrick.com **no later than 4:00 p.m. (Eastern Time) on September 21, 2021 at 4:00 p.m.**

---

[2] The Court will utilize Zoom for Government (for audio and video purposes) for the Hearing. The Zoom link will be provided by the Court to the participants that make an eCourtAppearance on or before 4:00 p.m. (Eastern Time) on September 27, 2021. All participants required to appear pursuant to this order must make an eCourtAppearance through the Court's website. Please see Judge Glenn's chambers page on the Court website to make an eCourtAppearance: http://www.nysb.uscourts.gov/content/judge-martin-glenn. There are two new tabs next to the Chamber's Rules, Calendars and Opinions tabs. The two tabs are "Zoom hearings" and "eCourtAppearances." The "Zoom hearing" tab has information regarding using Zoom for Government. To make your appearance for the Hearing, please click on the eCourtAppearances tab.

**PLEASE TAKE FURTHER NOTICE** that, if no Objection to the Motion is made in accordance with the procedures set forth in this Notice, the Court may enter an order approving the Motion and granting the relief sought in the Motion without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be adjourned from time-to-time by the Court without additional notice if the adjournment is announced on the record in open court.

Dated: August 24, 2021
New York, New York

Respectfully submitted,

HERRICK, FEINSTEIN LLP

By: /s/  *Stephen B. Selbst*
    Stephen B. Selbst
    George V. Utlik
    Rachel H. Ginzburg
    2 Park Avenue
    New York, New York 10016
    (212) 592-1400
    (212) 592-1500 (fax)
    sselbst@herrick.com
    gutlik@herrick.com
    rginzburg@herrick.com

*Attorneys for the Foreign Representative*

HERRICK, FEINSTEIN LLP
Stephen B. Selbst
George V. Utlik
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
gutlik@herrick.com

*Attorneys for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:

       **LARISA MARKUS**,

           Debtor in a Foreign Proceeding.

Chapter 15

Case No. 19-10096 (MG)

---------------------------------------------------------------x

In re:

       **FOREIGN ECONOMIC**
**INDUSTRIAL BANK LIMITED**,
**"VNESHPROMBANK" LTD.**,

           Debtor in a Foreign Proceeding.

Chapter 15

Case No. 16-13534 (MG)

---------------------------------------------------------------x

       **YURI ROZHKOV AND THE STATE**
**CORPORATION "DEPOSIT**
**INSURANCE AGENCY**,"

              Plaintiffs,

      v.

       **LARMAR FOUNDATION; ILYA BYKOV;**
**BG ATLANTIC, INC.; LM REALTY 31B,**
**LLC; LM REALTY 27D, LLC; LM REALTY**
**24C, LLC; LM REALTY 23H, LLC; LM**
**REALTY 20A, LLC; LM REALTY 18 WEST,**
**LLC; LM REALTY 10C, LLC; LM PROPERTY**
**MANAGEMENT LLC; INNOVATIVE**

Adv. Pro. Case No. 19-01413 (MG)

1

**CONSTRUCTION GROUP, INC.; FIRST
INTEGRATED CONSTRUCTION, INC.; AND
LARISA MARKUS**,

Defendants.

-----------------------------------------------------------------x

**YURI ROZHKOV AND THE STATE
CORPORATION "DEPOSIT
INSURANCE AGENCY**,"

Adv. Pro. Case No. 19-01414 (MG)

Plaintiffs,

v.

**LARMAR FOUNDATION; ILYA BYKOV;
BG ATLANTIC, INC.; LM REALTY 31B,
LLC; LM REALTY 27D, LLC; LM REALTY
24C, LLC; LM REALTY 23H, LLC; LM
REALTY 20A, LLC; LM REALTY 18 WEST,
LLC; LM REALTY 10C, LLC; LM PROPERTY
MANAGEMENT LLC; INNOVATIVE
CONSTRUCTION GROUP, INC.; FIRST
INTEGRATED CONSTRUCTION, INC.; AND
LARISA MARKUS**,

Defendants.

-----------------------------------------------------------------x

## THE FOREIGN REPRESENTATIVES' MOTION TO APPROVE
## THE SETTLEMENT AGREEMENT AND RELATED SERVICES AGREEMENT

Yuri Vladimirovich Rozhkov, the trustee and foreign representative (the "**Markus FR**" or

"**Rozhkov**") of the foreign debtor Larisa Markus ("**Markus**" or the "**Debtor**"), and the State

Corporation "Deposit Insurance Agency," the trustee and foreign representative (the "**Bank FR**"

or "**DIA**") of the Foreign Economic Industrial Bank Limited, Vneshprombank Ltd. (the "**Bank**"

or "**Vneshprombank**"), the largest creditor in Markus's Russian insolvency proceeding,

respectfully file this motion (the "**Motion**") under Rule 9019(a) of the Federal Rules of Bankruptcy

2

Procedure ("**Bankruptcy Rules**"), seeking entry of an order[1] approving the settlement agreement among Markus, the Markus FR, the Bank FR, Ilya Bykov ("**Bykov**"), LARMAR Foundation ("**LARMAR**"), the LM Entities, the Protax Entities, and BG Atlantic, Inc. ("**BG Atlantic**") (the "**U.S. Settlement Agreement**")[2] and related services agreement between the Markus FR and Avenir Realty Inc. ("**Avenir**")  (the "**Services Agreement**").[3] In support of the Motion, the Markus FR and the Bank FR respectfully state as follows:

## PRELIMINARY STATEMENT

1.    The chapter 15 proceedings of Markus (the "US Bankruptcy Proceedings"[4]) and the Bank (the "**VPB US Proceedings**,"[5] and collectively with the Markus Ch. 15 Proceeding, the "**Chapter 15 Proceedings**") have been lengthy and litigious, giving rise to numerous discovery disputes, sanctions, contested matters, adversary proceedings, and appeals over the past five years. The Motion represents a major step in administering the Chapter 15 Proceedings. Specifically, upon Approval, the following actions will be resolved and dismissed:

- Appeal by LARMAR, the Protax Entities, the LM Entities, and Bykov to the U.S. District Court, *In re Foreign Economic Industrial Bank*, Case No. 19-cv-10841-GHW;

- Appeal by LARMAR, the Protax Entities, the LM Entities, and Bykov to the U.S. District Court, *In re Larisa Ivanovna Markus*, Case No. 19-cv-10889-GHW; and

---

[1] A proposed order is attached to the Motion as **Exhibit A**.

[2] The Markus FR previously moved to file the U.S. Settlement Agreement under seal. [ECF No. 347]. The Court authorized the Markus FR to file a redacted copy of the U.S. Settlement Agreement [ECF No. 361], which is attached as **Exhibit B**.

[3] A copy of the Services Agreement is attached as **Exhibit C**. Capitalized terms not defined herein have the meaning given to them in the U.S. Settlement Agreement and the Services Agreement unless expressly stated otherwise. The documents that make up the settlement are voluminous and part of an over year-long negotiation between the parties and their respective counsel. It is impossible to set forth all details and carefully negotiated nuances of the settlement in this Motion. This Motion is intended to summarize the settlement; it is not intended to modify, amend, and/or interpret any of the documents that make up the settlement. In the instance that there is any conflict between anything set forth in the Motion and any of the documents, the documents shall be deemed controlling.

[4] Case No. 19-10096 (MG) (S.D.N.Y. Bankr. Court).

[5] Case No. 16-13534 (MG) (S.D.N.Y. Bankr. Court).

3

- Appeal by LARMAR, the Protax Entities, the LM Entities, and Bykov to the Second Circuit, *LM Realty 31B, LLC, et al. v. Yuri Vladimirovich Rozhkov*, Case No. 20-3727

Upon completing the obligations in Clause 3 of the U.S. Settlement Agreement, the following will be resolved and dismissed:

- Adversary Proceeding, Case No. 19-01413 (MG);

- Adversary Proceeding, Case No. 19-01414 (MG);

- US Bankruptcy Proceedings as to the Non-Markus Targeted Parties;

- VPB US Proceedings as to the Non-Markus Targeted Parties; and

- Discovery pending in the Chapter 15 Proceedings as to the Non-Markus Targeted Parties.

Upon Approval, other than completing the obligations in the U.S. Settlement Agreement and the Services Agreement, the only remaining matters are:

- Administering the Chapter 15 Proceedings to the extent expressly stated in the U.S. Settlement Agreement;

- Appeal by Victor Worms to the U.S. District Court of this Court's Order imposing sanctions on remand, Case No. 20-Civ-06422-LJL; and

- Bank FR's motion for sanctions against Victor Worms, ECF Nos. 142, 147, 253, Case No. 16-13534 (MG).

2.      Since 2016, the Markus FR and the Bank FR have pursued Markus and her affiliates to recover funds that were embezzled from the Bank. On November 19, 2019, the Markus FR and the Bank FR commenced adversary proceedings against Markus and others, asserting claims for fraudulent conveyance, turnover, unjust enrichment, and other relief under New York law, Russian law, and the Bankruptcy Code.

3.      On or about February 19, 2021, Markus, the Markus FR, the Bank FR, Bykov, LARMAR, the LM Entities, and BG Atlantic entered into the U.S. Settlement Agreement, and Rozhkov and Avenir entered into the Services Agreement. Subject to the Court's approval, the

4

U.S. Settlement Agreement is intended to, among other things: (i) resolve all claims other than the Unreleased Claims; (ii) discontinue the Chapter 15 Proceedings as to the Non-Markus Targeted Parties; (iii) discontinue the Adversary Proceedings;[6] (iv) transfer to the Markus FR ownership and control of (a) the Included LM Entities, (b) the properties and other assets of the Included LM Entities, and (c) various funds owned by Markus and/or the LM Entities as detailed in the U.S. Settlement Agreement; and (iv) effectuate mutual releases by and between the parties to the U.S. Settlement Agreement and their Respective Agents as explained in the U.S. Settlement Agreement.

4.      In conjunction with the U.S. Settlement Agreement, the Markus FR and Avenir entered into the Services Agreement, under which the Markus FR agreed to appoint Avenir as his agent and fiduciary to, among other things, assist in managing, marketing, and liquidating the assets owned by Markus and/or the LM Entities in the United States (Ex. B § 3.6-3.7; Ex. C § 3.1-3.3). Under the Services Agreement, Avenir will, among other things, manage and control the Included LM Entities (Ex. B § 3.6; Ex. C §§ 3.1, 3.3) and, to the extent not already sold, manage and market the Properties for sale (Ex. B § 3.6; Ex. C § 3.2). Elliot Bogod of A&I Broadway Realty Inc., the broker  previously engaged by certain LM Entities to sell certain Properties (*see* US Bankruptcy Proceedings, ECF No. 350), will continue to serve as the exclusive broker to sell the Properties for six months (Ex. B § 3.6.2; Ex. C § 3.2.2). Subject to the Markus FR's supervision, Avenir will also be responsible for, among other things, ensuring that each Company, at the Company's expense, pays Taxes, common charges, and other costs and expenses that may be incurred in connection with the Properties to the extent stated in the Services Agreement  (Ex. B § 3.6; Ex. C § 3.2). Following the sale of each Property, Avenir will prepare final accounts and dissolve the applicable Included LM Entity (Ex. C § 3.4). For its services, Avenir will be paid a

---

[6] Defined to include Adv. Pro. Nos. 19-01413 (MG) and 19-01414 (MG).

5

Service Charge for each Proceeds Transfer calculated based on a formula and capped at an aggregate amount of $2.9 million. (Ex. B § 3.6.1; Ex. C §§ 4.1-4.2). As further discussed below, the Russian court has approved the Markus FR's request to retain Avenir to assist in managing and liquidating Markus's U.S. assets and to pay Avenir the Service Charge.

5.      Now, the Markus FR and the Bank FR seek this Court's approval of the U.S. Settlement Agreement and the Services Agreement as an integrated settlement. The U.S. Settlement Agreement is the product of extensive arms'-length negotiations among sophisticated parties and their respective counsel. The terms of the settlement are fair and reasonable and exceed "the lowest point in the range of reasonableness," which is the standard for approving settlements in bankruptcy cases in the Second Circuit. Therefore, the Court should approve the U.S. Settlement Agreement and the Services Agreement.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 1509(b) and 1521(a)(7). The Motion is a core proceeding under 28 U.S.C. § 157(b)(1) because questions concerning the Court's approval of a settlement agreement under Bankruptcy Rule 9019 arise under the Bankruptcy Code.

7.      Venue is proper under 28 U.S.C. §§ 1409 and 1410.

8.      The authority for the Motion are: 11 U.S.C. §§ 105(a), 363(b), 1509(b), 1521(a)(7) and (b), 1522(a) and (c); Bankruptcy Rules 2002(a)(3), 9014, and 9019(a); and Rules 9006-1 and 9014-1 of the Local Bankruptcy Rules for the Southern District of New York.

## BACKGROUND

### A.  The Foreign Insolvency Proceedings

9.      In 2016, a Russian insolvency proceeding was commenced for the Bank. The DIA was appointed as the Bank's trustee.

HF 13899070v.7

10.     Markus was previously a founder and shareholder of the Bank. After the Bank failed in 2015, Markus was arrested, pled guilty to embezzling funds from the Bank, and is now serving her sentence in Russia.

11.     In 2016, Markus was placed into insolvency proceedings in Russia. The Markus FR was appointed as her trustee and financial administrator. The Bank is Markus's principal creditor in her Russian insolvency proceedings.

**B.  Chapter 15 Recognition**

12.     On February 15, 2017, the Court recognized the Bank's Russian insolvency proceeding under Chapter 15 of the Bankruptcy Code. Case No. 16-13534 (MG).

13.     On January 10, 2019, the Markus FR filed a Chapter 15 petition in this Court to recognize Markus's Russian insolvency proceedings. The Court did so on April 1, 2019, granting the Markus FR, among other things, "all relief afforded to a foreign main proceeding pursuant to 11 U.S.C. §1520."

**C.  Markus and Her LM Entities**

14.     Between 2004 and 2015, Markus formed at least twelve entities in the United States, referred to in the U.S. Settlement Agreement as the LM Entities (which include LM Property Management, LLC; LM Realty 24C, LLC; LM Realty 27D, LLC; LM Realty 31B, LLC; LM Realty 20A, LLC; LM Realty 23H, LLC; LM Realty 18 West LLC; LM Realty 10C, LLC; First Integrated Construction, Inc.; Innovative Construction Group, Inc.; the Larisa Markus Revocable Trust;  and 550 Park Avenue LLC).

15.     During that period, Markus used over $10 million to buy eight (8) Manhattan condominiums in her or her entities' name: (i) 10 West End Ave, Apt. 27D, New York, NY 10023; (ii) 18 West 48th Str., Apt 26A, New York, NY 10036; (iii) 10 West End Ave, Apt. 31B, New

7

York, NY 10023; (iv) 10 West End Ave, Apt. 31C, New York, NY 10023; (v) 50 Riverside Blvd.
Apt 10C, New York, NY 10069 ; (vi) 40 Broad Str, Apt. 23H, New York, NY 10004; (vii) 40
Broad Str, Apt. 24C, New York, NY 10004; and (viii) 40 Broad Str, Apt. 20A, New York, NY
10004.

### D.  The Adversary Proceedings

16.     On November 19, 2019, the Markus FR and the Bank FR commenced adversary
proceedings, Adv. Pro. Nos. 19-01413 (MG) and 19-01414 (MG) (the "**Adversary Proceedings**"),
against Markus, Bykov, the LM Entities, BG Atlantic (a New York corporation), and LARMAR
(a Panama trust with its principal place of business in New York).

17.     Bykov is Markus's financial advisor and the sole manager of the LM Entities. He
was also involved in managing Markus's foreign real properties.

18.     The Adversary Proceedings assert claims for fraudulent conveyance, turnover,
unjust enrichment, and other relief under New York law, Russian law, and the Bankruptcy Code,
based on allegations that Markus embezzled approximately $2 billion from the Bank from 2009-
2015 and hid the funds in England, France, and Latvia.

19.     Markus, Bykov, the LM Entities, BG Atlantic, and LARMAR denied the
allegations in the Adversary Proceedings.

### E.  The U.S. Settlement Agreement

20.     On or about February 19, 2021, Markus, the Markus FR, the Bank FR, Bykov,
LARMAR, the LM Entities, the Protax Entities, and BG Atlantic entered into the U.S. Settlement
Agreement. The U.S. Settlement Agreement intends to, among other things: (a)  resolve all claims
other than the Unreleased Claims (Ex. B § 2.1); (b) discontinue the Chapter 15 Proceedings as to
the  Non-Markus  Targeted  Parties  (Ex. B  §§  2.1,  3.1,  4.1);  (c)  discontinue  the  Adversary

HF 13899070v.7

Proceedings (Ex. B §§ 2.1, 3.1, 4.1); (d) transfer to the Markus FR ownership and control of: (1) the Included LM Entities, (2) the Properties and other assets of the Included LM Entities, and (3) various funds owned by Markus and/or the LM Entities as stated in the U.S. Settlement Agreement (Ex. B § 3.5); and (d) effectuate mutual releases by and between the parties to the U.S. Settlement Agreement and their Respective Agents as stated in the U.S. Settlement Agreement (Ex. B § 3.2).

21.    On May 28, 2021, this Court entered its *Order Granting in Part and Denying in part the Foreign Representative's Motion to File the U.S. Settlement Agreement under Seal* [ECF No. 361] (the "**Sealing Order**"). The U.S. Settlement Agreement filed as **Ex. B** to this Motion is partially redacted, as approved under the Sealing Order.

22.    The U.S. Settlement Agreement (Ex. B § 3.5) provides, among other things, that the following assets will be transferred to the Markus FR:

- Membership interests to be transferred:

  o 100% interest in 550 Park Avenue LLC, a Delaware limited liability company;

  o 100% interest in LM Property Management LLC, a New York limited liability company;

  o 100% interest in LM Realty 31B LLC, a New York limited liability company;

  o 100% interest in LM Realty 10C LLC, a New York limited liability company;

  o 100% interest in LM Realty 23H LLC, a New York limited liability company; and

  o 1.85% equity share in CT Portfolio Debt LLC, a New York limited liability company.

- Insurance Proceeds: $31,718.84 in Lincoln Benefit Life;

9

- Surplus proceeds, to the extent they become available, from the foreclosure of apartments 20A[7] and 24C[8] at 40 Broad Street, New York, NY 10004;

- Funds in bank accounts:

  o $116,648.28 in a bank account of Rosenberg & Estis P.C.;

  o $5,825.11 in a bank account at Signature Bank;

  o £10,711.36 a bank account of Signature Litigation LLP; and

  o $131,730.36 in the escrow account at The Law Offices of Daniel A. Singer PLLC.

23.     Two of the condominiums (50 Riverside Blvd, Apt 10C, New York, NY 10069 ("**Apt. 10C**") and 10 West End Ave. Apt. 31C, New York, NY 10023 ("**Apt. 31C**")) were approved for sale pursuant to the Court-approved stipulation [US Bankruptcy Proceedings, ECF No. 362]. Both Apt. 10C and Apt. 31C were sold.[9]

24.     Another two of the condominiums are subject to pending foreclosure actions in New York Supreme Court: (a) 40 Broad Str, Apt. 23H, New York, NY 10004, NY Supreme Court, Index. No. 850253/2017; and (b) 10 West End Ave, Apt. 31B, New York, NY 10023, NY Supreme Court, Index No. 850323/2018. Under the U.S. Settlement Agreement, the funds generated from selling the assets held by Markus and/or her entities will be used to pay off secured lenders with liens on specific assets, Taxes, and the Property and Closing Expenses as detailed in the U.S. Settlement Agreement. The remaining funds will then be held in escrow for the Markus FR's benefit, subject to paying Service Charges to Avenir.

---

[7] $415,086.66 in surplus foreclosure sale proceeds were deposited with the New York County clerk's office in *40 Broad Street Portfolio, LLC v. LM Realty 20A, LLC*, Index No. 850252/2017 (N.Y. Cty. Supreme Ct) (**Exhibit D**)
[8] $135,484.20 in surplus foreclosure sale proceeds were deposited with the New York County clerk's office in *40 Broad Street Portfolio, LLC v. LM Realty 24C, LLC*, Index No. 850254/2017 (N.Y. Cty. Supreme Ct) (**Exhibit E**).
[9] Although the 10C Property and the 31C Property have been sold, and the 23H Property sale is likely to close before the Approval is granted, Avenir is to receive its Service Charges stemming from the sale of such properties as set forth in the Services Agreement.

25.     Under the U.S. Settlement Agreement, $100,000.00 held in the escrow account of

The Law Office of Daniel A. Singer PLLC will be released to Bykov, after deducting any Subject

Legal Fees due to Singer, with the monies to be used by Bykov to pay the Subject Legal Fees that

have been incurred by attorneys representing the LM Entities in any action or proceeding (Ex. B

§ 3.5.14 (a)).[10] The release of these funds will be subject to a separate order of this Court, with the

proposed order being presented to the Court after the Approval (Ex. B § 3.5.14 (a)).

26.     Under the U.S. Settlement Agreement, $180,000.00 (which had been frozen by

Protax pursuant to the US Bankruptcy's Court May 29, 2019 Order (US Bankruptcy Proceedings,

ECF No. 56; VPB US Proceedings, ECF No. 87) will be unfrozen and released to Protax after the

Approval (Ex. B § 3.5.14 (d)).

## F.  The Services Agreement

27.     As set forth in the U.S. Settlement Agreement, the Markus FR and Avenir have also

entered into the Services Agreement. Under the Services Agreement, the Markus FR agreed to

appoint Avenir as his agent and as a fiduciary to, among other things, assist in managing,

marketing, and liquidating assets owned by Markus and/or the LM Entities in the United States

(Ex. B § 3.6-3.7; Ex. C § 3.1-3.3), and, to the extent not already sold, manage and market the

Properties for sale (Ex. B § 3.6; Ex C § 3.2). Avenir agreed to manage and control the Included

LM Entities (Ex. B § 3.6; Ex. C §§ 3.1, 3.3).  Elliot Bogod of A&I Broadway Realty Inc., the

broker  previously engaged by certain LM Entities to sell certain Properties, will continue to serve

---

[10] As stated in the U.S. Settlement Agreement, currently $231,730.36 is held in the escrow account of The Law Offices
of Daniel A. Singer PLLC relating to the Markus Action and Bank Action. *See also* US Bankruptcy Proceedings, ECF
Nos. 198, 201; VPB US Proceedings, ECF Nos. 169-70. As stated above and in the U.S. Settlement Agreement,
$131,730.36 will be released to the Markus FR, and the $100,000.00 balance will be used to pay for the Subject Legal
Fees.

HF 13899070v.7

as the exclusive broker to sell the remaining Properties for six months (Ex. B § 3.6.2; Ex. C § 3.2.2).

28.     Subject to the Markus FR's supervision, Avenir will also be responsible for, among other things, ensuring that each Company, at the Company's expense, pays Taxes, common charges, and other costs and expenses that may be incurred in connection with the Properties to the extent stated in the Services Agreement (Ex. B § 3.6; Ex. C § 3.2). Following the sale of each Property, Avenir will prepare final accounts and dissolve the applicable LM Entities (Ex. C § 3.4).

29.     For its services as the Markus FR's agent, Avenir will receive Service Charges for certain proceeds from transfers related to disposing of the Properties and dissolving the applicable LM Entities (Ex. C § 4.1.1). The Services Charges are calculated using a specified formula (ten percent (10%) of each Proceeds Transfer, less $100,000) and are capped at $2.9 million as the aggregate amount of the Services Charges as detailed in the Services Agreement (Ex. C § 4.2).

30.     Under the Services Agreement, Avenir is required to, among other account, manage and maintain each Property in a commercially reasonable manner (Ex. C § 3.2.1) and to pay expenses from the funds available in the "Property Management Account" maintained by LM Property Management LLC at Wells Fargo (ending in 4156), including any income accruing from renting any Properties (Ex. C § 3.2.3). The Markus FR and Avenir agreed to exercise a joint control and to have joint signature authority over the Property Management Account (Ex B 3.5.4; Ex C §§ 1.1.1, 3.3.2). Avenir is required to obtain the Markus FR's consent to pay or withdraw any funds from the account that (i) exceed $500 for a transaction that is made in the Companies' ordinary course of business, or (ii) are in any amount for a transaction that is outside the Companies' ordinary course of business. The Services Agreement requires Avenir to submit a request for payment of a disbursement for the Markus FR's approval and, in turn, the Markus FR

12

to respond expeditiously to any request by Avenir. (*See* Ex. C § 3.3.2.). If Avenir needs to take urgent action to fulfill its obligation under this Agreement and the Markus FR and/or its Appointed Agent do not respond within the time necessary to perform that action, Avenir may take that action even if it involves incurring an expense exceeding $500.00. (*See* Ex. C § 3.3.2).

31.    If there are insufficient funds in the Property Management Account, Avenir must notify the Markus FR at least five (5) business days before the due date for an expense payment (or if it must be paid in less than five (5) business days, then as early as practicable), and the Markus FR must cause the relevant invoice to be paid out of the "Client Account." (*See* Ex. C § 3.2.3).

### G. The Russian Court's Approval of the Services Agreement

32.    On April 27, 2021, the Russian Court approved the Markus FR's request to retain Avenir to assist in managing and liquidating Markus's assets in the United States and to pay Avenir, and Elliot Bogod, as the exclusive broker, for six months to advertise and sell real properties, for up to $2.9 million, with the broker commission not to exceed 6%. (*See* Russian Court's Order dated April 30, 2021, along with the certified translation, attached as **Exhibit F**).

### ARGUMENT

### I.    The settlement is fair and equitable and in the best interest of Markus, her creditors, and her estate and should be approved by the Court under Bankruptcy Rule 9019.

33.    Under Bankruptcy Rule 9019, [11] the Court may approve a settlement after considering whether it is (i) "fair, equitable, and in the best interests of the estate" and (ii) rises above "the lowest point in the range of reasonableness." [12] The decision to grant or deny a

---

[11] Fed. R. Bankr. P. 9019(a).
[12] *In re Soup Kitchen International, Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014).

HF 13899070v.7

settlement lies within the bankruptcy court's discretion,[13] which should be exercised "in light of the general public policy favoring settlements."[14]

34.    In the Second Circuit, seven factors are evaluated when determining whether a settlement is reasonable:

(1) the balance between the litigation's possibility of success and the settlement's future benefits;

(2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in enforcing the judgment;

(3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;"

(4) whether other parties in interest support the settlement;

(5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge reviewing," the settlement;

(6) "the nature and breadth of releases to be obtained by officers and directors;" and

(7) "the extent to which the settlement is the product of arm's length bargaining."[15]

35.    There is no need to conduct a mini-trial when evaluating a settlement for approval.[16] Instead, the Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."[17] Indeed, the bankruptcy court need not know all relevant facts to approve a settlement because "the Supreme Court could not have intended that, in order to avoid a trial, the judge must in effect conduct one."[18]

---

[13] *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

[14] *Id.*

[15] *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (citing *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

[16] *See Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992) ("Approval of a settlement does not require a mini trial on the merits.").

[17] *Drexel Burnham*, 134 B.R 493, 497 (Bankr. S.D.N.Y. 1991) (citations omitted).

[18] *In re Cellular Information Systems, Inc.*, 171 B.R. 926, 948 (Bankr. S.D.N.Y. 1994) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

14

36.     The settlement evaluation process is not meant to substitute the Court's judgment

for the debtor's or the trustee's judgment.[19] While the Court should not simply "rubber stamp" a

proposed settlement, it should "give considerable weight to the informed judgment of the Debtor

that the compromise is fair and equitable . . . ."[20]

37.     The U.S. Settlement Agreement was reached after lengthy, arms' length

negotiations among counsel for Markus, the Markus FR, the Bank FR, Bykov, LARMAR, the LM

Entities, the Protax Entities, and BG Atlantic. It is a global settlement that ends complex, highly

contested litigation involving multiple parties, claims, and legal actions, as outlined above.

38.     All seven *Iridium* factors favor approving the U.S. Settlement Agreement:

- Factors 1 and 2: While the Markus FR believes the plaintiffs would have succeeded in the Adversary Proceedings, the Proceedings were contested, and litigating this matter further could have taken years while Markus's and the Markus FR's legal fees would have continued to accrue. Settling this matter now reduces the parties' litigation costs and the amount of time it would take Markus's creditors to get a recovery. Under the settlement, the parties will discontinue all actions pending in the U.S. bankruptcy cases and adversary proceedings (except with respect to Markus and Victor Worms).

- Factors 3 and 4: Creditors benefit from the U.S. Settlement Agreement because it allows the Markus FR, with Avenir's assistance, to manage, control, and liquidate Markus's (and her entities') assets in the United States. The proceeds from the asset sales would go towards settling Markus's secured lenders' claims and to pay property and closing expenses. The remaining net sale proceeds would be held in escrow by the Markus FR and, subject to the Court's approval, would be transferred to Markus's Russian bankruptcy estate. The creditors in Markus's Russian bankruptcy proceeding have authorized the non-U.S. and U.S. Settlement Agreement.

- Factor 5: Each of the parties to the U.S. Settlement Agreement were represented by competent, independent, and experienced counsel.

---

[19] *See In re Carla Leather, Inc.*, 44 B.R. 457, 465 (S.D.N.Y. 1984).
[20] *See Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 441 (1968); *In re International Distribution Centers, Inc.*, 103 B.R. 420, 422-23 (S.D.N.Y. 1989).

15

- Factor 6: The U.S. Settlement Agreement contains mutual releases by and between the settling parties and intends to resolve the parties' numerous claims (except for certain Unreleased Claims) and related litigation.

- Factor 7: The U.S. Settlement Agreement was achieved through good faith, arms' length settlement negotiations between competent counsel of the parties.

39.     Under the U.S. Settlement Agreement, the parties will, among other things, transfer to the Markus FR ownership and control of: (1) the Included LM Entities, (2) the Properties and other assets, and (3) various funds owned by Markus and/or the LM Entities as stated in the U.S. Settlement (Ex. B § 3.5). Under the settlement, the Markus FR will use Avenir's services as previously described and as detailed in the Services Agreement. The Markus FR anticipates that the funds generated from liquidating the assets of Markus and the Included LM Entities will be sufficient to pay off secured lenders on the real estate owned by the LM Entities, Taxes, and the Property and Closing Expenses, leaving net sale proceeds to be held in escrow by the Markus FR subject to paying Service Charges to Avenir.

40.     In addition, all of the funds that are required to be transferred to the Markus FR or his escrow agent, Marks & Sokolov, LLC, under the U.S. Settlement Agreement should be transferred to the Markus FR's successor escrow agent, Benaur Law LLC. A separate motion to replace Marks & Sokolov, LLC with Benaur Law LLC as the Markus FR's successor escrow agent is being filed concurrently with this Motion. For the reasons stated in that motion, the Court should permit the Markus FR to replace Marks & Sokolov, LLC with Benaur Law LLC as his successor escrow agent to assist the Markus FR in administering Markus's assets in the United States and to transfer all funds to Benaur Law to be held in escrow pending further order of the Court.

41.     Therefore, the Markus FR and the Bank FR respectfully submit that the U.S. Settlement Agreement is fair and equitable, in the best interests of Markus's creditors and her

Russian bankruptcy estate, falls well above the lowest point in the range of reasonableness, and should be approved.

## II.      The Services Agreement should be approved by this Court.

42.      In conjunction with entering into the U.S. Settlement Agreement, the Markus FR and Avenir entered into the Services Agreement. The Russian Court approved retaining Avenir and the compensation structure in the Services Agreement.

43.      Under the Services Agreement, the Markus FR agreed to appoint Avenir as his agent and as a fiduciary to, among other things, assist in managing, marketing, and liquidating assets owned by Markus and/or the LM Entities in the United States (Ex. B § 3.6-3.7; Ex. C § 3.1-3.3) and, to the extent not already sold, manage and market the Properties for sale (Ex. B § 3.6; Ex C § 3.2). Further, Avenir will manage and control the Included LM Entities (Ex. B § 3.6; Ex. C § 3.1). Elliot Bogod of A&I Broadway Realty Inc., the broker previously engaged by certain LM Entities to sell certain Properties, will continue to serve as the exclusive broker for six months (Ex. B § 3.6.2; Ex. C § 3.2.2). Subject to the Markus FR's supervision, Avenir will also be responsible for, among other things, ensuring that each Company, at the Company's expense, pays Taxes, common charges, and other costs and expenses that may be incurred in connection with the Properties to the extent stated in the Services Agreement (Ex. B § 3.6; Ex. C § 3.2). Following the sale of each Property, Avenir will prepare final accounts and dissolve the applicable LM Entities (Ex. C § 3.4). For its services as the Markus FR's agent, Avenir will receive a fee calculated based on a formula and capped at an aggregate amount of $2.9 million. (Ex. B § 3.6.1; Ex. C §§ 4.1-4.2).

44.      Under Section 1521(a)(5) of the Bankruptcy Code, this Court has the power to authorize and entrust the administration or realization of all or part of the debtor's assets within

HF 13899070v.7

the territorial jurisdiction of the United States to the Markus FR or another person.[21] Further, under

Section 1521(a)(7) of the Bankruptcy Code, this Court may grant any additional relief that may be

available to a trustee.[22] Section 1521 of the Bankruptcy Code "provides the relief that may be

granted upon recognition in an effort to promote Chapter 15's purposes, the efficient

administration of the estate, and the protection of the debtor's assets and the creditor's interests."[23]

The services Avenir will render to the Markus FR under the Services Agreement, including

managing and liquidating assets in the United States, promote Chapter 15's purposes and satisfy

the standard of review under Section 363(b)(1) of the Bankruptcy Code because there are good

business reasons to liquidate Markus's U.S. assets.[24]

45.    Under the Services Agreement, Avenir is retained as an agent and a fiduciary to the

Markus FR and is required to manage and maintain each Property in a commercially reasonable

manner. (Ex C § 3.2.1) Further, Avenir is required to pay any expenses related to the real properties

by the funds available in the "Property Management Account" maintained by LM Property

Management LLC at Wells Fargo (ending in 4156), including any income accruing from renting

any Properties (Ex. C § 3.2.3). While the Markus FR and Avenir agreed to exercise  joint control

and to have joint signature authority over the Property Management Account, Avenir is required

to obtain the Markus FR's consent to pay or withdraw any funds that (i) exceed $500 for a

transaction in the Companies' ordinary course of business, or (ii) are in any amount for a

transaction outside the Companies' ordinary course of business. The Services Agreement also

requires Avenir to submit a request for payment of a disbursement for the Markus FR's approval

---

[21] *See* 11 U.S.C. § 1521(a)(5).
[22] *See* 11 U.S.C. § 1521(a)(7).
[23] *In re Gran Prix Assocs. Inc.*, 2009 WL 1850966, at *3 (Bankr. D.N.J. June 26, 2009) (citing 11 U.S.C. § 1501; *In re Oversight & Control Commission of Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008)).
[24] *See Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 243-44, 246 (2d Cir. 2014) (upon recognition of a foreign main proceeding, transfer of a property interest within the United States requires a § 363 review and express finding of a good business reason).

HF 13899070v.7

and, in turn, the Markus FR to respond expeditiously to any request. (*See* Ex. C § 3.3.2.). If Avenir

needs to take urgent action to fulfill its obligation under this Agreement and the Markus FR and/or

its Appointed Agent do not respond within the time necessary to perform that action, Avenir may

take that action even if it involves incurring an expense exceeding $500.00. (*See* Ex. C § 3.3.2).

46.     Similar requests to appoint and retain an agent under Section 1521 of the

Bankruptcy Code have been approved by bankruptcy courts, including for the Southern District of

New York. For example, in *In re Shanghai Huazin Group (Hongkong) Limited (In Liquidation)*,

Case No. 19-11482 (JDG) [ECF No. 22], the Court, under Section 1521(a)(7) of the Bankruptcy

Code, authorized The Corcoran Group to act as agent and real estate broker for marketing and

selling certain property and approving the fee structure (*i.e.*, paying fees from the sale proceeds

upon closing) without the court's further approval, and excused the agent from any requirement to

file a fee application or to provide any detailed time records for the services rendered under the

parties' agreement.[25]

47.     Therefore, the Markus FR respectfully requests that the Court approve the Services

Agreement and authorize Avenir to serve as the Markus FR's agent to assist the Markus FR in

administering and liquidating the various assets of Markus and the Included LM Entities in the

territorial jurisdiction of the United States.

**NOTICE**

48.     The Motion has been served on: (i) Daniel A. Singer, Esq., counsel for Ilya Bykov,

the LM Entities, and the Protax Entities, via e-mail at info@dasingerlaw.com; (ii) Yevgeny

Tsyngauz, Esq., counsel for the LM Entities, via e-mail at yt@nytlaw.com; (iii) Olga Vinogradova,

Esq., counsel for Larisa Markus, via email at olga@vinogradovalaw.com; (vi) Marks & Sokolov,

---

[25] See attached Order authorizing The Corcoran Group's retention as **Exhibit G**.

HF 13899070v.7

LLC via e-mail at ssokolov@mslegal.com and marks@mslegal.com; (v) Benaur Law LLC, as successor escrow agent for the Markus FR, via email at george@benaurlaw.com; and (vi) all parties that have filed and served a notice of appearance and request for service of documents in the Chapter 15 Proceeding and the Adversary Proceeding. The Markus FR respectfully submits that no other or further notice is required.

### REQUEST FOR RELIEF

49.     The Markus FR respectfully asks that the Court grant the Motion and enter the proposed order attached as **Exhibit A**, and grant any further relief that it deems appropriate under the circumstances.

### CONCLUSION

50.     Litigation is often costly, and its results can be hard to predict. Given the time and expense of litigation, bankruptcy courts encourage parties to seek to resolve even the most intractable disputes. The Adversary Proceedings and related pending appeals are complex, involving multiple parties, claims, and causes of action, and, absent a settlement, could take years to conclude. With the hard work of the parties and their counsel, the parties reached a global resolution of their disputes, which benefits Markus, her Russian bankruptcy estate, and her creditors, including the Bank. Accordingly, the Markus FR and the Bank FR respectfully ask the Court to grant the Motion and approve the U.S. Settlement Agreement and the Services Agreement.

HF 13899070v.7

Dated: August 24, 2021
New York, New York

Respectfully submitted,

HERRICK, FEINSTEIN LLP

By: /s/ *Stephen B. Selbst*
    Stephen B. Selbst
    George V. Utlik
    2 Park Avenue
    New York, New York 10016
    (212) 592-1400
    (212) 592-1500 (fax)
    sselbst@herrick.com
    gutlik@herrick.com

*Attorneys for the Foreign Representatives*

HF 13899070v.7