# Exhibit B

Execution version

## Settlement Agreement

Dated *February 19*, **2020** *2021*

**Larisa Markus**

**Ilya Bykov**

**LARMAR Foundation**

**Larisa Markus Revocable Trust**

**LM Realty 31B, LLC**

**LM Realty 27D, LLC**

**LM Realty 24C, LLC**

**LM Realty 23H, LLC**

**LM Realty 20A, LLC**

**LM Realty 18 West, LLC**

**LM Realty 10C, LLC**

**LM Property Management LLC**

**Innovative Construction Group, Inc.**

**First Integrated Construction Group, Inc.**

**550 Park Avenue LLC**

**Protax Services Corp. d/b/a Protax Services Inc.**

**Protax Services Consulting Inc.**

**Prolegal International, Inc.**

**BG Atlantic, Inc.**

**Yuri Rozhkov** (in his official capacity as bankruptcy trustee and foreign representative of Larisa Markus)

**State Corporation "Deposit Insurance Agency"** (in its official capacity as bankruptcy trustee and foreign representative of Vneshprombank)

# TABLE OF CONTENTS

**1    Definitions and Interpretation** ............................................................. 4

**2    Scope of this Agreement** ..................................................................... 12

**3    Execution and Implementation of the Settlement** ........................... 13

**4    Dismissal and Discontinuance of Proceedings; Unreleased Claims** .......... 31

**5    Acknowledgements, Undertakings and Covenants of the Parties** .............. 32

**6    Representations and Warranties** ........................................................ 33

**7    Confidentiality** .................................................................................... 39

**8    Relationship between the Parties** ..................................................... 40

**9    Entire Agreement and Severance** ...................................................... 40

**10   Amendments** ....................................................................................... 40

**11   Assignment** ......................................................................................... 41

**12   Remedies and Waivers** ...................................................................... 41

**13   Third party rights** ............................................................................... 42

**14   Costs** ................................................................................................... 42

**15   Counterparts** ...................................................................................... 42

**16   Notices** ................................................................................................ 42

**17   Governing Law and Jurisdiction** ....................................................... 43

**18   Language** ............................................................................................. 45

**Schedule 1 – Markus Asset Disclosure List[1]** ........................................ 46

**Schedule 2 – Details of the Included LM Entities** .................................. 51

**Schedule 3 – Information Concerning the Properties** ............................ 53

**Schedule 4 – Form of Appeals Stipulation** ............................................. 56

**Schedule 5 – Form of Documents to Transfer Control of Included LM Entities etc.** ............................................................................................................... 58

**Schedule 6 – Form of Consent to Change of Counsel** .......................... 94

**Schedule 7 – Form of Stipulations and Proposed Orders** ................... 104

**Schedule 8 – Form of Termination Letter** .............................................. 110

# Settlement Agreement

Dated *February 19*, **2020** *2021*

**Between**

(1)    **LARISA IVANOVNA MARKUS**, a citizen of the Russian Federation, date of birth 6 November 1957, with Russian internal passport number ▮▮▮▮▮ issued on 27 November 2002 by the Resident Registration Office 3, Department of Internal Affairs for Presnensky District of Moscow, authority code 773-013, whose registered address is at 26 Zoologicheskaya Street, Bld. 1, Apt. 24, Moscow, Russian Federation, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**Markus**);

(2)    **ILYA GERONIM BYKOV**, acting in his personal capacity, a citizen of the United States of America, date of birth 22 September 1958, with U.S. passport number ▮▮▮▮▮ issued on 17 December 2018 by the U.S. Department of State, whose business address is at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, , and whose email addresses for service of notices under this Agreement are ilyabykov007@gmail.com; info@protaxservicesinc.com; and c/o The Law Offices of Daniel A. Singer PLLC at info@dasingerlaw.com (**Bykov**);

(3)    **LARMAR FOUNDATION**, a private foundation duly recorded at Filing Card FP-30959, Documents 1417508, of the Private Foundation Section of the Public Registry Office of the Republic of Panama and having its registered address at Panama Legal, 50 Street, Global Bank Tower, 18th Floor, Office 18-20, Panama but whose actual address for service of notices under this Agreement is c/o Protax Services Corp., 2 Rector Street, Suite 1202, New York, NY, 10006, USA and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**LARMAR**);

(4)    **THE LARISA MARKUS REVOCABLE TRUST,** a New York trust formed and administered pursuant to the laws of the state of New York, which the US Bankruptcy Court (defined below) determined in the US Bankruptcy Proceedings (defined below) in a decision dated October 23, 2019 had been revoked by Rozhkov (defined below) on May 27, 2019, and such decision is currently on appeal before the United States District Court, Southern District of New York (case nos. 1:19-cv-10363 and 1:19-cv-101219), having an address of 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**LM Trust**);

(5)    **LM REALTY 31B, LLC**, a New York limited liability company identified by DOS ID#: 3955355, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com, further details of which are set out in Part 4 of Schedule 2 (**31B LLC**);

(6)    **LM PROPERTY MANAGEMENT LLC**, a New York limited liability company identified by DOS ID#: 368802, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com, further details of which are set out in Part 1 of Schedule 2 (**Property Management LLC**);

(7)    **LM REALTY 27D, LLC**, a New York limited liability company identified by DOS ID#: 3955382, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**27D LLC**);

(8)     **LM REALTY 24C, LLC**, a New York limited liability company identified by DOS ID# 3955401, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**24C LLC**);

(9)     **LM REALTY 23H, LLC**, a New York limited liability company identified by DOS ID# 3964308, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com, further details of which are set out in Part 3 of Schedule 2 (**23H LLC**);

(10)    **LM REALTY 20A, LLC**, a New York limited liability company identified by DOS ID# 3964311, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**20A LLC**);

(11)    **LM REALTY 18 WEST, LLC**, a New York limited liability company identified by DOS ID# 4308830, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**18 West LLC**);

(12)    **LM REALTY 10C, LLC** a New York limited liability company identified by DOS ID# 4239584, with its principal place of business at 2 Rector Street, New York, NY, 10006, USA whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com, further details of which are set out in Part 2 of Schedule 2 (**10C LLC**);

(13)    **INNOVATIVE CONSTRUCTION GROUP, INC.**, a New York corporation identified by DOS ID#: 3027176, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**Innovative Construction Group**);

(14)    **550 PARK AVENUE LLC,** a Delaware limited liability company identified by DOS ID# 5354823 having a principal place of business of 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**550 Park Avenue LLC**);

(15)    **FIRST INTEGRATED CONSTRUCTION, INC.**, a New York corporation identified by DOS ID#: 3024202, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. at yt@nytlaw.com (**First Integrated Construction**, and collectively with 31B LLC; Property Management LLC; 27D LLC; 24C LLC; 23H LLC; 20A LLC; 18 West LLC; 10C LLC; Innovative Construction Group; the LM Trust; 550 Park Avenue LLC, and First Integrated Construction, the **LM Entities**);

(16)    **PROTAX SERVICES CORP. d/b/a PROTAX SERVICES INC.**, a New York corporation identified by DOS ID#: 113442, with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email addresses for service of notices under this Agreement are: ilyabykov007@gmail.com; info@protaxservicesinc.com; and c/o The Law Offices of Daniel A. Singer PLLC at info@dasingerlaw.com (**Protax Services Corp**);

(17)    **PROTAX SERVICES CONSULTING, INC.**, a Florida corporation with registration number P15000082667, and with its principal place of business at 1200 Brickell Avenue, Suite 1450, Miami, FL, 33131, USA, and whose email addresses for service of notices under this

Agreement are: ilyabykov007@gmail.com; info@protaxservicesinc.com; and c/o The Law Offices of Daniel A. Singer PLLC at info@dasingerlaw.com;

(18)   **PROLEGAL INTERNATIONAL, INC.**, a Delaware corporation identified by DOS ID# 6133091, and with its principal place of business at 2 Rector Street, Suite 1202, New York, NY, 10006, USA, and whose email addresses for service of notices under this Agreement are: ilyabykov007@gmail.com; info@protaxservicesinc.com; and c/o The Law Offices of Daniel A. Singer PLLC at info@dasingerlaw.com (**Prolegal International**, and collectively with Protax Services Corp and Protax Services Consulting, the **Protax Entities**);

(19)   **BG ATLANTIC, INC.**, a corporation organized and existing under the laws of the State of New York, with New York Department of State ID number 5028093, and with its registered address for service of process at c/o Boris Granik, 25 Castel Pine Ct., Holmdel, NJ, 07733 but whose actual address for service of notices under this Agreement is c/o Ludmila Granik, 2775 E 16th Street, Apt 4E, Brooklyn, NY 11235 and whose email address for service of notices under this Agreement is c/o Yevgeny Tsyngauz, Esq. yt@nytlaw.com (**BG Atlantic**);

(20)   **YURI VLADIMIROVICH ROZHKOV**, a citizen of the Russian Federation, acting in his official capacity as trustee of Markus in the Russian Insolvency Proceedings (as defined below) and in his associated capacity as foreign representative of Markus in the US Bankruptcy Proceedings (as defined below), and whose email address for service of notices under this Agreement is: rozhkovyv@yandex.ru (**Rozhkov**); and

(21)   **STATE CORPORATION "DEPOSIT INSURANCE AGENCY"**, a state corporation organized and existing under the laws of the Russian Federation, with main state registration number (OGRN) 1047796046198, and with its registered address at 4 Vysotskogo St., Moscow 109240, Russia, acting in its official capacity as trustee of Vneshprombank (as defined below) in the VPB Russian Proceedings (as defined below) and in its associated capacity as foreign representative of Vneshprombank in the VPB US Proceeding (as defined below), and whose email address for service of notices under this Agreement is: alexeevva@asv.org.ru (**DIA**)

(each a **Party** and together the **Parties**).

**Recitals**

(A)   Markus is the debtor in the Russian Insolvency Proceedings and is the sole primary beneficiary of LARMAR, which holds title to 95% of the units (equity) in each of the Included LM Entities (as defined below).  Bykov is, *inter alia*, a financial advisor to Markus; the sole manager of each of the Included LM Entities (as defined below); and both an appointee under a general power of attorney issued by Larisa Markus, and a "protector" (within the meaning of Applicable Law of the Republic of Panama), of LARMAR.

(B)   Rozhkov has been appointed as the trustee (in Russian: *finansoviy upravlyayuschiy*)) of Markus in the Russian Insolvency Proceedings and, in that capacity, has been recognized as the "foreign representative" of Markus in the US Bankruptcy Proceedings (as defined below) within the meaning of Section 101(24) of Title 11 of the United States Code and all references to Rozhkov in this Agreement are to him in such official capacity. Markus is also separately represented in her personal capacity in the US Bankruptcy Proceedings.

(C)   Vneshprombank is the principal creditor of Markus in the Russian Insolvency Proceedings and is the debtor in the VPB Russian Proceedings (as defined below).

(D)   DIA has been appointed as the trustee (in Russian: *konkursniy upravlyayuschiy*) of Vneshprombank in the VPB Russian Proceedings and, in that capacity, has been recognized

3

as the foreign representative of Vneshprombank in the VPB US Proceedings (as defined below), and all references to DIA in this Agreement are to it in such official capacity.

(E) The execution of this Agreement by the LM Trust does not affect or vitiate the position that any Party has taken in respect of any decision of the US Bankruptcy Court or the Applicable Appeals concerning such entity.

(F) On 19 November 2019, Rozhkov and DIA jointly filed an adversary proceeding complaint in the US Bankruptcy Proceedings and VPB US Proceedings respectively against Bykov, LARMAR, Markus, the LM Entities, and BG Atlantic, alleging *inter alia* certain fraudulent conveyances; and Bykov, LARMAR, Markus, the LM Entities, and BG Atlantic deny those allegations (the **Adversary Proceedings**).

**For good and valuable consideration, receipt of which is hereby acknowledged by each of the Parties, it is agreed:**

**1      Definitions and Interpretation**

**1.1      Definitions**

In this Agreement the following definitions shall apply.

**10C Foreclosure Proceedings** means the foreclosure proceedings in relation to the 10C Property pending in New York Supreme Court (N.Y. Cty.) bearing index no. 850159/2018, captioned *10WEA Realty LLC v. LM Realty 10C, LLC*.

**10C Mortgage Lien** means the mortgage lien over the 10C Property in favour of 10WEA Realty LLC, certain details of which are summarized in Part 1 of Schedule 3.

**10C Property** means the unit that is designated as apartment 10C located at 50 Riverside Boulevard, New York, NY 10069, U.S.A., together with the common interest in the common elements appurtenant to and the common profits distributable (after deduction of common expenses) to such unit (as those terms are defined in the Condominium Act).

**20A Net Sale Proceeds** means the amount of $415,086, being the surplus proceeds (as determined by the Referee) from the foreclosure sale of the 20A Property.

**20A Foreclosure Proceedings** means the foreclosure proceedings in relation to the 20A Property in New York Supreme Court (N.Y. Cty.) bearing index no. 850252/2017, captioned *40 Broad St. Portfolio, LLC v. LM Realty 20A, LLC*.

**20A Property** means the unit that is designated as apartment 20A located at 40 Broad Street, New York, NY 10004, U.S.A., together with the common interest in the common elements appurtenant to and the common profits distributable (after deduction of common expenses) to such unit (as those terms are defined in the Condominium Act).

**23H Civil Proceedings** means the civil proceeding involving *inter alia* unpaid rent, additional rent, and property damage in relation to the 23H Property which is pending in the Civil Court of the City of New York, County of New York bearing index no. CV-003407-19/NY, captioned *LM Realty 23H, LLC v. Harrington*.

**23H Foreclosure Proceedings** means the foreclosure proceedings in relation to the 23H Property in New York Supreme Court (N.Y. Cty.) bearing index no. 850253/2017, captioned *40 Broad St. Portfolio, LLC v. LM Realty 23H, LLC et al.*.

**23H Mortgage Lien** means the mortgage lien over the 23H Property in favour of Broad Street Acquisition, Inc., certain details of which are summarized in Part 2 of Schedule 3.

**23H Property** means the unit that is designated as apartment 23H located at 40 Broad Street, New York, NY 10004, U.S.A., together with the common interest in the common elements appurtenant to and the common profits distributable (after deduction of common expenses) to such unit (as those terms are defined in the Condominium Act).

**24C Foreclosure Proceedings** means the foreclosure proceedings in relation to the 24C Property in New York Supreme Court (N.Y. Cty.) bearing index no. 850254/2017, captioned *HSBC Bank USA, N.A. v. LM Realty 24C, LLC.*

**24C Net Sale Proceeds** means the amount of $135,484, being the surplus proceeds (as determined by the Referee) from the foreclosure sale of the 24C Property.

**24C Property** means the unit that is designated as apartment 24C located at 40 Broad Street, New York, NY 10004, U.S.A., together with the common interest in the common elements appurtenant to and the common profits distributable (after deduction of common expenses) to such unit (as those terms are defined in the Condominium Act).

**31B Foreclosure Proceedings** means the foreclosure proceedings in relation to the 31B Property in New York Supreme Court (N.Y. Cty.) bearing index no. 850323/2018, captioned *HSBC Bank USA, N.A. v. LM Realty 31B, LLC.*

**31B Mortgage Lien** means the mortgage lien over the 31B Property in favour of HSBC Bank, certain details of which are summarized in Part 3 of Schedule 3.

**31B Property** means the unit that is designated as apartment 31B located at 10 West End Avenue, New York, NY 10023, U.S.A., together with the common interest in the common elements appurtenant to and the common profits distributable (after deduction of common expenses) to such unit (as those terms are defined in the Condominium Act).

**31C Foreclosure Proceedings** means the foreclosure proceedings in relation to the 31C Property in New York Supreme Court (N.Y. Cty.) bearing index no. 850078/2019, captioned *HSBC Bank USA, N.A. v. LM Property Management, LLC.*

**31C Mortgage Lien** means the mortgage lien over the 31C Property in favour of HSBC Bank, certain details of which are summarized in Part 4 of Schedule 3.

**31C Property** means the unit that is designated as apartment 31C located at 10 West End Avenue, New York, NY 10023, U.S.A), together with the common interest in the common elements appurtenant to and the common profits distributable (after deduction of common expenses) to such unit (as those terms are defined in the Condominium Act).

**550 Park Avenue Citi Account** means the account titled to 550 Park Avenue LLC bearing an account number ending in 1507, which was closed by Citibank in or about November 2019.

**Account Balances** has the meaning given to that term in Clause 3.5.5.

**Adversary Proceedings** has the meaning given to that term in Recital (F).

**Affiliate** means with respect to any person, any other person, directly or indirectly Controlling, Controlled by, or under direct or indirect common Control with, such person, provided, that for the avoidance of doubt each of the LM Entities, the LM Trust, LARMAR, and 550 Park

5

Avenue LLC shall be deemed Affiliates of the other and of Markus and each of the Protax Entities, Avenir and Bykov shall be deemed Affiliates of the other.

**Appeals Stipulations** has the meaning given to that term in Clause 3.1(e).

**Applicable Appeals** means the following appeals :

(a)     case no 1:19-cv-10841-GHW in the SDNY (captioned *In re: Foreign Economic Industrial Bank Limited, "Vneshprombank" Ltd.*);

(b)     1:19-cv-10889-GHW in the SDNY (captioned *In re: Larisa Ivanovna Markus)*;

(c)     1:19-cv-10363-AT in the SDNY (captioned *In re: Larisa Ivanovna Markus*);

(d)     1:19-cv-10129-AT in the SDNY (captioned *In re: Larisa Ivanova Markus)*; and

(e)     any appeal of any of the foregoing to the Second Circuit that has been perfected notwithstanding Clause 3.1(b)(iii).

**Applicable Law** means all laws, regulations, directives, statutes, subordinate legislation, common law and civil codes of any jurisdiction; all judgments, orders, notices, instructions, decisions and awards of any court or competent authority or tribunal exercising statutory or delegated powers; and all codes of practice having force of law, statutory guidance and policy notes, in each case to the extent applicable to the relevant person or to any of its assets or interests in property.

**Appointed Agent** has the meaning given to that term in Clause 3.5 (as pertains to Bykov) and Clause 5.1 (as pertains to Rozhkov).

**Approval** has the meaning given to that term in Clause 3.1(a).

**Avenir** means Avenir Realty Inc, a New York Corporation identified by DOS file # 5794294 with a DOS service address of 101 Greenwich Street, Suite 1202, New York, New York 10006.

**Bankruptcy Code** means Title 11 of the United States Code, also commonly known as the US Bankruptcy Code.

**Business Day** means a day (other than a Saturday or Sunday) on which banks are open for the transaction of general business in each of Moscow, Russia; and New York City, USA.

**Claims** means all and any claims, counterclaims, causes or rights of action, proceedings, demands, rights to or demands for discovery (whether party- or non-party-discovery), indemnities or other claims, whether arising by contract, by law, in equity, admiralty, in tort or otherwise, and Liability resulting therefrom.

**Client Account** means the client trust account (IOLTA) of Rozhkov's Counsel, including the beneficial interest of Rozhkov in the relevant funds transferred to such account.

**Close Relative** means with respect to any individual:

(a)     the spouse or domestic partner of such individual;

(b)      the son, daughter, brother, sister, uncle, aunt, nephew, niece, cousin, parent, grandchild, grandparent or guardian of such individual, and the spouse or domestic partner (whether legally formalized or not) of each of the foregoing;

(c)      any trust of which that individual, or any of that individual's Close Relatives (under the other paragraphs of this definition), is directly or indirectly a beneficiary; as well as any trustee of such trust; and

(d)      any Affiliate of such individual or of any of the persons described in paragraphs (a) through (c) of this definition.

**Condominium Act** means Article 9-B of the Real Property Laws of the State of New York.

**Control** means:

(a)      with respect to any person, the ability to direct the management or policies of such person, directly or indirectly, whether through the ownership of shares or other securities, by contract or otherwise; provided, however, that in all events the direct or indirect ownership of, or the power to direct the vote of, fifty percent (50%) or more of the voting share capital of a person or the power to control the composition of the board of directors of a person shall be deemed to constitute Control of that person; and

(b)      with respect to any asset, right or thing, the ability to direct or materially affect the management, enjoyment, exercise or use of, or title to or Encumbrances over, such asset, right or thing, directly or indirectly,

and **Controlling** and **Controlled** shall be construed accordingly.

**Covered Assets** means the Included LM Entities and the assets of the Included LM Entities on or after the date of this Agreement; the LM Trust and the shares held by it in the LM Entities, if any; the Properties; the Former Properties; the Insurance Proceeds; the 20A Net Sale Proceeds, the 24C Net Sale Proceeds; the Account Balances; the shares held by LARMAR in the LM Entities; and all rent proceeds from the Properties and the Former Properties.

**Decided Appeals** means the appeals in the SDNY identified in paragraphs (c) and (d) of the definition of Applicable Appeals, and, if applicable, any appeal identified in paragraph (a) or (b) of the definition of Applicable Appeals in respect of which a decision on the merits is issued by the relevant court prior to the date that the applicable Appeals Stipulation in respect of such appeal is filed in accordance with Clause 3.1(e).

**Disclosed Assets** means the Markus Assets identified in Schedule 1.

**Encumbrance** means a mortgage, charge, pledge, lien, option, restriction, right of first refusal, right of pre-emption, third party right, or other encumbrance or security interest of any kind.

**Excluded LM Entities** means all of the LM Entities other than the Included LM Entities.

**Fair Exchange** means the transfer, exchange, surrender, or other alienation of an asset, or of any right, title or interest in such asset, for fair value on arms' length terms in the ordinary course of business (or in the case of any Targeted Party that is a natural person, in the ordinary course of behavior of that person).

**Foreclosed Property** means the 23H Property.

**Former Properties** means the 20A Property and the 24C Property.

**Governmental Authority** means any government (or any subdivision thereof, including federal, central, regional or local) of any country or jurisdiction (including any supranational jurisdiction such as the European Union) or any court, tribunal, agency, authority, board, bureau, commission, department, judicial or administrative body, instrumentality, regulatory authority or similar body or instrumentality thereof.

**Included LM Entities** means 550 Park Avenue LLC, Property Management LLC, 10C LLC, 23H LLC, and 31B LLC.

**Insurance Proceeds** means the entire amount available to be withdrawn as the remaining cash surrender value of policy no. ▮▮▮▮▮▮ issued by Lincoln Benefit Life to or for the benefit of Markus on or about 10 June 2011, being an amount not less than $31,718.84.

**Liability** means any liability or obligation of any kind or nature whatsoever, whether contingent or actual, present or future, known or unknown, however and whenever arising, and in whatever capacity and jurisdiction.

**LM Entities** has the meaning given to that term in the Preamble.

**Losses** means any payment obligations, Liabilities, losses, damages, claims, demands, proceedings, costs (including reasonably incurred legal costs), fines and penalties (whether civil or criminal), interest payments, charges and expenses, however caused.

**Markus Asset Disclosure List** has the meaning given to that term in Clause 3.4.1.

**Markus Assets** means all assets of whatever nature, whether tangible or intangible, in which Markus directly or indirectly has or, at any time on or subsequent to the date that falls five (5) years before the date of commencement of the VPB Russian Proceedings, has had any right, title or interest of whatever nature, whether legal or beneficial, wherever located (including, for the avoidance of doubt, all shares and other equity interests in the capital of entities formed under the laws of, and all real property located in, any jurisdiction), other than those assets (or the relevant right, title or interest therein) that were the object of a Fair Exchange or whose value is less than $500 (five hundred dollars) and which were the object of a bona fide gift.

**Markus Russian BK Estate** means Markus's bankruptcy estate in the Russian Insolvency Proceedings.

**Mortgage Liens** means the 10C Mortgage Lien, the 23H Mortgage Lien, the 31B Mortgage Lien and the 31C Mortgage Lien.

**Non-Markus Targeted Parties** means all of the Targeted Parties other than Markus.

**Non-US Settlement Agreement** means the deed of undertaking and settlement between, *inter alia*, Markus, Bykov, BG Atlantic and an Appointed Agent of Rozhkov, to be entered into between them in relation to certain of the Markus Assets located in France and Latvia.

**Pending Appeal** means any Applicable Appeal that is not a Decided Appeal.

**Proceedings** has the meaning given to that term in Clause 17.2.

**Properties** means the 10C Property, the 23H Property, the 31B Property, and the 31C Property.

**Property & Closing Expenses** shall mean in respect of any Property: all Taxes payable (including amounts subject to withholding on account of Tax) as a result of the sale of any Property; all amounts payable to the mortgagee to discharge the Mortgage Lien on any Property; outstanding common charges payable in respect of such Property; and all costs, fees, expenses, and liabilities payable (other than to a Targeted Party or its Respective Agent) reasonably incurred in connection with the sale of such Property (including for the avoidance of doubt any fees payable to any title company and/or broker involved in the sale**).**

**Property Management Account** means the account currently being maintained by LM Property Management LLC at Wells Fargo (ending in 4156).

**Prosecuting Parties** means Rozhkov (as trustee of Markus in the Russian Insolvency Proceedings and as the foreign representative of Markus in the US Bankruptcy Proceedings) and DIA (as trustee of Vneshprombank in the VPN Russian Proceedings and as the foreign representative of Vneshprombank in the VPB US Proceedings).

**Protax Entities** has the meaning given to that term in the Preamble.

**Referee** means the referee that has been appointed in the 10C Foreclosure Proceedings; the 20A Foreclosure Proceedings; the 24C Foreclosure Proceedings; the 31B Foreclosure Proceedings; or the 31C Foreclosure Proceedings, as applicable.

**Release Effective Date** has the meaning given to that term in Clause 3.2.1.

**Respective Agents** means the past and present agents, assigns, Close Relatives, officers, directors, owners (whether registered or beneficial), partners, shareholders, members, managing members, subsidiaries, parent entities, Affiliates, attorneys, brokers, accountants, executors, and/or administrators of the respective Parties, provided, that notwithstanding anything in this Agreement to the contrary, (i) neither Markus nor any Close Relative of Markus shall be deemed to be a Respective Agent of any Non-Markus Targeted Party, and (ii) Vneshprombank shall be deemed to be a Respective Agent of DIA.

**Rozhkov's Counsel** means Marks & Sokolov LLC or any other legal counsel appointed by Rozhkov from time to time for purposes of the US Bankruptcy Proceedings.

**Russian Bankruptcy Court** shall mean any court in Russia hearing the Russian Insolvency Proceedings, the VPB Russian Proceedings, or matter relating thereto.

**Russian Insolvency Proceedings** means the insolvency proceedings commenced in relation to Markus as debtor on or about 19 April 2016 by Bank VTB 24 in the Commercial (*arbitrazh*) Court for the City of Moscow, Case No. 40-90960/16.

**SDNY** means the US District Court for the Southern District of New York.

**Second Circuit** means the US Court of Appeals for the Second Circuit.

**Services Agreement** has the meaning given to that term in Clause 3.6.1.

**Singer** means Daniel A. Singer, Esq. or the Law Offices of Daniel A. Singer PLLC (as the context requires), legal counsel in the US Bankruptcy Proceedings, the VPB US Proceedings, and the Adversary Proceedings to LARMAR, LM Trust, 550 Park Avenue LLC, Bykov, the Protax Entities, and the LM Entities.

**Singer Account** means the escrow account maintained by The Law Offices of Daniel A. Singer PLLC.

**Tax** means all direct, indirect or ancillary taxes, real estate taxes, capital gains tax, stamp duties, duties, withholdings, imposts, special levies, levies, customs, excise duties and social security or other similar contributions imposed by any regional, national or other authority or body, and all related charges, interests, penalties, fines and expenses (and all related words such as **Taxation** and **Taxable** shall be construed accordingly).

**Targeted Parties** means Markus, Bykov, LARMAR, the LM Trust, the Protax Entities, the LM Entities, and BG Atlantic.

**UK Proceedings** means the proceedings pending in the High Court of Justice Business and Property Courts of England and Wales Insolvency and Companies List, bearing the case number BR-2019-000374.

**Unreleased Claims** means:

(a)    any Claims arising out of or in connection with this Agreement or any breach hereof;

(b)    any Claims arising out of or in connection with the Non-US Settlement Agreement or any breach thereof;

(c)    any Claims by the Prosecuting Parties (or either of them) against Markus or (subject to Clause 3.2.1(f)) her Respective Agents of whatever nature in connection with any Markus Assets that are not Covered Assets;

(d)    any Claims by the Prosecuting Parties (or either of them) against any Non-Markus Targeted Party or its Respective Agents (or any of them) of whatever nature in connection with any Markus Asset that is not a Disclosed Asset, where such Targeted Party (other than Markus) or its Respective Agent(s) at any time has or has had:

   (i)    ownership, custody or Control over such Markus Asset;

   (ii)    any relation in respect of such Market Asset with any person that has or has had ownership, custody or Control over such Markus Asset; or

   (iii)    any form of participation in or assistance with management, acquisition, disposal, use, encumbrance, modification or destruction of such Markus Asset that is not covered by paragraph (d)(ii) above;

(e)    any Claims by the Prosecuting Parties (or either of them) against any Non-Markus Targeted Party or its Respective Agents (or any of them) that (or arising out of a Claim that) any of the Latvian real properties indicated in Schedule 1) was alienated otherwise than in accordance with Applicable Law; and

(f)    any Claims by the Prosecuting Parties and their Respective Agents (or any of them) against the Targeted Parties and their Respective Agents (or any of them) of whatever nature other than in relation to any Markus Assets.

**US** and **USA** means the United States of America and includes, where the context requires, its states, territories, their subdivisions, and other constituent parts thereof.

**US Bankruptcy Court** means the bankruptcy court assigned the US Bankruptcy Proceedings and the VPB US Proceedings.

**US Bankruptcy Proceedings** means the proceedings in Case No. 19-10096 (MG), *In re Larisa Markus, as Debtor in a Foreign Proceeding*, pending in the US Bankruptcy Court for the Southern District of New York, commenced under Chapter 15 of the Bankruptcy Code in connection with the Russian Insolvency Proceedings.

**Vneshprombank** means Foreign Economic Industrial Bank Limited ("Vneshprombank"), a limited liability company organized and existing under the laws of the Russian Federation, with main state registration number (OGRN) 1027700514049, and with its registered address at 42 Komsomolsky Prospekt, building 1, Moscow 119992, Russian Federation.

**VPB Russian Proceedings** means the insolvency proceedings commenced in relation to Vneshprombank as debtor on or about 11 March 2016 by the Russian Central Bank in the Commercial (*arbitrazh*) Court for the City of Moscow, Case No. A40-17434/16.

**VPB US Proceedings** means the proceedings in Case No. 16-13534 (MG), *In re Foreign Economic Industrial Bank Limited, "Vneshprombank" Ltd., as Debtor in a Foreign Proceeding*, pending in the US Bankruptcy Court for the Southern District of New York, commenced under Chapter 15 of the Bankruptcy Code in connection with the VPB Russian Proceedings.

1.2    **Interpretation**

In this Agreement, unless otherwise specified:

(a)    the headings are for ease of reference only and shall not be taken into account in construing this Agreement;

(b)    references to this Agreement or any other document shall be construed as references to this Agreement or that other document as amended, varied, novated, supplemented or replaced from time to time;

(c)    references to any Clause, paragraph or Schedule are to those contained in this Agreement, and all Schedules to this Agreement are an integral part of this Agreement;

(d)    the expression this Clause shall, unless followed by reference to a specific provision, be deemed to refer to the whole clause (not merely the sub-clause, paragraph or other provision) in which the expression occurs;

(e)    references to a Party include that Party's successors and heirs as well as that Party's assigns and/or transferees as permitted in accordance with the terms of this Agreement;

(f)    references to any gender shall include the others; and words in the singular include the plural and vice versa;

(g)    law includes any legislation, any common or customary law, constitution, decree, judgment, order, ordinance, treaty or other legislative measure in any jurisdiction and any present or future directive, request, requirement or guideline (in each case, whether or not having the force of law but, if not having the force of law, compliance with which is in accordance with the general practice of persons to whom the directive, request, requirement or guideline is addressed);

(h)    references to legislation include any statute, by-law, regulation, rule, subordinate or delegated legislation or order; and reference to any legislation is to such legislation as

amended, modified or consolidated from time to time and to any legislation replacing it or made under it;

(i)     references to a person (or to a word importing a person) shall be construed so as to include an individual, firm, partnership, trust, joint venture, company, corporation, body corporate, unincorporated body, association, organisation, any government, or state or any agency of a government or state, or any local or municipal authority or other governmental body (whether or not in each case having separate legal personality);

(j)     in writing and written includes any readily accessible and readable medium of written communication including e-mail;

(k)     the words include, including and in particular shall be construed as being by way of illustration or emphasis only and shall not be construed as, nor shall they take effect as, limiting the generality of any preceding words;

(l)     the words other and otherwise shall not be construed ejusdem generis with any foregoing words where a wider construction is possible;

(m)     references to Rozhkov are exclusively to him in his official capacity either as trustee of Markus in the Russian Insolvency Proceedings or in his associated capacity as foreign representative of Markus in the US Bankruptcy Proceedings; and references to DIA are exclusively to it in its official capacity as trustee of Vneshprombank in the VPB Russian Proceedings and in its associated capacity as foreign representative of Vneshprombank in the VPB US Proceedings.

1.3     The recitals and schedules to this Agreement form part of this Agreement.

**2      Scope of this Agreement**

2.1     By this Agreement, the Parties intend:

(a)     to effectuate a mutual general release by and between the Non-Markus Targeted Parties and their Respective Agents on the one hand and the Prosecuting Parties and their Respective Agents on the other hand, other than with respect to Unreleased Claims;

(b)     to effectuate a mutual limited release by and between Markus and her Respective Agents on the one hand and the Prosecuting Parties and their Respective Agents on the other hand, limited to the Adversary Proceedings, the US Bankruptcy Proceedings and the VPB US Proceedings, and any Claims relating to the Covered Assets in each case other than with respect to Unreleased Claims;

(c)     to fully and finally resolve all of the Prosecuting Parties' claims in, and to discontinue with prejudice (subject to Clause 3.1(h)) all actions against the Targeted Parties in, the VPB US Proceedings (other than with respect to Markus), the US Bankruptcy Proceedings (other than with respect to Markus), and the Adversary Proceedings;

(d)     to fully and finally resolve all of the Prosecuting Parties' claims (if any) in, and to discontinue with prejudice (subject to Clause 3.1(h)) all actions (if any) against the Non-Markus Targeted Parties in, the VPB Russian Proceedings, the Russian Insolvency Proceedings and any other proceeding as may be pending against the Non-Markus Targeted Parties anywhere in the world in relation to the Markus Assets;

(e) to discontinue with prejudice all discovery which is being sought from the Non-Markus Targeted Parties (be it in the form of party discovery or non-party) in any proceeding anywhere in the world in relation to the Markus Assets including, without limitation, any and all discovery being sought in the US Bankruptcy Proceedings, the VPB US Proceeding, the Russian Insolvency Proceedings, and/or the VPB Russian Proceedings, but without prejudice to the Prosecuting Parties' rights to discovery in connection with any Unreleased Claim;

(f) to transfer to Rozhkov ownership and control of the Included LM Entities and of the Properties and all other assets owned by the Included LM Entities;

(g) to transfer to Rozhkov of various cash amounts owned by Markus and/or the LM Entities in accounts located within the US, as set forth herein; and

(h) to provide for certain disclosures, undertakings, representations and warranties of the Targeted Parties in relation to the Markus Assets,

in each case on the terms of this Agreement.

2.2 Nothing in this Agreement shall be construed to prejudice or otherwise affect the right or ability of Rozhkov or DIA to assert a claim against any person or entity other than the Targeted Parties and/or to seek discovery from any other person or entity other than the Targeted Parties.

2.3 This Agreement does not contemplate the receipt by Markus in her personal capacity, without inclusion in the Markus Russian BK Estate, of any monetary compensation for transferring title and control of the Covered Assets in accordance with the terms of this Agreement.

## 3    Execution and Implementation of the Settlement

### 3.1    Filing and effectiveness of this Agreement

(a) The Prosecuting Parties shall promptly file pleadings seeking approval of this Agreement pursuant to Bankruptcy Rule 9019 and Section 1520(a) of the Bankruptcy Code in the US Bankruptcy Proceedings, the VPB US Proceeding, and the Adversary Proceedings, and, as part of such approval, shall disclose the Services Agreement and obtain the consent of the US Bankruptcy Court to the entry by the relevant Parties into the Services Agreement.  The Prosecuting Parties shall (to the extent they have not already done so) promptly seek the approval of the Russian Bankruptcy Court for the engagement by Rozhkov of Avenir pursuant to the Services Agreement (including the payment obligations of Rozhkov thereunder); and shall promptly notify the other Parties and the US Bankruptcy Court upon receipt of each such approval.  Collectively, the aforementioned approvals of the US Bankruptcy Court and the Russian Bankruptcy Court are referred to herein as the **Approval**. Counsel for the Prosecuting Parties and the Targeted Parties shall copy each other on any and all written communications with the US Bankruptcy Court regarding obtaining the Approval, and shall forward copies of any and all written communications by either of them with any other courts in the aforementioned proceedings regarding obtaining the Approval. The Parties agree to work in good faith and to cooperate and use their respective best efforts to obtain the Approval (including by acting in good faith to consider and agree to any modifications to this Agreement, the Services Agreement or any other document as may be required by the US Bankruptcy Court or the Russian Bankruptcy Court as a condition of granting the Approval).

13

(b)    The Parties shall, pending Approval, promptly execute and file stipulations to be approved by the respective court requesting a stay of proceedings and/or shall otherwise request a stay of proceedings as follows:

(i)    With respect to the Adversary Proceedings, the Prosecuting Parties and the Targeted Parties appearing in such proceedings shall execute and file a stipulation to be approved by the US Bankruptcy Court staying all proceedings in the Adversary Proceedings (including, without limitation, all discovery obligations and discovery orders) pending such Approval.

(ii)    With respect to the Pending Appeals, the Parties shall submit a joint letter to the judge in each such appeal requesting that all deadlines (including, without limitation, the deadline for filing any additional briefs) shall be extended by 90 days, solely for the purpose of seeking Approval (and in the event that the Approval is not obtained by the expiration of the deadline actually granted by each such judge, the relevant Parties shall use their respective best efforts to obtain further extension(s) of such deadlines until the Approval is granted or this Agreement terminates, as applicable).

(iii)    With respect to the Decided Appeals, the Parties shall execute a joint stipulation in a form agreed by them, acting reasonably, to extend by 90 days the time to file a notice of appeal to the Second Circuit (and/or the time for each further action required to perfect the appeal), solely for the purpose of seeking Approval (and in the event that the Approval is not obtained by the expiration of the deadline actually granted by the relevant judge, the relevant Parties shall use their respective best efforts to obtain further extension(s) of such deadlines until the Approval is granted or this Agreement terminates, as applicable).

(iv)    With respect to the US Bankruptcy Proceedings and the VPB US Proceedings, the Parties shall file a joint stipulation executed by the Parties that have appeared in that action staying all proceedings against the Targeted Parties including, without limitation, all discovery obligations and/or discovery orders pending such Approval.

(v)    The Parties agree to work in good faith so as to effectuate the stays and extensions set forth in this Clause 3.1(b).

(c)    Other than Clause 1, this Clause 3.1 and Clauses 6 through 18 of this Agreement, no part of this Agreement shall enter into force until and unless the Approval has been obtained.  Clause 1, this Clause 3.1 and Clauses 6 through 18 of this Agreement shall enter into force, and this Agreement shall be dated, as of the date when all the Parties have signed it (as indicated by last of the dates indicated below each Party's signature; provided, that if any Party fails to indicate that date of that Party's signature, the date of its signature shall be deemed to be the date when that Party (directly or through its legal counsel or other representative) releases its signed signature page to (i) any Prosecuting Party or its legal counsel, if the signing Party is a Targeted Party; or (ii) any Targeted Party or its legal counsel, if the signing Party is a Prosecuting Party).

(d)    Upon Approval being obtained:

(i)    other than relating to the implementation and enforcement of this Agreement or in respect of Unreleased Claims, no other action shall be taken by the

Parties in the Adversary Proceedings and no other action shall be taken by or against the Non-Markus Targeted Parties or their Respective Agents in the US Bankruptcy Proceeding, VPB US Proceedings, or any other legal proceeding which may be pending against them anywhere in the world; and

(ii)     the Applicable Appeals shall be discontinued as set forth in Clause 3.1(e) below.

(e)     Contemporaneously with the execution of this Agreement, counsel for the Prosecuting Parties shall execute stipulations dismissing each of the Pending Appeals identified in paragraph (a) and (b) of the definition of "Applicable Appeals" in the form annexed hereto as of Schedule 4 (the **Appeals Stipulations**), and shall forward executed copies of the same to counsel for the Targeted Parties.   The Appeals Stipulations shall specify that the parties waive cost.  Promptly following the granting of the Approval, the Targeted Parties shall file the Appeals Stipulations with the US District Court for the Southern District of New York.  For the avoidance of doubt, upon granting of the Approval the Targeted Parties shall abandon any further appeal of the Decided Appeals and, if no notice of appeal has been filed in respect of a Decided Appeal, shall not file any such notice of appeal.  If and to the extent that there are at any time subsequent to the Approval any Pending Appeals whose dismissal is not provided for by an Appeals Stipulation (as in the case where a notice of appeal of a Decided Appeal to the Second Circuit has been filed, notwithstanding Clause 3.1(b)(iii)), then the Parties shall execute and file all such stipulations and other documents as may be required to obtain the dismissal of such appeal.  Without prejudice to the foregoing, the Parties agree to work in good faith and to cooperate so as to obtain the full and final dismissal of the Applicable Appeals with effect as soon as possible following the granting of the Approval.

(f)     From the date of this Agreement is presented to the US Bankruptcy Court for Approval until the date that control of the Included LM Entities is transferred to Rozhkov in accordance with Clause 3.5.1, the Targeted Parties shall ensure in relation to the Included LM Entities and the Properties that save to the extent that Rozhkov otherwise agrees in writing:

(i)     the Included LM Entities carry out their business in the ordinary course and in particular do not enter into any agreement other than on arms' length terms;

(ii)     the term of lease of any existing tenant of any Property is not extended or renewed;

(iii)     no new lease is entered into in respect of any Property;

(iv)     each Property is managed and maintained in good repair in a commercially reasonable manner so as to preserve its value; and

(v)     to the extent that there are any rental proceeds from the Properties, such rental proceeds may be applied to defray the actual costs, expenses, taxes, commissions and fees payable from time to time to third parties in connection with the maintenance of the Properties. For the avoidance of any doubt, the payment of any legal fees, costs, and/or disbursements to Singer or any other attorney representing any Targeted Party in the Adversary Proceedings, US Bankruptcy Proceedings, and/or VPB US Proceedings from such rental proceeds shall cease upon the presentation of this Agreement to

the US Bankruptcy Court for Approval unless otherwise agreed to by Bykov and Rozhkov  in writing.

(g)     If despite the Parties' respective best efforts the US Bankruptcy Court or the Russian Bankruptcy Court, as applicable, denies any motion necessary for the Approval, then the Parties shall confer in good faith and attempt to agree on such changes to this Agreement, the Services Agreement or any other document referred to herein as may be necessary or advisable in order to obtain the Approval; and if the Parties reach such agreement, then the relevant Parties shall promptly notify the relevant court and make all such filings as are reasonably necessary to obtain the Approval.  If the Parties are unable to agree on such changes within 30 days of such denial, this Agreement shall terminate (unless otherwise extended in writing by the parties), other than Clauses 7 through 18, which shall survive such termination.  Termination of this Agreement shall be without prejudice to any Claims that arose before or gave rise to termination.

(h)     The Parties agree that, save as otherwise expressly provided herein, where any action or proceeding is to be dismissed or discontinued pursuant to this Agreement, such action dismissal or discontinuance may be sought and granted on a "without prejudice" basis but subject always to the obligation of the petitioning Party or Parties to cause such dismissal or discontinuance to be converted to "with prejudice" with effect from the later to occur of: (i) the date falling 90 days after the date that the Targeted Parties have discharged their obligations set forth in Clause 3.5 with respect to the transfer of control and title to the Covered Assets; and (ii) the falling 40 days after date that all of the Applicable Appeals have been fully and finally dismissed  (or, if applicable, the time to file a notice of appeal in respect of any Decided Appeal has expired) pursuant to Clause 3.1(e).

(i)     Subsequent to the date of this Agreement, and unless and until this Agreement terminates pursuant to Clause 3.1(g), the Non-Markus Targeted Parties shall not, and shall cause their Respective Agents not to, accept ownership, custody or control of any Disclosed Asset of which they do not already have ownership, custody or control as indicated in Schedule 1 in accordance with Clause 3.4.  Within thirty (30) days of the US Bankruptcy Proceedings and the VPB US Proceedings being discontinued with prejudice against the Non-Markus Targeted Parties, Bykov, both on his own behalf and on behalf of the Protax Entities, shall execute and subsequently cause to be delivered to Markus a letter in the form attached hereto as Schedule 8 advising her that his and the Protax Entities' professional relationship with Markus is terminated as of the date of such letter (in this Clause 3.1(i), the **Termination Letter**), and for a period of at least five years from the date of the Termination Letter Bykov shall not accept (directly or through the Protax Entities or any other Affiliate) any new engagement by Markus. Notwithstanding the foregoing, Bykov and the Protax Entities shall not be precluded from performing work for or related to Markus (i) to the extent such work is required by any statute or regulation binding on Bykov and/or the Protax Entities, and/or (ii) to the extent such work involves ministerial tasks relating to matters which Bykov had performed for or relating to Markus up until the date of the Termination Letter.

(j)     The Parties agree that the 23H Civil Proceedings are not likely to result in a material recovery that justifies the cost of continuing such proceedings.  Accordingly, the Parties agree that Singer shall attempt to discontinue the 23H Civil Proceedings with prejudice, including all claims and counterclaims asserted therein, and obtain a mutual release (with no amount being payable by either party to the other in the 23H Civil Proceedings); and the Parties agree that Singer will have the authority to enter

into and execute such a discontinuance and mutual release. In the instance that Singer cannot effectuate a discontinuance of the 23H Civil Proceedings with a mutual release within a reasonable period of time following Approval, Singer and Rozhkov's Counsel shall execute a consent to change attorneys annexed hereto as Part E of Schedule 6 and Singer shall promptly file same with the court hearing the 23H Civil Proceedings.

(k)    Bykov shall take such actions as may be required to procure that the Lincoln Benefit Life insurance policy does not terminate until the Insurance Proceeds have been transferred to Rozhkov in accordance with Clause 3.5.12 (or, if applicable, until this Agreement terminates pursuant to Clause 3.1(g)).

## 3.2    Mutual Releases

3.2.1    Subject to both the Targeted Parties discharging their obligations set forth in Clause 3.5 with respect to the transfer of control and title to the Covered Assets, and the full and final dismissal of the Applicable Appeals pursuant to Clause 3.1(e) (or, if applicable, the time to file a notice of appeal in respect of any Decided Appeal has expired), upon the later to occur of either such event (such date being the **Release Effective Date**) the following releases shall become effective:

(a)    Without prejudice to any Unreleased Claims any of them may have, each Prosecuting Party and such Prosecuting Party's Respective Agents (including, without limitation, Vneshprombank) irrevocably releases each Non-Markus Targeted Party and such Non-Markus Targeted Party's Respective Agents from any and all Claims which are not Unreleased Claims and which such Prosecuting Party or any of its Respective Agents has, has had, or will or would have against such Non-Markus Targeted Party or any of its Respective Agents from the beginning of time through the date this Agreement is presented to the US Bankruptcy Court for Approval, in each case in any jurisdiction whatsoever, whether or not presently subsisting, known to or heretofore asserted by any Prosecuting Party or any of its Respective Agents. For the avoidance of doubt, the release and undertaking in the preceding sentence includes, without limitation, all Claims (other than Unreleased Claims) which have been asserted and/or which could have been asserted against such person in the US Bankruptcy Proceedings, the VPB US Proceedings, the Adversary Proceedings, the Russian Insolvency Proceedings, the VPB Russian Proceedings, and/or the UK Proceedings, and/or in any other proceedings pending anywhere in the world (if any), including without limitation:

(i)    Claims relating to the turnover and/or clawing back of any monies which have been paid to any Non-Markus Targeted Party and/or its Respective Agents;

(ii)    Claims relating to the turnover and/or clawing back of any monies which have been paid to any attorneys representing the Non-Markus Targeted Parties and/or their Respective Agents (or any of them) as legal fees, costs, and disbursements[1];

(iii)    Claims relating to the sale, lease, rental, disposal, mortgaging, refinancing and/or destruction of any Disclosed Assets (without prejudice to Claims in connection with a breach of Clause 3.1(i));

---

[1] For the avoidance of any doubt, the full extent of this release with respect to attorneys is set forth in the Markus Asset Disclosure List (as defined in section 3.4 below) attached hereto as Schedule 1 and incorporated herein by reference.

(iv)     Claims which otherwise relate to any Markus Asset; and

(v)      all Liability arising therefrom and discovery (both non-party and party discovery) relating thereto.

(b)     Without prejudice to any Unreleased Claims any of them may have, each Prosecuting Party and such Prosecuting Party's Respective Agents (including, without limitation, Vneshprombank) irrevocably releases Markus and Markus's Respective Agents from any and all Claims which are not Unreleased Claims and which such Prosecuting Party or any of its Respective Agents has, has had, or will or would have against Markus or any of her Respective Agents from the beginning of time through the date this Agreement is presented to the US Bankruptcy Court for Approval, whether or not presently subsisting, known to or heretofore asserted by any Prosecuting Party or any of its Respective Agents, and which has been or could have been asserted in the US Bankruptcy Proceedings, the VPB US Proceedings, and/or the Adversary Proceedings.  For the avoidance of doubt, the release and undertaking in the preceding sentence includes, without limitation, all Claims (other than Unreleased Claims) which have been asserted and/or which could have been asserted against such person in the US Bankruptcy Proceedings, the VPB US Proceedings, and the Adversary Proceedings (but not, for the avoidance of doubt, in the Russian Insolvency Proceedings, the VPB Russian Proceedings, the UK Proceedings, and/or in any other proceedings pending anywhere in the world other than the USA (if any)), including without limitation:

(i)      Claims relating to the turnover and/or clawing back of any monies which have been paid to any of Markus and/or her Respective Agents;

(ii)     Claims relating to the turnover and/or clawing back of any monies which have been paid to any attorneys representing Markus and/or her Respective Agents (or any of them) as legal fees, costs, and disbursements;

(iii)    Claims which otherwise relate to any Covered Asset; and

(iv)     all Liability arising therefrom and discovery (both non-party and party discovery) relating thereto.

(c)     Without prejudice to any Unreleased Claims any of them may have, each Non-Markus Targeted Party and such Non-Markus Targeted Parties' Respective Agent irrevocably releases each Prosecuting Party and its Respective Agents (including, without limitation, Vneshprombank) from any and all Claims which are not Unreleased Claims and which such Targeted Party or its Respective Agents has, has had, or will or would have against such Prosecuting Party or any of its Respective Agents from the beginning of time through the date this Agreement is presented to the US Bankruptcy Court for approval, in each case in any jurisdiction whatsoever, whether or not presently subsisting, known to or heretofore asserted by any Targeted Party or any of its Respective Agents.  For the avoidance of doubt, the release and undertaking in the preceding sentence includes, without limitation, all Claims which have been asserted and/or which could have been asserted against such person in the US Bankruptcy Proceedings, the VPB US Proceedings, the Adversary Proceedings, the Russian Insolvency Proceedings, the VPB Russian Proceedings, and/or the UK Proceedings, and/or in any other proceedings pending anywhere in the world (if any), including without limitation:

(i)    Claims relating to the turnover and/or clawing back of any monies which have been paid to any Prosecuting Party and/or its Respective Agents;

(ii)    Claims relating to the turnover and/or clawing back of any monies which have been paid to any attorneys representing the Prosecuting Parties and/or their Respective Agents (or any of them) as legal fees, costs, and disbursements;

(iii)    Claims relating to the sale, lease, rental, disposal, mortgaging, refinancing and/or destruction of any Disclosed Assets (without prejudice to Claims in connection with a breach of Clause 3.1(i));

(iv)    Claims which otherwise relate to any Markus Asset; and

(v)    all Liability arising therefrom and discovery (both non-party and party discovery) relating thereto.

(d)    Without prejudice to any Unreleased Claims any of them may have, Markus and Markus's Respective Agent irrevocably releases each Prosecuting Party and its Respective Agent (including, without limitation, Vneshprombank) from any and all Claims which are not Unreleased Claims and which such Targeted Party or its Respective Agents has, has had, or will or would have against such Prosecuting Party or any of its Respective Agents from the beginning of time through the date this Agreement is presented to the US Bankruptcy Court for Approval, whether or not presently subsisting, known to or heretofore asserted by any Targeted Party or any of its Respective Agents, and which has been or could have been asserted in the US Bankruptcy Proceedings, the VPB US Proceedings, and/or the Adversary Proceedings. For the avoidance of doubt, the release and undertaking in the preceding sentence includes, without limitation, all Claims which have been asserted and/or which could have been asserted against such person in the US Bankruptcy Proceedings, the VPB US Proceedings, and the Adversary Proceedings (but not, for the avoidance of doubt, in the Russian Insolvency Proceedings, the VPB Russian Proceedings, the UK Proceedings, and/or in any other proceedings pending anywhere in the world other than the USA (if any)), including without limitation:

(i)    Claims relating to the turnover and/or clawing back of any monies which have been paid to any Prosecuting Party and/or its Respective Agents;

(ii)    Claims relating to the turnover and/or clawing back of any monies which have been paid to any attorneys representing the Prosecuting Parties and/or their Respective Agents (or any of them) as legal fees, costs, and disbursements;

(iii)    Claims which otherwise relate to any Covered Asset; and

(iv)    all Liability arising therefrom and discovery (both non-party and party discovery) relating thereto.

(e)    Without prejudice to any Unreleased Claims any of them may have, each Targeted Party irrevocably undertakes to each Prosecuting Party and Vneshprombank and their Respective Agents that it will not assert, and shall be deemed to have released, all Claims which are not Unreleased Claims and which such Targeted Party may have at any time on or prior to the date of this Agreement against any Disclosed Asset (whether asserted in rem or otherwise) or against any person in connection with such Disclosed Asset, including, for the avoidance of doubt, against the Included LM Entities or the LM Trust, in each case in any jurisdiction whatsoever, whether or

not presently subsisting, known to or heretofore asserted by any Targeted Party, including, without limitation Claims which have been asserted and/or which could have been asserted in relation to such Disclosed Asset or against such person in the US Bankruptcy Proceedings, the VPB US Proceeding, the Adversary Proceedings, the Russian Insolvency Proceedings, the VPB Russian Proceedings, and/or the UK Proceedings, and/or in any other proceedings pending anywhere in the world (if any).

(f)     For the avoidance of any doubt, to the extent that any Non-Markus Targeted Parties and/or their Respective Agents are also Respective Agents of Markus, in the event of any conflict between the release and covenant in Clause 3.2.1(a) and the release and covenant in Clause 3.2.1(b), in respect of such Non-Markus Targeted Parties and such Respective Agents the release and covenant in Clause 3.2.1(a) shall prevail over the release and covenant in Clause 3.2.1(b).

(g)     For the avoidance of any doubt, other than with respect to the Legal Fees paid to Attorneys (as such terms are defined in Schedule 1 of the Agreement), nothing in this Agreement shall be construed (i) to prevent or restrict the bringing or assertion of any Unreleased Claim by any Prosecuting Party or its Respective Agent against any Targeted Party or its Respective Agent or (ii) to prevent or restrict the bringing of any assertion of any Unreleased Claim by any Targeted Party or its Respective Agent against any Prosecuting Party or its Respective Agent.

(h)     For the avoidance of doubt, nothing in this Agreement shall be deemed to prevent the Prosecuting Parties or their Respective Agents from asserting any Claim against any Non-Markus Targeted Party or its Respective Agents in relation to any Disclosed Assets of which such Non-Markus Targeted Party or its Respective Agent acquired (or re-acquired) custody, control or ownership after the date of this Agreement.

(i)     For the avoidance of any doubt, with effect from the Release Effective Date, the releases provided by the Targeted Parties and their Respective Agents to the Prosecuting Parties and their Respective Agents shall apply equally to the Included LM Entities, LM Trust and their Respective Agents.

(j)     The Parties acknowledge and agree that for purposes of determining whether the Release Effective Date has occurred, the reference in the first paragraph of this Clause 3.2.1 to the dismissal of the Applicable Appeals shall be read and construed also to include any other final disposition of any of the Applicable Appeals, provided that:

(i)     this is without prejudice to the Parties' respective obligations under Clause 3.1(b) and Clause 3.1(e); and

(ii)    for the avoidance of doubt, but without prejudice to Clauses 3.1(b), 3.1(d)(ii), or 3.1(e), should any of the Pending Appeals be decided following the date of this Agreement, they shall have no impact on this Agreement and this Agreement shall remain controlling; and without prejudice to the generality of the foregoing, the Parties shall act in relation to all Markus Assets that are a subject of any of the Applicable Appeals as if the Applicable Appeals had been dismissed and not otherwise finally disposed of.

3.2.2   Following the execution of this Agreement by Parties until the Release Effective Date (or, if the Release Effective Date does not occur, the termination of this Agreement in accordance with Clause 3.1(g)):

(a)   the Prosecuting Parties shall not, and shall cause their Respective Agents not to, bring or pursue any new Claims (other than Unreleased Claims) against any Targeted Parties and/or their Respective Agents anywhere in the world, other than:

(i)   new Claims of whatever nature against Markus and/or her Respective Agents (other than any Respective Agent that is a Non-Markus Targeted Party or its Respective Agent) within the Russian Insolvency Proceedings, the VPB Russian Proceedings and/or the UK Proceedings;

(ii)   other new Claims against any Targeted Parties and/or their Respective Agents brought or pursued in accordance with Clause 3.2.2(c); and

(iii)   Claims asserted in response to any Claims brought or pursued by the Targeted Parties and/or their Respective Agents against the Prosecuting Parties and/or their Respective Agents in accordance with this Clause 3.2.2 or otherwise

(and for the avoidance of doubt, and without prejudice to Clause 3.1, nothing in this Clause 3.2.2(a) shall be construed to require the Prosecuting Parties or their Respective Agents to terminate or abandon any Claims already made, asserted or commenced against any Targeted Parties and/or their Respective Agents anywhere in the world);

(b)   the Targeted Parties shall not, and shall cause their Respective Agents not to, bring or pursue any new Claims (other than Unreleased Claims) against any Prosecuting Parties and/or their Respective Agents anywhere in the world, other than:

(i)   new Claims of whatever nature brought or pursued by Markus and/or her Respective Agents (other than any Respective Agent that is a Non-Markus Targeted Party or a Respective Agent of any Non-Markus Targeted Party) against the Prosecuting Parties and/or their Respective Agents within the Russian Insolvency Proceedings, the VPB Russian Proceedings and/or the UK Proceedings;

(ii)   other new Claims against any Prosecuting Parties and/or their Respective Agents brought or pursued in accordance with Clause 3.2.2(c); and

(iii)   Claims asserted in response to any Claims brought or pursued by the Prosecuting Parties and/or their Respective Agents against the Targeted Parties and/or their Respective Agents in accordance with this Clause 3.2.2 or otherwise

(but for the avoidance of doubt, and without prejudice to Clause 3.1, nothing in this Clause 3.2.2(b) shall be construed to require the Targeted Parties or their Respective Agents to terminate or abandon any Claims already made, asserted or commenced against any Prosecuting Parties and/or their Respective Agents anywhere in the world); and

(c)   until the Release Effective Date (or, if the Release Effective Date does not occur, until the Agreement is terminated in accordance with Clause 3.1(g)), any Prosecuting Party may file a Claim against any Targeted Party and/or its Respective Agents, and any Targeted Party may file a Claim against any Prosecuting Party and/or its Respective Agents, if such Party reasonably believes that that the applicable statute of limitations, statute of repose, contractual claims limitation period, or similar binding

time limitation for asserting such a Claim is likely to expire within no more than 60 (sixty) days of the date of such filing. In any such instance:

(i)      prior to filing any such Claim, the Party or Parties wishing to file such a Claim shall first notify the Party or Parties against whom (or against whose Respective Agents) the Claim is intended to be filed of its (or their) intent to make such filing, whereupon all such Parties shall use reasonable efforts in good faith during a period of at least 15 (fifteen) Business Days to negotiate, agree and execute an agreement to toll the statute of limitations or other limitation at issue; and

(ii)      if no such tolling agreement is executed within 15 (fifteen) Business Days from the date of the notice referred to in the preceding sub-paragraph despite the relevant Parties' reasonable efforts in good faith to do so, (A) the Party or Parties seeking to assert a Claim may do so but must provide the Party or Parties against whom the Claim is asserted with a courtesy copy of the same promptly following its filing (and prior to any time to respond to it has expired); and (B) until the Release Effective Date, the Party or Parties asserting such Claim shall use reasonable efforts to stay prosecution of the same including, without limitation, extending (or moving for an extension of) any time period to respond to such Claim.

For the avoidance of doubt, any Claim filed in accordance with this Clause 3.2.2 and which is not an Unreleased Claim shall be discontinued promptly following the Release Effective Date and such Claim shall be deemed released with effect from the Release Effective Date pursuant to Clause 3.2.1.

3.2.3    The Parties wish particularly to ensure that, insofar as reasonably practicable, they avoid expending resources bringing, pursuing and defending Claims that are to be released on the Release Effective Date.   Accordingly, during the period between the Approval of this Agreement and the Release Effective Date, each Party shall use its reasonable efforts to ensure that there is a stay of all Claims (other than Unreleased Claims) brought by such Party and/or its Respective Agents against (i) the Targeted Parties and/or their Respective Agents (where such Party is a Prosecuting Party); and (ii) the Prosecuting Parties and/or their Respective Agents (where such Party is a Targeted Party).

## 3.3    Limited access to documents

3.3.1    The Prosecuting Parties and Bykov acknowledge that the release of Bykov and his Respective Agents pursuant to Clause 3.2.1(a) includes a release of the Prosecuting Parties' rights to discovery (whether party- or non-party discovery) from Bykov and his Respective Agents, other than in respect of Unreleased Claims.   Notwithstanding that release, Bykov undertakes (with effect from Approval and not with effect from the date of such release) to use reasonable efforts to provide to the Prosecuting Parties within a reasonable period of time upon their written request such documents and information as the Prosecuting Parties (or either of them) may request from time to time and up to three calendar years from the Approval of this Agreement that:

(a)      are reasonably related to any Unreleased Claim against Markus or her Close Relatives under paragraph (c) of the definition of "Unreleased Claim" in Clause 1.1;

(b)      are within the custody or control of Bykov or his Respective Agents;

(c)     are not protected by any privilege recognized by the laws of the State of New York and/or the rules of the federal courts of the United States;

(d)     are not required to be provided by Bykov pursuant to any other term of this Agreement; and

(e)     may be located and provided without the expenditure by Bykov of more than 10 man-hours per calendar quarter year (in this Clause 3.3.1, the **10 Hour Allowance**), up to three years from Approval. Notwithstanding the foregoing, (i) irrespective of whether the 10 Hour Allowance has been exhausted, in the instance Bykov, in his sole discretion, determines that he requires the assistance of any third parties (including, without limitation, attorneys) to respond to the Prosecuting Parties' request, then the Prosecuting Parties shall be responsible for paying the cost of the same and no work shall be performed until a retainer equal to an estimate of the cost of the work to be performed by such third party is paid by the Prosecuting Parties; and (ii) in the instance that the Prosecuting Parties desire that Bykov perform work in excess of the 10 Hour Allowance, they shall pay him his hourly professional rate (currently $450.00) and no such additional work shall be required to be performed by Bykov unless and until he has received an advanced retainer equal to the estimated cost of performing the work. Nothing herein shall be deemed to require Bykov to perform work beyond the 10 Hour Allowance if and to the extent that he reasonably believes such request would prevent him from serving his other clients. Notwithstanding the foregoing, subject to Clause 3.2.4(c), the Prosecuting Parties shall not be responsible for the time charges and/or legal fees incurred by Bykov in the instance that judicial intervention is sought with respect to any request issued pursuant to this Clause 3.3.1.

3.3.2   Any document or information sought by the Prosecuting Parties pursuant to Clause 3.3.1 shall be specified with particularity sufficient to minimize the number of "false positive" responses; and by way of illustration, key word searches of electronic documents for specific names, addresses, account numbers, specific assets and the like shall presumptively be permissible, whereas searches on widely used terms (e.g. "transaction", "meeting", "bank transfer" etc.) or concepts in lieu of key words (e.g. "companies owned by Larisa Markus") shall not be permissible.  Provided that the Prosecuting Parties undertake to bear the entire cost of such engagement, an electronic discovery vendor may be engaged to electronically search relevant databases in the ownership or custody of Bykov and his Affiliates.  It is expressly understood by the Parties that nothing herein shall be deemed to permit the Prosecuting Parties and/or their Respective Agents to examine the raw results of any such electronic search or of any hard copy documents in Bykov's possession, custody, or control. For the avoidance of any doubt, Bykov shall not be required to produce any documents which might be returned as "hits" in key word searches which are unrelated to Markus. The determination as to whether a document appearing in a search result is related to Markus shall be made by Bykov and/or any attorney which might be retained by Bykov to assist him and/or his Affiliates in complying with the terms of Clause 3.3; provided, that (i) if Bykov withholds any documents or information on the basis of legal privilege, he shall (or shall cause his legal counsel to) record the same in a "privilege log" as if Federal Rule of Civil Procedure 26(b)(5)(A) applied to the relevant request by the Prosecuting Parties under this Clause 3.3; and (ii) if an electronic discovery vendor is engaged pursuant to this Clause 3.3.2 to perform a key-word search, then, in view of the requirement of specificity for key word searches specified above, Bykov shall (or shall cause his legal counsel to) record a log of non-responsive documents produced in response to such key-word search briefly identifying the nature of the document and the reason why it is non-responsive, as if it were exempted from production on the basis of legal privilege (rather than non-responsiveness) and as if Federal Rule of Civil Procedure 26(b)(5)(A) applied to the relevant request.

3.3.3   Nothing herein shall be deemed a waiver by Bykov and/or any of his Respective Agents to object to any request issued pursuant to this paragraph on the grounds of any privilege recognized by the laws of the State of New York and/or the federal rules of the United States. In the instance that judicial intervention is sought by either Bykov and/or Bykov's Respective Agents or the Prosecuting Parties and/or the Prosecuting Parties' Respective Agents regarding this matter, and a court of competent jurisdiction enters a final and non-appealable judgment in favor of one Party or set of Parties, then the losing Party (or losing Parties, jointly) shall be responsible for the prevailing Party or Party's reasonable legal fees and costs incurred in connection with the defense or prosecution of such proceedings.

3.3.4   For the avoidance any doubt, any request for information or documents issued pursuant to this Clause 3.3 shall be addressed solely to Bykov. Nothing herein shall be deemed to permit the Prosecuting Parties and/or any of their Respective Agents from issuing any requests for documents or information to any Targeted Party or their Respective Agents other than Bykov with respect to the discovery obligations released pursuant to Clause 3.2.1.

3.3.5   To give the Prosecuting Parties the benefit of this Clause 3.3, Bykov and the Protax Entities confirm to the Prosecuting Parties that they have complied, and pending the granting of the Approval will continue to comply, with their obligations to preserve all relevant documents and information in connection with the VPB US Proceedings and the US Bankruptcy Proceedings; and that following the Approval they will not destroy or transfer, and will take reasonable safeguards to maintain in their custody, all documents and information pertaining to any Markus Assets for a term of not less than three years from the date the Approval is granted.

3.4   **Disclosure of Markus Assets**

3.4.1   Schedule 1 to this Agreement sets out a list of all Markus Assets known to Bykov and the other Non-Markus Targeted Parties except BG Atlantic.  Each Non-Markus Targeted Party other than BG Atlantic represents and warrants to the Prosecuting Parties that (i) this list contains all of the Markus Assets of which it or (where applicable) any of its directors or shareholders has knowledge (the **Markus Asset Disclosure List**); and (ii) save as indicated in the Markus Asset Disclosure List, it does not have ownership, custody or control of any Disclosed Asset.

3.4.2   The Markus Asset Disclosure List includes all the Markus Assets known to BG Atlantic.  BG Atlantic represents and warrants that (i) the Markus Asset Disclosure List contains all of the Markus Assets of which it or any of its directors or shareholders has knowledge; and (ii) save as indicated in the Markus Asset Disclosure List, it does not have ownership, custody or control of any Disclosed Asset.

3.5   **Actions to Transfer Control and Title over Covered Assets**

3.5.1   Transfer of control of the Included LM Entities: Not later than three (3) Business Days after the occurrence of any the following (as applicable) in respect of an Included LM Entity (as indicated):

(a)   the Approval being obtained, with respect to each of 550 Park Avenue LLC, 10C LLC and 23H LLC;

(b)   the occurrence of the change of attorney in the 31B Foreclosure Proceedings pursuant to Clause 3.5.8, with respect to 31B LLC; or

(c)   the occurrence of the change of attorney in the 31C Foreclosure Proceedings pursuant to Clause 3.5.9, with respect Property Management LLC),

Bykov shall deliver to Rozhkov the relevant document annexed hereto in Part A of Schedule 5 in respect of such Included LM Entity and executed by him, in which he resigns as manager of such Included LM Entity with immediate effect, and in which he irrevocably waives (subject to the Approval of this Agreement) all claims against such Included LM Entity.

Each such document shall be executed promptly by Bykov following the date of this Agreement and shall be held in escrow by Singer until the granting of the Approval or the change of attorney in the relevant foreclosure proceedings, as applicable. Upon the granting of the Approval, the aforementioned documents shall be released from escrow and provided to Rozhkov's Counsel. The Parties agree to work in good faith and to take reasonable commercial efforts to amend or supplement the aforementioned documents so as to accomplish the purpose of said documents.

3.5.2   <u>Transfer of documents relating to the Included LM Entities</u>: Not later than the date that the documents transferring to Rozhkov control of the Included LM Entities are released from escrow pursuant to Clause 3.5.1, Bykov shall cause the following documents to be delivered to Rozhkov or his Appointed Agent:

(a)   the operating agreement of such Included LM Entity and any amendments to such operating agreement;

(b)   all filed tax returns to date;

(c)   all applications for extensions which have been filed and any official response to those applications (if any);

(d)   all open leases in respect of the Property owned by such Included LM Entity;

(e)   the ledgers showing accounts receivables and accounts payables for 2010 to date; and

(f)   all bank statements for any such entity from 2010 to date to the extent such bank statements are in the Included LM Entities' possession or can be obtained from the respective bank by the LM Entity with reasonable efforts.

3.5.3   <u>Transfer of Included LM Entities Shares</u>: Within five (5) days of the granting of the Approval:

(a)   LARMAR shall execute and deliver to Rozhkov two original copies of the relevant transfer instruments in the form attached hereto as Part B of Schedule 5 transferring to Rozhkov all right, title and interest in 95% of the units in each Included LM Entity (other than 550 Park Avenue LLC) to Rozhkov;

(b)   Innovative Construction Group shall execute and deliver to Rozhkov two original copies of the relevant transfer instruments in the form attached hereto as Part B of Schedule 5 transferring to Rozhkov all right, title and interest in 5% of the units in each Included LM Entity (other than 550 Park Avenue LLC) to Rozhkov; and

(c)   Markus shall execute and deliver to Rozhkov two original copies of the transfer instrument in the form attached hereto as Part C of Schedule 5 transferring to Rozhkov all right, title and interest in 100% of the equity interests in 550 Park Avenue LLC.

3.5.4   <u>Providing Rozhkov with joint control of the Property Management Account</u>: Within ten (10) Business Days of the granting of Approval, Bykov and Rozhkov shall take and/or shall cause to have taken the necessary action to have Rozhkov named as a joint-signatory on the

Property Management Account and the substitution of Avenir or Bykov as the second joint-signatory on such account, such that Avenir and Rozhkov shall exercise joint control over the Property Management Account until termination of the Services Agreement. Within ten (10) days of Approval, Rozhkov shall also be provided with the password for the Property Management Account.

3.5.5   <u>Transfer of the Account Balances</u>: The Targeted Parties shall cause the transfer to the Client Account of the following amounts (the **Account Balances**) within ten (10) Business Days of the granting of the Approval except as otherwise noted:

(a)   $116,648.28 (one hundred sixteen thousand six hundred forty eight dollars and twenty eight cents) held by Rosenberg & Estis P.C. (as a prepayment for services not rendered);

(b)   £10,711.36 (ten thousand seven hundred eleven British pounds and thirty six pence) held by Signature Litigation LLP;

(c)   $5,825.11 (five thousand eight hundred twenty five dollars and eleven cents) held by BG Atlantic on deposit in Signature Bank; and

(d)   $78,029.93 (seventy eight thousand twenty nine dollars and ninety three cents) on deposit in the Singer Account, representing the funds that were in the 550 Park Avenue Citi Account prior to its closure and which were deposited in the Singer Account pursuant to the order of the US Bankruptcy Court dated November 7, 2019, it being agreed that within five Business Days of Approval, Rozhkov's Counsel and Singer shall execute and submit to the US Bankruptcy Court a stipulation requesting permission to transfer said funds to the Client Account and that, promptly upon such stipulation being approved by the US Bankruptcy Court, Singer shall pay $78,029.93 to the Client Account by bank transfer or delivery to Rozhkov's Counsel of a check drawn on the Singer Account.

3.5.6   <u>The 20A Foreclosure Proceedings and the 20A Net Sale Proceeds</u>:   The Parties agree that:

(a)   within five (5) Business Days of the granting of the Approval, Rozhkov's Counsel shall execute the consent to change attorneys annexed hereto as Part A of Schedule 6 and forwards the same to Singer, and Singer shall promptly file the same with the court hearing the 20A Foreclosure Proceedings;

(b)   immediately upon completion of the actions in preceding sub-clause (a):

(i)   if the 20A Net Sale Proceeds have been deposited into the Singer Account, then Singer and Rozhkov's Counsel shall execute a joint stipulation permitting the transfer of the 20A Net Sale Proceeds to the Client Account and, promptly upon the entry of an order by the US Bankruptcy Court approving such stipulation, Singer shall pay the amount of the 20A Net Sale Proceeds to the Client Account by bank transfer or delivery to Rozhkov's Counsel of a check drawn on the Singer Account; and

(ii)   if the 20A Net Sale Proceeds have not yet been deposited into the Singer Account, then Singer and Rozhkov's Counsel shall execute a joint stipulation which sets forth, in pertinent part, that the 20A Net Sale Proceeds shall be paid to the Client Account and such stipulation shall be filed with the Court for its approval; and in either case, promptly upon the entry of an order by the

US Bankruptcy Court approving such stipulation, the Parties shall cause such transfer to be completed.

3.5.7    The 24C Foreclosure Proceedings and the 24C Net Sale Proceeds: The Parties agree that:

(a)    within five (5) Business Days of the granting of the Approval, Rozhkov's Counsel shall execute the consent to change attorneys annexed hereto as Part B of Schedule 6 and shall forward same to Singer, and Singer shall promptly file same with the court hearing the 24C Foreclosure Proceedings;

(b)    immediately upon completion of the actions in preceding sub-clause (a):

(i)    if the 24C Net Sale Proceeds have been deposited into the Singer Account, then Singer and Rozhkov's counsel shall execute a joint stipulation permitting the transfer of the 24C Net Sale Proceeds to the Client Account and, promptly upon the entry of an order by the US Bankruptcy Court approving such stipulation, Singer shall pay the amount of the 24C Net Sale Proceeds to the Client Account by bank transfer or delivery to Rozhkov's Counsel of a check drawn on the Singer Account; and

(ii)    if the 24C Net Sale Proceeds have not yet been deposited into the Singer Account, then Singer and Rozhkov's Counsel shall execute a joint stipulation which sets forth, in pertinent part, that the 24C Net Sale Proceeds shall be paid to the Client Account and such stipulation shall be filed with the Court for its approval; and in either case, promptly upon the entry of an order by the US Bankruptcy Court approving such stipulation, the Parties shall cause such transfer to be completed.

3.5.8    The 31B Foreclosure Proceedings: Within five (5) Business Days of the granting of the Approval, Rozhkov's Counsel shall execute the consent to change attorneys annexed hereto as Part C of Schedule 6 and shall forward same to Singer, and Singer shall file same with the court hearing the 31B Foreclosure Proceedings.

3.5.9    The 31C Foreclosure Proceedings: Within five (5) Business Days of the granting of the Approval, Rozhkov's Counsel shall execute the consent to change attorneys annexed hereto as Part D of Schedule 6 and shall forward same to Singer, and Singer shall file same with the court hearing the 31C Foreclosure Proceedings.

3.5.10    The 10C Foreclosure Proceedings: Within five (5) Business Days of the granting of the Approval, Rozhkov's Counsel shall enter an appearance on behalf of 10C LLC in the 10C Foreclosure Proceedings.

3.5.11    The 23H Foreclosure Proceedings: Within five (5) Business Days of the granting of the Approval, Rozhkov's Counsel shall enter an appearance on behalf of 23H LLC in the 23H Foreclosure Proceedings.

3.5.12    Transfer of the Insurance Proceeds: Within 15 days of the granting of the Approval, Bykov shall cause the balance of the Insurance Proceeds (such being the $31,718.84 (thirty one thousand seven hundred eighteen dollars and eighty four cents) on the Lincoln Benefit Life insurance policy) to be withdrawn and paid over to the Client Account.

3.5.13    Transfer of interest in CT Portfolio Debt LLC: Within 15 days of the granting of the Approval, Bykov shall transfer to Rozhkov the 1.85% equity share that 550 Park Avenue LLC owns in CT Portfolio Debt LLC by executing the transfer instrument attached hereto as Part D of Schedule 5.

3.5.14   Transfer and application of certain other funds:

(a)      Within 10 Business Days of the granting of the Approval, Singer and Rozhkov's Counsel shall submit a proposed order in the form annexed hereto as Part C of Schedule 7 to the US Bankruptcy Court directing that the amount of $100,000.00 (one hundred thousand dollars), constituting a portion of the balance of $153,700.43 which had been in the 23H LLC, 10C LLC, 20A LLC, 24C LLC, 31B LLC, Property Management LLC, and Prolegal accounts at Citibank prior to closure of the same (in this Clause 3.5.14, the **LM Entities Transferred Funds**), shall be released from the Singer Account to Bykov after the deduction of any of the Subject Legal Fees (defined below) which have been incurred by Singer through the date the Proposed Order is presented to the US Bankruptcy Court, which shall be released directly to Singer.  Other than the Subject Legal Fees being released directly to Singer, such monies shall be used by Bykov to pay legal fees and disbursements which have been incurred and/or which will be incurred by attorneys representing the LM Entities in connection with this Agreement, the US Bankruptcy Proceedings, the Adversary Proceedings, the VPB US Proceedings and/or in any other action in which any of the LM Entities is a party (the **Subject Legal Fees**). For the avoidance of any doubt, nothing herein shall be deemed to imply that the amount of such Subject Legal Fees which have been or will be incurred is capped at $100,000.00 and nothing herein shall be deemed to reduce any liability of Bykov and the Protax Entities for the Subject Legal Fees regardless of whether or not such Subject Legal Fees are in excess of the $100,000.00 to be released pursuant to this paragraph or in the event that no such funds are released due to the termination of this Agreement pursuant to Clause 3.1(g). For the avoidance of any doubt, the Subject Legal Fees do not include any legal fees incurred by the Prosecuting Parties including, without limitation, legal fees incurred following the substitution of counsel in the action as set forth in this Clause 3.4 and the Prosecuting Parties shall be solely responsible for such fees. The proposed order shall provide that the balance of the LM Entities Transferred Funds, being the amount of $53,700.00 (fifty three thousand seven hundred dollars), shall be paid by Singer to the Client Account.

(b)      Following the granting of the Approval, all rents on the Properties shall continue to be paid to the Property Management Account.  Rozhkov shall (unless and to the extent that this is already authorised by the US Bankruptcy Court in any order(s) approving this Agreement) seek an order from the US Bankruptcy Court providing that the net income (if any) from rental of the Properties is applied to defray the actual costs, expenses, taxes, commissions and fees payable from time to time to third parties in connection with the maintenance, marketing and sale of the Properties and any other Property & Closing Expenses.

(c)      To the extent there remains any surplus after the application of proceeds in accordance with immediately preceding sub-clauses (a) and (b), they shall be treated as an asset of Markus. Rozhkov may petition the US Bankruptcy Court for one or more orders requiring such rental proceeds to be paid into the Client Account, and ultimately to be transferred to the Markus Russian BK Estate, for eventual application and distribution to Markus's creditors as may be ordered by the court in the Russian Insolvency Proceedings. Provided that said motion is limited to seeking the relief sought in this subparagraph, the Targeted Parties shall not oppose such an order.

(d)      The amount of $180,000.00 (one hundred eighty thousand dollars) which had been frozen by Protax pursuant to the May 29, 2019 Order of the US Bankruptcy Court shall be unfrozen and released to Protax upon Approval of this Agreement.

3.5.15  For the avoidance of doubt, any reference in Clause 3.1(j) or this Clause 3.5 to an action to be taken by Singer shall be read and construed as an obligation by the Targeted Parties jointly to cause Singer to take such action; and any reference in this this Clause 3.5 to an action to be taken by Rozhkov's Counsel shall be read and construed as an obligation by Rozhkov to cause Rozhkov's Counsel to take such action.

3.5.16  Nothing in this Agreement shall be deemed a waiver of any privilege recognized by the laws of the State of New York and/or the federal rules of the United States which is claimed by the Targeted Parties and/or their Respective Agents including, without limitation, any claims relating to attorney-client privilege and/or attorney work product privilege (in this Clause 3.5.16, the **Subject Privilege**). It is expressly agreed and understood by the Parties that documents and information covered by the Subject Privilege shall not be disclosed to the Prosecuting Parties, Vneshprombank, and/or their Respective Agents (save with the consent of the relevant Non-Markus Targeted Party (-ies)), regardless of any substitution of counsel and/or transfer of ownership and control of the Included LM Entities and the LM Trust (and, in the case of the LM Trust, the revocation of such trust) which occurs as a result of this Agreement or otherwise.  Notwithstanding the preceding two sentences, in the event that Bykov breaches his undertakings in sub-clause (a) or (b) of Clause 3.7.1 and fails to cure such breach within 15 (fifteen) Business Days of written demand by Rozhkov, Bykov shall immediately deliver to Rozhkov all books, records and other documents and information relevant to any liability or third party Claim that Bykov has failed to settle or defend respectively in accordance with Clause 3.7.1, and no claim of privilege shall apply to prevent the transfer to Rozhkov of any books, records or other documents or information pertaining to any Included LM Entity which are relevant to the matters covered by such sub-clauses (a) and (b).

3.6     **Services Agreement; Sale of Properties and Allocation of Proceeds**

3.6.1   The Parties acknowledge that on or prior to the date of this Agreement, Rozhkov has entered into an agreement with Avenir, pursuant to which Avenir will provide certain services in connection with the management, marketing and sale of the Properties and the administration and eventual liquidation of the Included LM Entities (the **Services Agreement**).   As compensation for the services to be provided under the Services Agreement, and as further provided therein, Avenir will receive an amount equal to 10% of the amount of:

(a)     the net proceeds (after payment of (i) the Property & Closing Expenses, and (ii) any Taxes payable by Rozhkov in connection with the transfer of all right, title and interest in the Included LM Entities pursuant to Clause 3.5.3 (but without double-counting) from the sale of any Property (provided that each Included LM Entity retains sufficient funds to discharge all of its other Liabilities); and

(b)     (without double-counting any amount captured by sub-clause (a) above) the net amount (after payment of (i) the Property & Closing Expenses, and (ii) any Taxes payable by Rozhkov in connection with the transfer of all right, title and interest in the Included LM Entities pursuant to Clause 3.5.3 (but without double-counting), and provided that each Included LM Entity has paid, or retains sufficient funds to discharge, all of its other Liabilities) of any dividend or distribution by any Included LM Entity (including upon its liquidation),

that in either case is transferred to the Markus Russian BK Estate with the approval of the US Bankruptcy Court in accordance with Clause 3.8, less the amount of $100,000.00 (one hundred thousand dollars).  Each such payment to Avenir is to be made simultaneously with the corresponding transfer to the Markus Russian Bankruptcy Estate upon approval of the same by the US Bankruptcy Court, provided that the aggregate amount of all such payments

shall not exceed $2,900,000.00 (two million nine hundred thousand dollars). Rozhov shall make such application for the transfer of sales proceeds (net of Property & Closing Expenses) to the Russian Bankruptcy Estate as soon as reasonably practicable following the closing of any such sale of a Property, specifying that 10% of the same shall be paid to Avenir as set forth herein. Each Party confirms that it is familiar with the terms of the Services Agreement and considers them to be reasonable.

3.6.2    The Parties agree that, unless otherwise agreed to by the parties in writing, and subject to Clause 3.6.3, Elliot Bogod of A&I Broadway Realty Inc. shall be appointed as the exclusive broker for each Property for a term of six (6) months which shall commence upon the granting of the Approval (in this paragraph, the **Exclusive Period**), and that such Broker shall receive a commission equal to 6% of the sale price if the buyer of such Property is introduced to the Property during the Exclusive Period (payable as a Property & Closing Expense and in accordance with standard industry terms). Consistent with Section 15, nothing herein shall be deemed to imply that Elliot Bogod and/or A&I Broadway Realty Inc. are third party beneficiaries of this Agreement and they are not third party beneficiaries of this Agreement.

3.6.3    The Parties acknowledge that an order of foreclosure has already been entered by the court hearing the 23H Foreclosure Proceedings but that the sale of the Foreclosed Property has not yet occurred. Bykov shall procure that Avenir uses reasonable efforts to obtain the consent of such court and/or the holder of the 23H Mortgage Lien to the marketing (on a non-exclusive basis) and sale of the Foreclosed Property. For the avoidance of doubt, Clause 3.6.2 shall apply to such marketing and sale.

3.6.4    The Parties acknowledge that Rozhkov shall have the final say on issues relating to the marketing of, sales price of, and acceptance or refusal of any offer to buy, each Property (save with respect to the Foreclosed Property in the event it is sold in a foreclosure sale). Rozhkov agrees to use reasonable efforts to act diligently in selling each Property with the goal of maximizing the sale price achieved, but for the avoidance of doubt he shall not owe any fiduciary duty to any Targeted Party.

3.6.5    Rozhkov shall move expeditiously to obtain all necessary approvals from the US Bankruptcy Court to market and sell the Properties, unless and to the extent that the US Bankruptcy Court has granted such approvals in its order(s) approving this Agreement. To the extent it is needed, the Targeted Parties agree to cooperate with Rozhkov in obtaining such approvals.

3.6.6    All Property & Closing Expenses shall be paid for in the first instance from the funds made available for this purpose pursuant to Clause 3.5.14(b), and in the event of any shortfall, then from the proceeds of the sale of such Property.

3.6.7    During the period between the Approval and the sale of each Property, Bykov shall procure that Avenir notifies Rozhkov in writing at least once per calendar month of the accrued and outstanding amounts of Property & Closing Expenses in respect of such Property, so that arrangements for discharge of the same upon sale of such Property may be made.

3.7    **Dissolution of the Included LM Entities**

3.7.1    Bykov shall take all actions necessary to:

(a)    settle at his own expense all outstanding liabilities for Taxes and liabilities to third parties (if any) of such Included LM Entity other than Property & Closing Expenses, which shall be paid as described in Clause 3.6.6, and

(b) defend (or, with Rozhkov's prior consent, settle at Bykov's own expense) any Claim by a third party against such Included LM Entity (other than a Claim for payment of Property & Closing Expenses),

and Bykov shall additionally cause Avenir to take all actions at Bykov's expense (or, if it so agrees, at Avenir's expense) necessary to:

(c) prepare the final accounts for such Included LM Entity; and

(d) cause the dissolution of such Included LM Entity.

3.7.2 Any assets of an Included LM Entity available for distribution to its members upon its dissolution shall be distributed in accordance with Applicable Law, it being understood that except as authorised by the US Bankruptcy Court pursuant to Section 1521(b) of the Bankruptcy Code, the amounts payable to Rozhkov shall be paid into the Client Account. (For the avoidance of doubt, the preceding sentence shall not be construed to prohibit any Included LM Entity from declaring or paying into the Client Account any dividend or interim dividend following the sale of any Property owned by it.)

## 3.8 Section 1521(b) motions

Rozhkov may from time to time petition the US Bankruptcy Court for an order pursuant to Section 1521(b) of the Bankruptcy Code authorising the transfer to the Markus Russian BK Estate, for eventual application and distribution to Markus's creditors as may be ordered by the court in the Russian Insolvency Proceedings, of any or all funds held on the Client Account derived from any of the subject assets or their disposition. Each of the Targeted Parties hereby undertakes to Rozhkov not to oppose any such petition so long as the relief requested does not modify or otherwise prejudice such Targeted Party's rights under this Agreement.

## 4 Dismissal and Discontinuance of Proceedings; Unreleased Claims

4.1 Within ten (10) Business Days of completion of all obligations set forth in Clause 3, counsel for the Prosecuting Parties shall:

(a) forward to counsel for the Targeted Parties duly executed joint stipulations of dismissal in the form annexed hereto as Part A to Schedule 7 dismissing the Adversary Proceedings without prejudice (subject to Clause 3.1(h)), which shall thereafter be promptly executed by the respective counsel for the Targeted Parties and filed with the Court; and

(b) effectuate a discontinuance of all actions (including all discovery) against the Non-Markus Targeted Parties in the VPB US Proceedings and the US Bankruptcy Proceedings without prejudice (subject to Clause 3.1(h)) by filing a proposed order of discontinuance in the form annexed hereto as Part B to Schedule 7. Notwithstanding the foregoing, it is expressly understood by the Parties that Bykov and the Protax Entities shall no longer be deemed to serve as an agent for Markus, the LM Entities, and/or LARMAR in said proceedings following the Approval of this Agreement other than to the extent set forth in this Agreement and/or the Services Agreement and as necessary to effectuate the terms thereof. As such, no pleadings, discovery requests, or other documents in these proceedings addressed to Markus, the LM Entities, and/or LARMAR shall be served on Bykov or the Protax Entities. Markus, LARMAR and the LM Entities (other than the Included LM Entities) agree and confirm that, with effect from the date of this Agreement, Mr. Yevgeny Tsyngauz, Esq., shall act as their

process agent for service of all complaints, pleadings and other papers in relation to the VPB US Proceedings and the US Bankruptcy Proceedings, including the Applicable Appeals (unless and until a different agent is duly appointed for any of them).

4.2    For the avoidance of doubt, nothing in this Agreement is meant to affect the US Bankruptcy Proceedings or the VPB US Proceedings with respect to:

(a)    Claims against third parties (which shall expressly exclude the Targeted Parties and their Respective Agents);

(b)    the sanctions imposed by the US Bankruptcy Court against Mr. Victor Worms in the US Bankruptcy Proceedings; or

(c)    Unreleased Claims.

4.3    If after the date that the releases set forth in Clause 3.2 become effective pursuant to the first paragraph of Clause 3.2, any Prosecuting Party intends to bring a Claim in any jurisdiction against any Non-Markus Targeted Party or its Respective Agents on the basis that such Claim falls within the scope of limb (d) of the definition of "Unreleased Claim" in Clause 1.1, it shall first give written notice of its intent to bring such Claim to the Non-Markus Targeted Party and/or its Respective Agent (or their respective legal counsel if they are known to the Prosecuting Party to be represented by legal counsel) to whom such Claim relates, whereupon the relevant Parties (and their relevant Respective Agents, if any) shall use reasonable efforts to confer in good faith to resolve the matter for a period of not less than ten Business Days following delivery of such notice.  Notwithstanding anything in the preceding sentence to the contrary, nothing in this Clause 4.3 shall be construed to prevent any Prosecuting Party from bringing a Claim at any time (i) in rem; (ii) to conserve, preserve or freeze any property, asset, or right therein (including to enjoin any alienation of such property, asset or right therein); or (iii) as reasonably necessary to prevent any loss of the right to bring such Claim (such as in circumstances where a statute of limitation or repose will expire).

4.4    For the avoidance of doubt, nothing in Clause 4.3 shall be construed to impair the right of any Party to contest any Claim or to seek any appropriate relief (including injunctive relief and/or damages) on the basis that such Claim is not an Unreleased Claim but instead has been released and fully and finally settled pursuant to Clause 3.2.

## 5    Acknowledgements, Undertakings and Covenants of the Parties

5.1    The Targeted Parties understand that Rozhkov may from time to time want or need to appoint, with the consent of the Russian Bankruptcy Court, any suitable person as his agent (an **Appointed Agent**) for the purpose of acting as interim nominee holder and/or manager of Markus Assets outside the US or, with the consent of the US Bankruptcy Court, within the US. The Targeted Parties agree that they will not without good cause oppose a petition by Rozhkov to the Russian Bankruptcy Court or the US Bankruptcy Court for consent from time to time to appoint such an Appointed Agent. The Prosecuting Parties understand that Bykov may from time to time want or need to appoint Avenir or any other person or entity to act as his agent. The Prosecuting Parties agree that they will not without good cause oppose a petition by Bykov to appoint such an agent.

5.2    Each of the Parties agrees that it will:

(a)    work together in good faith with the other Parties to ensure the efficient performance of this Agreement and will seek and use its best efforts to obtain whatever necessary

consents the US Bankruptcy Court, Russian Bankruptcy Court, and/or any other Court may require to permit or ensure such performance;

(b)    without prejudice to Clause 3.5.14(a), be responsible for its own respective legal fees in enforcing this Agreement and will not seek the recovery of legal fees from any other Party save (where permitted by Applicable Law) in connection with any Unreleased Claim;

(c)    not challenge, hinder, prevent, delay or impede (or permit any other person to do so) the settlement as described in Clause 3 or any aspect thereof, including any of the transactions comprised or contemplated therein; and

(d)    not challenge or dispute the validity or enforceability of this Agreement or any term hereof on any grounds whatsoever (but without prejudice to their rights to enforce the terms of this Agreement).

5.3    Subject to Clause 3.5 above, the respective Parties agree to work in good faith to ensure the efficient and expeditious sale of the Properties and will not do (or cause to be done) anything (including by inaction) which would or might materially depreciate, jeopardise or otherwise prejudice or materially diminish the value of the Properties.

5.4    Each Targeted Party respectively undertakes to the Prosecuting Parties that it will not, and will cause its Respective Agents not to, take any of the following actions:

(a)    assert any Claim or assess any Liability against any Property or any Included LM Entity or the LM Trust (without prejudice to Claims by an Included LM Entity in respect of a Property owned by it);

(b)    claim payment or seek to recover any sum from any Included LM Entity or the LM Trust whether directly or by set off, lien, counterclaim, reimbursement, subrogation, contribution or otherwise;

(c)    prove or accept any payment in any scheme or arrangement or composition with, or any assignment for the benefit of, any Included LM Entity's or the LM Trust's creditors or any winding-up of any Included LM Entity or the LM Trust or from any encumbrancer in possession of, or any trustee, receiver, administrator, administrative receiver, liquidator or other officer or insolvency practitioner appointed in respect of any part of the Included LM Entity's or the LM Trust's business or assets; or

(d)    without prejudice to Bykov's obligation to cause the dissolution of Included LM Entities in accordance with Clause 3.7.1, agree not to commence or otherwise participate in any other insolvency or other similar proceedings involving any Included LM Entity unless the same is necessary to protect its respective rights under this Agreement.

5.5    Each Party shall exercise the rights and powers available to it respectively in such manner as could reasonably be expected to prevent, and shall not exercise those rights and powers in any manner which could reasonably be expected to result in, a breach of its respective obligations under this Agreement.

**6       Representations and Warranties**

6.1    Save as expressly indicated otherwise below, (i) BG Atlantic, as to itself only; and (ii) each Targeted Party other than BG Atlantic (as to the Targeted Parties other than BG Atlantic)

represents and warrants to each Prosecuting Party that each of the following statements is true and accurate and not misleading:

(a)     (in respect of each Targeted Party that is not a natural person) it is duly organised and in good standing under the laws of its jurisdiction of incorporation;

(b)     it has the right, power and authority (and in respect of each Targeted Party that is not a natural person, has taken all corporate action necessary), to execute (including where applicable by the person purporting to sign this Agreement on its behalf), deliver and exercise its rights, and perform its obligations, under this Agreement;

(c)     it has received all authorizations and all consents, licenses, waivers, or exemptions, and has given all notices, required by Applicable Law or the usual practice of any Governmental Authority or (in respect of each Targeted Party that is not a natural person) its constitutional documents in order to enter into and perform its obligations under this Agreement;

(d)     upon execution and delivery of this Agreement by all Parties hereto, this Agreement shall constitute valid and binding obligations of each of the Targeted Parties respectively, which are enforceable in accordance with their terms;

(e)     compliance with the terms of this Agreement shall not breach or constitute a default under (i) any agreement or instrument to which any Targeted Party respectively is a party or by which any Targeted Party is bound; or (ii) any order, judgment, decree or other restriction applicable to any Targeted Party;

(f)     other than Markus, no Targeted Party is insolvent or unable to pay its debts within the meaning of the insolvency legislation applicable to it, nor has it stopped paying its debts as they fall due, nor (in respect of each Targeted Party that is not a natural person) has any process been instituted which could lead to it being dissolved and its assets being distributed among its creditors, shareholders or other contributors; provided, that the warranty in this Clause 6.1(f) is made subject to the disclosure of certain debts and liabilities of certain Targeted Parties as set out in the Schedules to this Agreement, and accordingly no Targeted Party shall be deemed to have breached the warranty set out in this Clause 6.1(f) in respect of any such debts or liabilities insofar as fairly disclosed in such Schedules;

(g)     the information set out in Schedule 2 and Schedule 3 is true and accurate (warranted and represented only by Markus, Bykov, the Protax Entities and the respective LM Entity to which such information pertains);

(h)     other than with respect to the proceedings in relation to the Mortgage Liens as set out in Schedule 3 and the counterclaims asserted against 23H LLC in the 23H Civil Proceedings, there are no known actions, suits, arbitrations, hearings, inquiries, proceedings, complaints, charges or investigations pending or threatened against any Property or Included LM Entities (warranted and represented only by Markus, Bykov, and the Protax Entities);

(i)     save as alleged in the Adversary Complaint or as set out in Schedule 2: (i) LARMAR and each of its predecessors in title acquired its entire equity interests in the Included LM Entities in all material respects in compliance with Applicable Law, and (ii) to the knowledge of each of the Targeted Parties, (a) there are no grounds for challenging the validity of any of transactions by which LARMAR or any predecessor in title acquired such equity interests, and (b) neither LARMAR nor any predecessor in title

has any outstanding liability to any person in connection with those transactions (warranted and represented only by LARMAR, Markus, Bykov, and the Protax Entities);

(j)     no Included LM Entity has any liability (including any contingent liability) of any amount whatsoever to any other Targeted Party or such other Targeted Party's Respective Agents other than attorneys' fees for which Bykov and the Protax Entities shall be jointly and severally liable as set forth in Clause 3.5.13 (warranted and represented only (i) by Markus, Bykov, the Protax Entities; (ii) by BG Atlantic as if the warranty in this paragraph (j) were immediately preceded by the words "as far as BG Atlantic is aware"; and (iii) by each Included LM Entity as to itself only);

(k)     each Included LM Entity has in all material aspects maintained all records and primary supporting documents required to be maintained under applicable law to substantiate the transactions to which it is a party (warranted and represented only (i) by Markus, Bykov, and the Protax Entities; and (ii) by each Included LM Entity as to itself only);

(l)     other than with respect to the proceedings in relation to the Mortgage Liens as set out in Schedule 3 and the counterclaims asserted against 23H LLC in the 23H Civil Proceedings, there are no known actions, suits, arbitrations, hearings, inquiries, proceedings, complaints, charges or investigations pending against any Property or Included LM Entity (warranted and represented only (i) by Markus, Bykov, and the Protax Entities; and (ii) by each Included LM Entity as to itself only);

(m)     all Taxes payable by any Included LM Entity for the period of 1 January 2013 until the date of this Agreement have been fully and timely paid; and other than Tax resulting directly from the disposition of any Property pursuant to Clause 3.6, no Included LM Entity will have a liability for Tax prior to settlement of its Liabilities in the course of its liquidation pursuant to Clause 3.7.1 that is in excess of $1,000 (warranted and represented only (i) by Markus, Bykov, and the Protax Entities; and (ii) by each Included LM Entity as to itself only);

(n)     each Included LM Entity has timely and completely filed all Tax returns, all notices in respect of Taxes and duties were issued and all assessments of Taxes which are to be self-assessed have been duly made.  All information which any Included LM Entity has provided to any Tax authority was and is complete and accurate (warranted and represented only (i) by Markus, Bykov, and the Protax Entities; and (ii) by each Included LM Entity as to itself only);

(o)     no Included LM Entity is involved in any dispute with any Tax authority, and no Tax authority is investigating or has indicated in writing that it intends to investigate such Included LM Entity's Tax affairs (warranted and represented only (i) by Markus, Bykov, and the Protax Entities; and (ii) by each Included LM Entity as to itself only);

(p)     no Included LM Entity has been a party to any transaction, scheme or arrangement (i) in the immediately preceding 24 months which was not in the ordinary course of business, or (ii) at any time which included any step which, served no purpose other than the saving or avoidance of Tax (warranted and represented only (i) by Markus, Bykov, the Protax Entities; and (ii) by each Included LM Entity as to itself only);

(q)     there is no Encumbrance over, and no person has any right or claim in respect of, any part of the 20A Net Sale Proceeds or the 24C Net Sale Proceeds, including as a result of any claim in respect of the Excluded LM Entities or the Former Properties,

other than a judgment by BG Atlantic (which it hereby irrevocably waives), the Property & Closing Expenses incurred to date, and which might appear on a title report (warranted and represented only (i) by Markus, Bykov and the Protax Entities, except in respect of the waiver of such judgment by BG Atlantic; and (ii) by BG Atlantic as to the waiver of such judgment by it; and other than in respect of that waiver, by BG Atlantic as if if the warranty in this paragraph (q) were immediately preceded by the words "as far as BG Atlantic is aware");

(r)     since its formation, the business of each Included LM Entity has been to hold the corresponding Property (as indicated in Schedule 3) and the business of each other LM Entity has been to hold a single apartment (each) in the City of New York; and no LM Entity has made an election to be taxed as a corporation (including an S corporation) (warranted and represented only by Markus, Bykov, the Protax Entities, and the respective LM Entity as pertains to it);

(s)     subsequent to February 2019, no Targeted Party or any other person has drawn any part of the cash surrender value of (or other disbursable amounts under) either policy no. ▆▆▆▆▆▆ issued by Lincoln Benefit Life to or for the benefit of Markus on or about 10 June 2011 or policy no. ▆▆▆▆▆▆ issued by Accordia Life & Annuity Company to or for the benefit of Markus on or about 16 June 2011;

(t)     neither Markus nor any of her Close Relatives or Affiliates directly or indirectly received any of the proceeds from any disposition of any of the real properties located in Latvia that are identified in Part A of Schedule 1 (warranted and represented (i) by Markus, Bykov and the Protax Entities; and (ii) by BG Atlantic as if if the warranty in this paragraph (t) were immediately preceded by the words "as far as BG Atlantic is aware");

(u)     no Targeted Party (other than Markus or the Included LM Entities) has ownership, custody or Control of (i) any of the Disclosed Assets that are not Covered Assets; or (ii) of any Markus Assets that are not Disclosed Assets;

(v)     no Included LM Entity has issued any power of attorney that is still in effect or pursuant to which the attorney-in-fact designated therein has any outstanding claims against such Included LM Entity (warranted and represented (i) by Markus, Bykov, and the Protax Entities; (ii) by BG Atlantic as if if the warranty in this paragraph (v) were immediately preceded by the words "as far as BG Atlantic is aware"; and (iii) by each Included LM Entity as to itself only); and

(w)     Other than the US Bankruptcy Proceedings, the VPB US Proceedings and the Adversary Proceedings (and also, with respect to Markus and her Respective Agents only, the Russian Insolvency Proceedings, the VPB Russian Proceedings and the UK Proceedings), as well as any other legal proceedings commenced after the date of this Agreement in accordance with Clause 3.2.2:

    (i)     there are no legal proceedings by the Targeted Parties against the Prosecuting Parties or against the following attorneys and law practices that have represented the Prosecuting Parties and/or their Respective Agents: Marks & Sokolov, Dentons and any and all employees of said lawyers or law practices and, in the case of law firm entities, any partner, shareholder, member, and/or employee of such law firm entity; and

    (ii)     there are no other legal proceedings by the Targeted Parties and/or their Respective Agents against the Prosecuting Parties and/or their Respective

Agents of any Prosecuting Party, other than with respect to Unreleased Claims,

provided further, that the representations and warranties made above in this Clause 6.1 by Bykov other than in respect of himself, the ProTax Entities and/or the LM Entities, shall, to the extent not already qualified by reference to his knowledge or awareness, each read and construed as if they were immediately preceded by the words "as far as Bykov is aware".

6.2     Each of the Prosecuting Parties (or as indicated below, the relevant Prosecuting Party) represents and warrants as follows:

(a)     (warranted by DIA only) it is duly organised and in good standing under the laws of its jurisdiction of incorporation;

(b)     it (he) has the right, power and authority, to execute, deliver and exercise its (his) rights, and perform its obligations, under this Agreement;

(c)     it (he) has received all authorizations and all consents, licenses, waivers, or exemptions required by Applicable Law or the usual practice of any Governmental Authority in order to enter into and perform its (his) obligations under this Agreement;

(d)     (warranted by Rozhkov only) he has been duly appointed as the trustee of Markus in the Russian Insolvency Proceeding;

(e)     (warranted by DIA only) it has been duly appointed as the trustee of Vneshprombank in the VPB Russian Proceeding;

(f)     the person executing this Agreement on behalf of DIA, represent that (s)he has the authority to sign this Agreement on behalf of such entity;

(g)     upon execution and delivery of this Agreement by all Parties hereto, this Agreement shall constitute valid and binding obligations of each of Prosecuting Parties respectively, which are enforceable in accordance with their terms;

(h)     compliance with the terms of this Agreement shall not breach or constitute a default under (i) any agreement or instrument to which any Prosecuting Party respectively is a party or by which any Prosecuting Party is bound; or (ii) any order, judgment, decree or other restriction applicable to any Prosecuting Party;

(i)     other than the US Bankruptcy Proceedings, the VPB US Proceedings and the Adversary Proceedings (and also, with respect to Markus and her Respective Agents only, the Russian Insolvency Proceedings, the VPB Russian Proceedings and the UK Proceedings), as well as any other legal proceedings commenced after the date of this Agreement in accordance with Clause 3.2.2:

(i)     there are no legal proceedings by the Prosecuting Parties against the Targeted Parties and/or against the following attorneys and/or law practices that have represented the Targeted Parties and/or their Respective Agents: Marlen Kruhkov, Esq., Kruzhkov Russo PLLC, Law Offices of Marlen Kruzhkov, P.L.L.C., Daniel A. Singer, Esq., The Law Offices of Daniel A. Singer PLLC, Gregory Plotko, Esq., Richards Kibbe & Orbe LLP, Rosenberg & Estis, P.C., Victor A. Worms, Esq., and any and all employees of said lawyers or law practices and, in the case of law firm entities, any partner, shareholder, member, and/or employee of such law firm entity; and

      (ii)      there are no other legal proceedings by the Prosecuting Parties and/or their Respective Agents against the Targeted Parties and/or their Respective Agents of any Targeted Party, other than with respect to Unreleased Claims.

(j)      as the trustee of Vneshprombank in the VPB Russian Proceeding and the foreign representative of Vneshprombank in the VPB US Proceedings, DIA has the sole power to bring claims and resolve claims regarding Vneshprombank and has the capacity and authority to bind Vneshprombank to the terms of this Agreement and by entering into this Agreement DIA so binds Vneshprombank to the terms thereof;

(k)      except for the engagement by Rozhkov of Avenir pursuant to the Services Agreement (including the payment obligations of Rozhkov thereunder), it is not a requirement that the Russian Bankruptcy Court approve this Agreement, the Services Agreement, and/or any component thereof in order for this Agreement or the Services Agreement to be binding on the Parties thereto in accordance with the terms thereof

6.3      Subject to Clause 6.4 below, each Targeted Party covenants (jointly and severally as to the Targeted Parties other than BG Atlantic; severally as to BG Atlantic) with the Prosecuting Parties to pay to the Prosecuting Parties on demand such amounts as are equal to, and to indemnify the Prosecuting Parties and keep them indemnified on an after-Tax basis (if Tax is payable by a Prosecuting Party on any amount received by it under this indemnity) from and against, any Losses which that Prosecuting Party incurs or suffers arising out of or as a consequence of or by reference to any of the representations and warranties made by the Targeted Parties in Clause 6.1 being untrue, inaccurate or misleading when made.

6.4      The Non-Markus Targeted Parties jointly and severally covenant with the Prosecuting Parties to pay to the Prosecuting Parties on demand such amounts as are equal to, and to indemnify the Prosecuting Parties and keep them indemnified on an after-Tax basis (if Tax is payable by a Prosecuting Party on any amount received by it under this indemnity) from and against, any Losses which that Prosecuting Party incurs or suffers arising out of or as a consequence of or by reference to any of the representations and warranties set out in Clause 3.4 being untrue, inaccurate or misleading when made.

6.5      Each Party shall be deemed to repeat the representations and warranties given by it in this Clause 6 (and also, with respect to the Non-Markus Targeted Parties, in Clause 3.4) as of:

(a)      the date of the submission of this Agreement for approval by the US Bankruptcy Court;

(b)      the date when the Approval is granted; and

(c)      the Release Effective Date,

provided, that if a Party becomes aware after the date of this Agreement of any fact, matter or circumstance that would render any of the representations and warranties to be repeated on any date by it as set forth above (other than the representations and warranties set forth in paragraphs (a) through (f) of Clause 6.1, (a) through (g) of Clause 6.2) false, inaccurate or misleading when repeated, and such fact, matter or circumstance (i) was not known by and ought not reasonably to have been known by such Party as of the date when such Party last gave such representation and warranty; and (ii) did not arise as a result of any deliberate action or inaction by such Party (other than an action taken or inaction that occurred in accordance with this Agreement), then such Party shall promptly upon becoming aware of such fact, matter or circumstance make a written disclosure of the same to the Parties to whom such representation and warranty is to be (or has been) repeated; and such disclosure

shall, if and to the extent that it is sufficient in detail to allow the Parties to whom it is made to identify the nature and scope of the matter disclosed and its likely impact on the Parties' rights, obligations and benefits under this Agreement, qualify such representation and warranty as repeated and on any later date when it is to be repeated (but not, for the avoidance of doubt, when it was first made or on any other date when it was repeated after the warranting Party became aware of such fact, matter or circumstance, but before it made such written disclosure).

6.6    If the US Bankruptcy Court requires that Bykov provide a certification that, save as otherwise provided in this Agreement, he will be responsible for any debt of LARMAR and the LM Entities, Bykov shall provide such a certification. If so required by the US Bankruptcy Court, Bykov shall provide a certified list of such debts.

## 7    Confidentiality

### 7.1    No announcements without agreement

Save as required by law or with the prior written consent of the Prosecuting Parties (such consent not to be unreasonably withheld or delayed) no Targeted Party shall make any statement or announcement of any nature relating to the subject matter of or to the transactions referred to in this Agreement.

### 7.2    Confidentiality obligations

(a)    Subject to Clause 7.2(b), each Party shall at all times to keep confidential the terms of this Agreement and shall keep confidential and not use (other than for the benefit of the Business) any confidential information which it has acquired from any other Party as part of this Agreement, save for any information:

    (i)    which is publicly available or becomes publicly available otherwise than as a result of a breach of this Clause 7.2;

    (ii)    which is disclosed to such Party by a third party which did not acquire the information under an obligation of confidentiality;

    (iii)    which is required to be disclosed in connection with the Russian Insolvency Proceedings, the VPB Russian Proceedings, the US Bankruptcy Proceedings, the Adversary Proceedings, the VPB US Proceedings or any other legal proceedings under this Agreement; or

    (iv)    which is required to be disclosed by Applicable Law, provided that to the extent permitted by Applicable Law the Party required to make such disclosure shall first inform the other Parties.

(b)    The Parties shall submit this Agreement to the US Bankruptcy Court under provisional seal for the US Bankruptcy Court's review, and shall jointly petition the US Bankruptcy Court to keep this Agreement (or as much of its contents as the US Bankruptcy Court will allow) under seal.  If this Agreement is required to be publicly filed then, without prejudice to Clause 7.1, it will no longer be confidential. If a portion of the Agreement is required to publicly filed then the remaining portions of the Agreement shall remain confidential.

(c)    No Party shall use any confidential information acquired in relation to another Party pursuant to the performance of this Agreement for any purpose other than to carry

out the transactions contemplated by this Agreement, without the prior consent in writing of that Party.

(d)     In the instance that this Agreement and/or any of its contents must be produced as a result of a legal order or because of a subpoena, the receiving Party shall notify the other Parties by email promptly upon receipt of same.  Under no circumstances shall the receiving Party be required to take any action to prevent disclosure of the same and absent an order obtained by any other Party preventing such disclosure, such disclosure will occur.

## 7.3    Duration of confidentiality obligations

The obligations in this Clause shall continue to apply after termination of this Agreement and after any Party has ceased to be party to this Agreement without limit in time.

## 8    Relationship between the Parties

8.1    Save as expressly provided herein, nothing in this Agreement, and no action taken under this Agreement, shall create a partnership or establish a relationship of principal and agent between any of the Parties or (save as otherwise stated herein) otherwise authorise any Party to bind any other Party for any purpose.

8.2    No Targeted Party shall have any right to claim for contribution against any Included LM Entity or the LM Trust in connection with any Liability of any Targeted Party under this Agreement.

## 9    Entire Agreement and Severance

### 9.1    Entire agreement

This Agreement together with the documents referred to in it sets out the entire agreement between the Parties, and supersedes any previous agreement between them, in relation to the subject matter of this Agreement.

### 9.2    Severance

If any provision of this Agreement or any part thereof is rendered void, illegal or unenforceable in any respect (whether against all or only some of the Parties), the validity, legality and enforceability of the remaining provisions (and such aforesaid provision against the other Parties) shall not in any way be affected or impaired thereby.

## 10    Amendments

This Agreement may not be changed, altered, amended, varied, waived, or terminated without the written consent of the Parties.  However, a variation or waiver made in writing by fewer than all the Parties shall be effective as to those Parties (unless such variation or waiver is expressly stated to be conditioned on or becoming effective upon consent being given by all the Parties); provided that no obligation or liability any other Party shall arise or be increased thereby.  For the avoidance of doubt, the written consent of a Party that is not a natural person shall not be required in the event that such Party has been duly liquidated or dissolved in accordance with this Agreement.

**11      Assignment**

11.1    No Targeted Party may assign its rights or purport to assign, transfer or novate its obligations under this Agreement without the written consent of the Prosecuting Parties.

11.2    Rozhkov may assign his rights and obligations under this Agreement to any successor trustee in the Russian Insolvency Proceedings and/or successor foreign representative of Markus in the US Bankruptcy Proceedings and DIA may assign its rights and obligations under this Agreement to any successor trustee in VPB Russian Proceedings and VPB US Proceedings. For the avoidance of any doubt, any such assignee or transferee will continue to be obligated to perform all the duties, rights, and responsibilities which Rozhkov or DIA (as applicable) under this Agreement. With respect to any assignment by DIA, such assignment shall not impact Vneshprombank having been bound to the terms of this Agreement based on DIA's execution thereof.

**12      Remedies and Waivers**

12.1    **No waiver or discharge**

No default by any Party in the performance of or compliance with any provision of this Agreement shall be waived or discharged except with the express written consent of the Party or Parties that are intended to benefit from such performance or have relevant rights under such provision.  A waiver by a Party of a default by another Party in one instance will not prevent the first Party from subsequently requiring compliance with the waived obligation in any other instance.

12.2    **Saving for future waivers**

No waiver by any Party of any default by another Party in the performance of or compliance with any of the provisions of this Agreement shall operate or be construed as a waiver of any other or further default whether of a like or different character.

12.3    **Failure to exercise not a waiver**

No failure to exercise, nor delay or omission by any Party in exercising, any right, power or remedy conferred on it under this Agreement or provided by law shall:

(a)      affect that right, power or remedy; or

(b)      operate as a waiver of it.

No single or partial exercise by any Party of any right, power or remedy shall prevent any further exercise of that right, power or remedy or the exercise of any other right, power or remedy.

12.4    **Rights and remedies cumulative**

The rights, powers and remedies conferred on the Parties by this Agreement are cumulative and not exclusive of any rights, powers and remedies provided by law or otherwise.

12.5    **Right to specific performance**

Each Party acknowledges that damages would not be an adequate remedy for any breach of the undertakings by that Party contained in this Agreement and that the other Parties shall be

entitled (in addition to damages) to the remedies of injunction, specific performance and other equitable remedy for any threatened or actual breach of any such undertakings.

## 13    Third party rights

Save for Clause 3.2 which is intended to benefit and shall be enforceable by each of the persons identified therein, the Parties do not intend that any term of this Agreement shall benefit or be enforceable by any person who is not a party to this Agreement.  The Parties may rescind, vary, waive, release, assign, novate or otherwise dispose of all or any of their respective rights or obligations under this Agreement without the consent of any person who is not a party to this Agreement.

## 14    Costs

Save as expressly provided otherwise by this Agreement, each Party shall pay its own costs relating to the negotiation, preparation, execution and performance of the terms set forth in this Agreement.

## 15    Counterparts

This Agreement may be executed in any number of counterparts, each of which when executed and delivered constitutes an original of this Agreement, but all the counterparts shall together constitute one and the same agreement.  No counterpart shall be effective until each Party has executed at least one counterpart.

## 16    Notices

### 16.1    Service

Any notice or other communication to be given by one Party to the other Party under, or in connection with, this Agreement shall be in writing and signed by or on behalf of the Party giving it and shall be made by email (sent simultaneously to the email addresses set forth for such receiving party applicable pursuant to Clause 16.3). If desired, the Party giving the notice may (and shall, in the event it receives an automated message of delivery failure as described in Clause 16.2) also do so by personal delivery or express courier delivery (such as FedEx or DHL).

### 16.2    Receipt

Any such notice or other communication shall be addressed as provided in Clause 16.3 and, if so addressed, shall be deemed to have been duly given or made at the time that the email is delivered to the recipient's email server (and provided that such server does not return an automated message that delivery has failed). In the instance that an automated message of delivery failure is received, then such notice or other communication shall be deemed to have been given (a) in the case of personal delivery, at the time of personal delivery or (b) in the case of express courier delivery, at the time the express courier delivery service records the notice of other communication as having been delivered, provided, however, in each case that if the notice would thereby be deemed to have been duly made or given on a day that is not a Business Day or after 5:30 p.m. (local time of the addressee) on a Business Day, such notice shall instead be deemed to have been given or made at 9:30 a.m. (local time of the recipient) on the next successive Business Day.

16.3    **Addresses**

Subject to Clause 16.4, the addresses and email addresses of the Parties for the purpose of this Clause 16 are as set out in the preamble to this Agreement.

16.4    **Change of addresses**

A Party or its respective counsel may notify another Party or its respective counsel to this Agreement of a change to its name, relevant addressee, address or email address for the purposes of this Clause 16 provided that such notification shall only be effective on:

(a)    the date specified in the notification as the date on which the change is to take place; or

(b)    if no date is specified as the date on which the change is to take place or the date specified is less than 5 (five) Business Days after the date on which notice is given, the date falling 5 (five) Business Days after notice of any such change has been given.

**17    Governing Law and Jurisdiction**

17.1    **Governing law**

This Agreement (including any contractual or non-contractual dispute or claim arising out of it) shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of laws provisions.

17.2    **Jurisdiction**

Each Party irrevocably agrees that exclusive jurisdiction for the resolution of any disputes arising out of this agreement is in the US Bankruptcy Court for the Southern District of New York and to hear and decide any suit, action or proceedings (**Proceedings**) that may arise out of or in connection with such dispute, for these purposes, each Party irrevocably submits to the jurisdiction of the US Bankruptcy Court for the Southern District of New York.

17.3    **Service agent**

17.3.1    The Parties irrevocably appoint the following persons to be their respective agents for the receipt of any pleadings, submissions, applications, notices, orders or judgments or other documents relating to any Proceedings initiated pursuant to Clause 17.2 or otherwise in connection with such Proceedings (in this Clause 17.3, **Service Documents**):

(a)    Bykov and the Protax Entities irrevocably appoints Mr. Daniel A. Singer, Esq. as its agent, and

(b)    Markus, LARMAR, the LM Entities, and BG Atlantic irrevocably appoint Mr. Yevgeny Tsyngauz, Esq. of Tsyngauz & Associates, 894 Sixth Avenue, 3d floor, New York, NY 10001, USA, as their agent provided that such appointment shall cease with respect to (i) each Included LM Entity upon the date of transfer of control of it to Rozhkov pursuant to Clause 3.5.1; and (ii) the LM Trust upon the Release Effective Date.

Each Prosecuting Party shall notify the Targeted Parties within 30 days of the date of this Agreement of the identity and address (within the Borough of Manhattan) of the person appointed as their agent for purposes of this Clause 17.3.  Not later than five (5) Business Days after the Approval, Rozhkov shall notify the other parties of the identity and address

(within the Borough of Manhattan) of the person appointed as the agent of the Included LM Entities for purposes of this Clause 17.3, and in the interim, such agent shall be Rozhkov's Counsel.

17.3.2  Each Party agrees that Service Documents may be effectively served on it in connection with Proceedings in New York by service on its agent effected in any manner permitted by the New York Code.

17.3.3  Each Party agrees that failure by the agent to notify the relevant Party of the process will not invalidate the Proceedings concerned.

17.3.4  If an agent does not accept its appointment pursuant to Clause 17.3.1 or at any time ceases for any reason to act as agent for any Party, such Party shall immediately (and in any event within ten (10) Business Days of such event taking place) appoint a replacement agent having an address for service in the borough of Manhattan of the City of New York and shall notify the other Parties of the name and address of the replacement agent. The provisions of this Clause 17.3 applying to service on an agent apply equally to service on a replacement agent.

17.3.5  Until the affected Party notifies the other Parties of a change in its agent or in the address of its agent, any Party may effectively serve any Service Document on the affected Party by service to the last known agent at the last known address notified to that Party by the affected Party notwithstanding that such agent is no longer found at such address or has ceased to act.

**17.4    Cure and Delay in Performance**

17.4.1  The Parties acknowledge that this Agreement has been agreed and executed during the global pandemic of the coronavirus SARS-CoV-2 and the illness it causes, COVID-19 (in this Clause 17.4, the **Pandemic**) and that for so long as the Pandemic is continuing in New York City and any other relevant place, this may complicate or delay the timely performance of certain actions to be done under this Agreement.  If and to the extent that it is impractical to perform any action required to be done under this Agreement within the time provided herein (such as if a court is not open during its usual hours to receive non-emergency filings), the time allowed hereunder to perform such action shall be deemed to have been extended accordingly. The Parties agree to work in good faith to minimize and mitigate any such delays. A Party shall notify the other Parties that performance of obligations under this Agreement will be extended based on this Clause 17.4 due to the Pandemic. Such a notice should be served on the Parties as soon as the Party becomes aware that it will be impractical to perform any of its actions within the time period set out in this Agreement.

17.4.2  The Parties acknowledge that this Agreement has emerged out of a long process of negotiation and that all Parties desire that the subject matter of this Agreement be brought to a rapid conclusion pursuant to the terms set forth in this Agreement. Consistent with the foregoing, the Parties understand that circumstances beyond their respective control might arise which would prevent fulfilling obligations set forth in this Agreement by the deadlines stated in this Agreement notwithstanding the best efforts of the relevant Party or Parties to meet such deadline. In the event that a Party believes that, despite its best efforts, a particular deadline cannot be met, it shall promptly notify the relevant Party or Parties of that fact.  If such a notice has been duly given, the Parties agree that the relevant Parties shall proceed as follows:

(a)      they shall make a good faith effort to resolve the matter by attempting to agree to an amount of additional time for the performance of such obligation;

(b)     if no such agreement can be reached to extend the deadline for performance, despite such good faith effort, then the Party claiming such breach shall serve a notice to cure not less than ten (10) Business Days prior to seeking judicial intervention with respect to such matter.

17.4.3   The Parties agree that a Party's failure to fulfil an obligation under this Agreement by the specified deadline shall not be deemed to be a material breach of this Agreement by such Party that would permit a non-breaching Party to terminate this Agreement. Notwithstanding the foregoing, nothing shall prevent the non-breaching party from seeking a judicial remedy to address such a breach.

## 18     Language

This Agreement is executed in the English language. All notices, demands, requests, statements, certificates or other documents or communications shall be in English unless otherwise agreed by the Parties.  Any translation of this Agreement into the Russian or any other language shall be for informational purposes only.  In the event of any discrepancies between the English text and the Russian or any other text of this Agreement or any dispute regarding the interpretation of any provision in such texts, the English text of this Agreement shall prevail and questions of interpretation shall be addressed solely in the English language.

**Executed** and delivered on the date appearing at the beginning of this Agreement.

## Schedule 1 – Markus Asset Disclosure List[1]

**A. LIST OF KNOWN PROPERTIES[2]**

| USA |
| --- |
| 10 West End Ave, Apt. 27D, New York, NY 10023 |
| 18 West 48th Str., Apt 26A, New York, NY 10036 |
| 10 West End Ave, Apt. 31B, New York, NY 10023 |
| 10 West End Ave, Apt. 31C, New York, NY 10023 |
| 50 Riverside Blvd. Apt 10C, New York, NY 10069 |
| 40 Broad Str, Apt. 23H, New York, NY 10004 |
| 40 Broad Str, Apt. 24C, New York, NY 10004 |
| 40 Broad Str, Apt. 20A, New York, NY 10004 |
| **FRANCE** |
| 3, rue de Boccador 75008 Paris (cadastral ref. AO 44, lots 8, 39 and 42) |
| 51-55 ave Montaigne 75008 Paris (cadastral ref. AQ 58, lots 78, 180 and 181 (vol. 1)) |
| 11 ave Montaigne 75008 Paris (cadastral ref. AO 50, lots 35, 61 and 81) |
| 10B rue de Marignan (parking lot) (cadastral ref. AQ 58, lot 2030 (vol.2)) |
| 26 Ave Foch, Paris (cadastral ref. FA 108, lots 1 and 66) |
| **UK** |
| 19 Albert Court, Prince Consort Rd, London |
| Ashburton House, 7 Rutland Gardens, London |
| 25 De Vere Gardens, Flat 7, London |
| **LATVIA** |
| Vidus prospekts 54 – 1G, Jurmala, LV – 2010 |
| Elizabetes 3 – 23, Riga, LV – 1010 |
| Elizabetes 3 – 21, Riga, LV – 1010 |
| Elizabetes 3 – 4, Riga, LV – 1010 |
| Dzintaru prospekts 64 – 26, Jurmala |
| Dzintaru prospekts 64 – 16 Jurmala |
| Dzintaru prospekts 64 -4, Jurmala |

| Dzinatru prospekts 64 – 3, Jurmala |
| Dzintaru prospekts 47, Jurmala |
| Brivibas gatve 257-14, Riga |
| Brivibas gatve 257-1, Riga |
| Dzintaru prospekts 64-15, Jurmala |
| Dzintaru prospekts 64-601,Jurmala |

## B. OTHER KNOWN ASSETS[3]

| Lincoln Benefit Life Insurance | USA | $31,718.84 surrender value |
|---|---|---|
| Art collection | Brigitte Saby warehouse. Cheneu 5-7 boulevard Ney, 75018 Paris (was located there in or about 2018; uncertain as to current location) | Approx. $1,500,000 |
| Marble collection | Porto (Portugal) at Real Marbres. Rua Sargento alvez n° 113. 4935076 Parque viana do castelo (was located there in or about 2018; uncertain as to current location) | Approx. $400,000 |
| Furnishing of the apartment at 7 Rutlan Gardens, London | Cadogan Tate Residential. Cadogan House. 239 Acton Lane, London NW10 7NP | Approx. $33,000 after deduction of money owed to warehouse that is storing the furniture |
| Accordia Life & Annuity Company | USA | The surrender value of policy no. ▮▮▮▮▮▮ as of 06/19/2020 is $0.00. |

## C. LIST OF KNOWN ASSETS FOR EACH LM ENTITY, LARMAR, AND BG ATLANTIC[4]

| **LM Realty 27D LLC** | 10 West End Ave, Apt. 27D, New York, NY 10023 |
|---|---|
| | All shares, membership interests, and/or other ownership interests in LM Realty 18 West LLC |
| **LM Realty 18 West LLC** | 18 West 48th Str., Apt 26A, New York, NY 10036 |
| | Appartment furnishing (disposed of during sale) |
| | All shares, membership interests, and/or ownership interests in LM Realty 18 West LLC |

| | |
|---|---|
| **First Integrated Construction Inc** | All shares, membership interests, and/or other ownership interests in LM Realty 18 West LLC |
| **Innovative Constructions Group Inc.** | 5% of membership interest in LM Realty 31B LLC, LM Property Management LLC, LM Realty 24C LLC, LM Realty 23H LLC, LM Realty 20A LLC, LM Realty 27D LLC |
| | All shares and/or other ownerhsip interests in Innovative Construction Group Inc. |
| **Larisa Markus Revocable Trust** | All ownership interest in the Larisa Markus Revocable Trust |
| **LM Realty 31B LLC** | 10 West End Ave, Apt. 31B, New York, NY 10023 |
| | All shares, membership interests, and/or other ownerhip interest in LM Realty 31B LLC |
| **LM Property Management LLC** | 10 West End Ave, Apt. 31C, New York, NY 10023 |
| | All shares, membership interests, and/or other ownership interests in LM Property Management LLC |
| **LM Realty 10C LLC** | 50 Riverside Blvd. Apt 10C, New York, NY 10069 |
| | All shares, membership interests, and/or other ownership interests in LM Property Management LLC |
| **LM Realty 23H LLC** | 40 Broad Str, Apt. 23H, New York, NY 10004 |
| | All shares, membership interests, and/or other ownership interests in LM Realty 23H LLC |
| **LM Realty 24C LLC** | 40 Broad Str, Apt. 24C, New York, NY 10004 |
| | Apartment furnishing (disposed of prior to foreclosure) |
| | All shares, membership interests, and/or other ownership interests in LM Realty 24C LLC |
| **LM Realty 20A LLC** | 40 Broad Str, Apt. 20A, New York, NY 10004 |
| | All shares, membership interests, and/or other ownership interests in LM Realty 20A LLC |
| **BG Atlantic Inc** | 19 Albert Court, Prince Consort Rd, London |
| | 25 De Vere Gardens, Flat 7, London |
| | Furnishing of the apartment at 7 Rutland Gardens, London |
| **550 Park Avenue LLC** | 1.85% interest in CT Portfolio Debt LLC |
| | All shares, membership interests, and/or other ownership interests in 550 Park Avenue LLC |

| LARMAR Foundation | 95% of membership interests in LM Realty 31B LLC, LM Property Management LLC, LM Realty 24C LLC, LM Realty 23H LLC, LM Realty 20A LLC, and LM Realty 27D LLC |
|---|---|
| | All ownership interest in LARMAR Foundation. |

## D. LEGAL FEES PAID TO THE NON-MARKUS TARGETED PARTIES AND THEIR RESPECTIVE AGENT

All legal fees, costs, and disbursements ("Legal Fees") paid to any attorney or law firm (the "Attorneys") in connection with legal services provided to any Non-Markus Targeted Party and/or its Respective Agents (it being expressly agreed that the presence of this statement on this Markus Asset Disclosure List - and not a disclosure of the amount of such Legal Fees paid - is sufficient to effectuate a release of the Attorneys with respect to same and preclude a clawback of any such Legal Fees regardless of the source used to pay such Legal Fees). For the avoidance of doubt, such release and waiver of any right or claim for clawback applies only to the Attorneys and shall not be construed to preclude Claims against third parties in respect of monies paid to any escrow account or client account maintained by any Attorney and then released by such Attorney to any person other than the Attorney's own account or as payment for any costs or services incurred or obtained in connection with the provision of legal services by such Attorney.

## ENDNOTES TO THE MARKUS ASSET DISCLOSURE LIST

*Other than with respect to Legal Fees paid to Attorneys, nothing contained in these endnotes is meant to expand the scope of the releases contained in this Agreement but are meant purely to clarify what is in fact being released*

[1] Capitalized terms in this Markus Asset Disclosure List shall have the same meaning as in the body of the Agreement unless otherwise excepted.

[2] Save for the proceeds from the sale of the property listed as Ashburton House, 7 Rutland Gardens, London (the "Ashburton Property"), the "Disclosed Assets" include all proceeds relating to the properties listed in the "List of Known Properties" in Section A of the Markus Asset Disclosure List including, without limitation, all proceeds from such properties (including, without limitation, all rental proceeds, all proceeds from any sale of such property, all proceeds from any third party refinancing of such property, and all proceeds from any mortgaging of such property to any third party). Notwithstanding the foregoing, to the extent that the Attorneys (as such term is defined in Section D of the Markus Asset Disclosure List and any subsequent reference to "Attorneys" in these endnotes shall have the same meaning) were paid any Legal Fees (as such term is defined in Section D of the Markus Asset Disclosure List and any subsequent reference to "Legal Fees" shall have the same meaning) from the proceeds of the sale of the Ashburton Property, the Attorneys are released from any Claims with respect to such proceeds and there shall be no clawback from such Attorneys with respect to any Legal Fees which may have been paid from such proceeds. For the avoidance of any doubt, nothing in this endnote 2 or any other endnotes shall be deemed to limit the extent of the release of the Attorneys as set forth in Section D of the Markus Asset Disclosure List and Section 3.2.1 of the Agreement.

[3] The Non-Markus Targeted Parties and their Respective Agents are released from all claims relating to any of the assets set forth in the list of "Other Known Assets" including, without limitation, any and all Claims relating to the sale, lease, rental, disposal, and/or destruction of such assets.

[4] Section C entitled "List of Known Assets for Each LM Entity, LARMAR, and BG Atlantic" lists the real property and (to the extent set forth therein, furnishings in such real property) owned by the respective LM Entities. It also lists the ownership interest in and of the LM Entities, LARMAR, and BG Atlantic (the "Ownership Interests"). With respect to BG Atlantic, 19 Albert Court, Prince Consort Rd, London and 25 De Vere Gardens Flat 7, London are not owned by BG Atlantic but they are listed there because they may be related thereto. Similarly the furnishings in the Ashburton House are not owned by BG Atlantic but rather may be related to BG Atlantic. With respect to the real property, these assets are already listed in Section A of the Markus Asset Disclosure List and these are simply listed again under the respective entity to which it pertains. The Non-Markus Targeted Parties and their Respective Agents are released from all Claims relating to the Ownership Interests and the aforementioned furnishings. The scope of disclosure with respect to each real property (and any furnishings identified in connection therewith) is already set forth in endnote 2 above.

## Schedule 2 – Details of the Included LM Entities

**Part 1   – LM Property Management LLC**

| | |
|---|---|
| Full name: | LM Property Management LLC |
| Date of incorporation: | 24 June 2008 |
| New York Department of State ID Number: | 3688802 |
| Registered office: | 2 Rector St., Suite 1202 |
| | New York, NY  10006, USA |
| Unit (equity) holders: | 95% -- LARMAR |
| | 5% -- Innovative Construction Group, Inc |
| Unit Pledgee: | None |
| Accounting reference date: | December 31st |
| Auditors: | n/a |
| Managers: | Ilya Bykov (sole manager) |
| Other management bodies: | None |

**Part 2   – Particulars of LM Realty 10C LLC**

| | |
|---|---|
| Full name | LM Realty 10C LLC |
| Date of incorporation: | 20 March 2015 |
| New York Department of State ID Number: | 4729584 |
| Registered office: | 2 Rector St., Suite 1202 |
| | New York, NY  10006, USA |
| Unit (equity) holders: | 95% -- LARMAR |
| | 5% -- Innovative Construction Group, Inc |
| Unit Pledgee: | None |
| Accounting reference date: | December 31st |
| Auditors: | n/a |
| Managers: | Ilya Bykov (sole manager) |
| Other management bodies: | None |

**Part 3  – Particulars of LM Realty 23H LLC**

| | |
|---|---|
| Full name | LM Realty 23H LLC |
| Date of incorporation: | 21 June 2010 |
| New York Department of State ID Number: | 3964308 |
| Registered office: | 2 Rector St., Suite 1202 |
| | New York, NY  10006, USA |
| Unit (equity) holders: | 95% -- LARMAR |
| | 5%  --  Innovative  Construction  Group, Inc |
| Unit Pledgee: | None |
| Accounting reference date: | December 31st |
| Auditors: | n/a |
| Managers: | Ilya Bykov (sole manager) |
| Other management bodies: | None |

**Part 4  – Particulars of LM Realty 31B LLC**

| | |
|---|---|
| Full name | LM Realty 31B LLC |
| Date of incorporation: | 27 May 2010 |
| New York Department of State ID Number: | 3955355 |
| Registered office: | 2 Rector St., Suite 1202 |
| | New York, NY  10006, USA |
| Unit (equity) holders: | 95% -- LARMAR |
| | 5%-Innovative Construction Group, Inc |
| Unit Pledgee: | None |
| Accounting reference date: | December 31st |
| Auditors: | n/a |
| Managers: | Ilya Bykov (sole manager) |
| Other management bodies: | None |

## Schedule 3– Information Concerning the Properties

**Part 1   – The 10C Property**

| | |
|---|---|
| Owner: | LM Realty 10C LLC |
| Note holder: | 10WEA Realty LLC |
| As assignee of: | L&M Consulting, Inc. (itself assignee of 50 Riverside Blvd LLC) |
| In default since: | 12/13/2017 |
| Summary of foreclosure proceedings (if any): | Default judgement entered by referee in the amount $3,870,283.04 plus $10,944.50 legal fees as of Nov. 18, 2019 |
| Outstanding principal balance | $3,000,000 |
| Unpaid interest accrued as of 07/08/2020: | $1,176,739.5 |
| Unpaid fees and charges accrued as of 07/08/2020: | none |
| Contact details of responsible loan officer at mortgagee: | Alexander Orsa; phone number: (201) 995-1515 |
| Outstanding Property & Closing Expenses as of 10/14/2020: | 1. $2,612 (common charges) 2. $5,765.48 (real estate taxes) |

**Part 2   — The 23H Property**

| | |
|---|---|
| Owner: | LM Realty 23H LLC |
| Note holder: | Broad Street Acquisition, Inc. |
| As assignee of: | 40 Broad Street Portfolio, LLC |
| In default since: | 02/01/2017 |
| Summary of foreclosure proceedings (if any): | Being foreclosed |
| Outstanding principal balance and unpaid interest accrued as of 07/31/2020: | $405,000.00 |
| Unpaid fees and charges accrued as of the date of this Agreement: | none |
| Contact details of responsible loan officer at mortgagee: | Adam E. Mikolay ADAM E. MIKOLAY, PC 90 Merrick Avenue Suite 501 |

East Meadow, NY  11554
PH 516-222-2050
Fax 516-222-0450
Adam@Mikolaylaw.com

| | |
|---|---|
| Outstanding Property & Closing Expenses as of 10/14/2020: | 1. $32,734.44 (common charges) |
| | 2. $44,420.52 (real estate taxes) |

**Part 3  – The 31B Property**

| | |
|---|---|
| Owner: | LM Realty 31B LLC |
| Note holder: | HSBC Bank |
| As assignee of: | LM Realty 31B, LLC |
| In default since: | 10/01/2017 |
| Summary of foreclosure proceedings (if any): | Foreclosure initiated by HSBC |
| Outstanding principal balance | $884,000 |
| Unpaid interest accrued as of 07/16/2020: | $225,524.72 (total past due) |
| Unpaid fees and charges accrued as of the date of this Agreement: | none |
| Contact details of responsible loan officer at mortgagee: | Stephanie H. Vo<br>Vice President and Senior Legal Counsel | HSBC Bank USA, National Association<br>452 Fifth Avenue, 7th Floor, New York, NY 10018<br>Phone (212) 525-6616<br>Fax (212) 382-5979<br>Email stephanie.h.vo@us.hsbc.com |
| Outstanding Property & Closing Expenses as of 10/14/2020: | 1. $1,853.69 (common charges) |
| | 2. $6,037.81 (real estate taxes) |

**Part 4  – The 31C Property**

| | |
|---|---|
| Owner: | LM Property Management LLC |
| Note holder: | HSBC Bank |
| As assignee of: | LM Property Management LLC |
| In default since: | 10/01/2017 |
| Summary of foreclosure proceedings (if any): | Foreclosure initiaited by HSBC |

| | |
|---|---|
| Outstanding principal balance | $980.000.00 |
| Unpaid interest accrued as of 07/16/2020: | $177,947.56 (total past due) |
| Unpaid fees and charges accrued as of 07/09/2020: | none |
| Contact details of responsible loan officer at mortgagee: | Stephanie H. Vo<br>Vice President and Senior Legal Counsel \| HSBC Bank USA, National Association<br>452 Fifth Avenue, 7th Floor, New York, NY 10018<br>Phone (212) 525-6616<br>Fax (212) 382-5979<br>Email stephanie.h.vo@us.hsbc.com |
| Outstanding Property & Closing Expenses as of 10/14/2020: | $4,576.94 (common charges) |

**Schedule 4 – Form of Appeals Stipulation**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

In re:

   Foreign Economic Industrial Bank Limited,
   "Vneshprombank" Ltd.,

   Debtor in a Foreign Proceeding.

**Case No. 19-10841 (GHW)**

In re:

Larisa Markus,

   Debtor in a Foreign Proceeding.

**Case No. 19-10889 (GHW)**

**STIPULATION OF VOLUNTARY DISMISSAL,
PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE RULE 8023**

Appellants, the LM Entities and Protax Entities[2] (together, "**Appellants**" or

"**LM/Protax Entities**"), Appellee, Yuri Rozhkov ("**Rozhkov**"), in his capacity as the

authorized Trustee, and Appellee Foreign Representative of Larisa Markus, and The State

Corporation "Deposit Insurance Agency" ("**DIA**"), in its capacity as the authorized Trustee

and Foreign Representative of Foreign Economic Industrial Bank Limited "Vneshprombank"

Ltd. (together, "**Appellees**" or "**FRs**") (Appellants and Appellees, collectively, "**Parties**"), by

and through their respective undersigned counsel, hereby stipulate and agree that the appeals,

which are the subject matter of the above-captioned proceedings, are hereby dismissed with

each party bearings its own costs (with no costs being taxed to either party), legal fees,

expenses, and disbursements, pursuant to Federal Rules of Bankruptcy Procedure Rule 8023.

This stipulation ("**Stipulation**") may be signed by the Parties in any number of

counterparts, each of which when so signed shall be an original, but all of which shall

---

[2] The "**LM Entities**" are: LM Realty 31B, LLC; LM Realty 27D, LLC; LM Realty 24C, LLC; LM Realty 23H, LLC;
LM Realty 20A, LLC; LM Realty 18 West, LLC; LM Realty 10C, LLC; LM Property Management LLC; Larisa
Markus Revocable Trust ("LM Trust"); First Integrated Construction, Inc.; Innovative Construction Group, Inc.;
and The Larmar Foundation.

The "**Protax Entities**" are: Protax Services Inc.; Protax Services Consulting, Inc.; and Ilya Bykov.

together constitute one and the same instrument.  A signed electronic copy of this Stipulation

shall be deemed an original.

Dated: __, 2020


_____     _____

Bruce S. Marks, Esquire              Daniel A. Singer, Esquire
MARKS & SOKOLOV, LLC        THE LAW OFFICES OF DANIEL A.
1835 Market Street, 17th Floor      SINGER PLLC
Philadelphia, PA 19103           630 Third Avenue 18th Floor
marks@mslegal.com             New York, New York 10017
(215) 569-8901                 dan@dasingerlaw.com
*Attorneys for Appellees*        (212) 569-7853
                                  *Attorneys for Appellants*

## Schedule 5 – Form of Documents to Transfer Control of Included LM Entities etc.

Part A: Form of Bykov Resignation Letters

**ILYA GERONIM BYKOV**
101 Greenwich Street, Suite 1202
New York, NY 10006


_____

550 Park Avenue LLC
_____
_____

Re:      Resignation as Manager

Dear Sir/Madam:

      Please note that, as of the date of this letter, I hereby resign as the manager of 550 Park Avenue LLC.

      I irrevocably waive all claims that I may have, if any, against 550 Park Avenue LLC.

Very truly yours,


Ilya Geronim Bykov

**ILYA GERONIM BYKOV**
101 Greenwich Street, Suite 1202
New York, NY 10006


_____

LM Property Management LLC
_____
_____

Re:      Resignation as Manager

Dear Sir/Madam:

Please note that, as of the date of this letter, I hereby resign as the manager of LM Property Management LLC.

I irrevocably waive all claims that I may have, if any, against LM Property Management LLC.

Very truly yours,


Ilya Geronim Bykov

**ILYA GERONIM BYKOV**
101 Greenwich Street, Suite 1202
New York, NY 10006

_____

LM Realty 10C, LLC
_____
_____

Re:      Resignation as Manager

Dear Sir/Madam:

Please note that, as of the date of this letter, I hereby resign as the manager of LM Realty 10C, LLC.

I irrevocably waive all claims that I may have, if any, against LM Realty 10C, LLC.

Very truly yours,

Ilya Geronim Bykov

60

**ILYA GERONIM BYKOV**
101 Greenwich Street, Suite 1202
New York, NY 10006

_____

LM Realty 23H, LLC

_____
_____

Re:      Resignation as Manager

Dear Sir/Madam:

Please note that, as of the date of this letter, I hereby resign as the manager of LM Realty 23H, LLC.

I irrevocably waive all claims that I may have, if any, against LM Realty 23H, LLC.

Very truly yours,

Ilya Geronim Bykov

**ILYA GERONIM BYKOV**
101 Greenwich Street, Suite 1202
New York, NY 10006


_____

LM Realty 31B, LLC

_____

_____

Re:    Resignation as Manager

Dear Sir/Madam:

Please note that, as of the date of this letter, I hereby resign as the manager of LM Realty 31B, LLC.

I irrevocably waive all claims that I may have, if any, against LM Realty 31B, LLC.

Very truly yours,


Ilya Geronim Bykov

**ILYA GERONIM BYKOV**
101 Greenwich Street, Suite 1202
New York, NY 10006

_____

The Larisa Markus Revocable Trust

_____

_____

Re:      Resignation as Manager

Dear Sir/Madam:

Please note that, as of the date of this letter, I hereby resign as the manager of The Larisa Markus Revocable Trust.

I irrevocably waive all claims that I may have, if any, against The Larisa Markus Revocable Trust.

Very truly yours,

Ilya Geronim Bykov

63

Part B: Form of Transfer Instruments for Included LM Entities

## ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**        Transferring Member        **Date:**  _____
Innovative Construction Group, Inc.

Transferee
Yuri Vladimirovich Rozhkov

### RECITALS:

A.      Innovative Construction Group, Inc., a corporation formed under the laws of the State of New York and having its registered address at 2 Rector Street, Suite 1202, New York, NY 10005, (the "Transferring Member"), is a member of LM Property Management LLC, a limited liability company organized under the laws of the State of New York, (the "Company").

B.      The Transferring Member owns 5%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company executed heretofore, (the "Operating Agreement").

### AGREEMENTS:

**1.**      **ASSIGNMENT**

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

**2.**      **ACCEPTANCE**

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

**3.**      **PURCHASE PRICE**

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Transferring Member.

**4.**      **TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES**

The Transferring Member represents and warrants to the Transferee that:

i.      The Transferring Member is the sole owner of the Membership Interest;

      ii.      The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.

      iii.     The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

## 5.    SURVIVAL OF REPRESENTATIONS AND WARRANTIES

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

## 6.    MISCELLANEOUS PROVISIONS

**6.1    Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

**6.2    Governing Law.** This assignment will be governed by the laws of the State of New York.

**6.3    Entire Agreement.**  This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

**6.4    Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.

**Transferring Member**                                    **Transferee**

Innovative Construction Group, Inc.


_____                    _____

By:                                                                      Yuri Vladimirovich Rozhkov

## ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST

**FOR VALUE RECEIVED**, Innovative Construction Group, Inc., a corporation formed under the laws of the State of New York and having its registered address at 2 Rector Street, Suite 1202, New York, NY 10005, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in LM Property Management LLC represented by the certificate number ___, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of LM Property Management LLC.

Dated:         _____

Innovative Construction Group, Inc.


_____

By:

## ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**      Transferring Member                    **Date:**  _____
                 LARMAR Foundation

                 Transferee
                 Yuri Vladimirovich Rozhkov

### RECITALS:

A.      LARMAR Foundation, a private foundation duly recorded at Filing Card FP-30959, Documents 1417508, of the Private Foundation Section of the Public Registry Office of the Republic of Panama and having its registered address at Panama Legal, 50 Street, Global Bank Tower, 18th Floor, Office 18-20, Panama, (the "Transferring Member"), is a member of LM Property Management LLC, a limited liability company organized under the laws of the State of New York, (the "Company").

B.      The Transferring Member owns 95%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company executed heretofore, (the "Operating Agreement").

### AGREEMENTS:

**1.      ASSIGNMENT**

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

**2.      ACCEPTANCE**

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

**3.      PURCHASE PRICE**

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Transferring Member.

**4.      TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES**

The Transferring Member represents and warrants to the Transferee that:

i.      The Transferring Member is the sole owner of the Membership Interest;
ii.     The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.

iii.    The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

**5.    SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

**6.    MISCELLANEOUS PROVISIONS**

**6.1    Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

**6.2    Governing Law.** This assignment will be governed by the laws of the State of New York.

**6.3    Entire Agreement.**  This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

**6.4    Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.

**Transferring Member**              **Transferee**

LARMAR Foundation


_____       _____

By: Ilya Geronim Bykov, Protector       Yuri Vladimirovich Rozhkov

### ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST

**FOR VALUE RECEIVED**, LARMAR Foundation, a private foundation duly recorded at Filing Card FP-30959, Documents 1417508, of the Private Foundation Section of the Public Registry Office of the Republic of Panama and having its registered address at _____, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in LM Property Management LLC represented by the certificate number ___, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of LM Property Management LLC.

Dated:       _____

LARMAR Foundation


_____
By: Ilya Geronim Bykov, Protector

## ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**   Transferring Member    **Date:** _____
       Innovative Construction Group, Inc.

       Transferee
       Yuri Vladimirovich Rozhkov

### RECITALS:

A.  Innovative Construction Group, Inc., a corporation formed under the laws of the State of New York and having its registered address at 2 Rector Street, Suite 1202, New York, NY 10005, (the "Transferring Member"), is a member of LM Realty 10C, LLC, a limited liability company organized under the laws of the State of New York, (the "Company").

B.  The Transferring Member owns 5%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company executed heretofore, (the "Operating Agreement").

### AGREEMENTS:

**1.  ASSIGNMENT**

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

**2.  ACCEPTANCE**

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

**3.  PURCHASE PRICE**

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Transferring Member.

**4.  TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES**

The Transferring Member represents and warrants to the Transferee that:

i.  The Transferring Member is the sole owner of the Membership Interest;
ii.  The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.
iii.  The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

5.      **SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

6.      **MISCELLANEOUS PROVISIONS**

6.1      **Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

6.2      **Governing Law.** This assignment will be governed by the laws of the State of New York.

6.3      **Entire Agreement.**  This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

6.4      **Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.

**Transferring Member**                                      **Transferee**

Innovative Construction Group, Inc.


_____                    _____
By:                                                                          Yuri Vladimirovich Rozhkov

71

## ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST

**FOR VALUE RECEIVED**, Innovative Construction Group, Inc., a corporation formed under the laws of the State of New York and having its registered address at 2 Rector Street, Suite 1202, New York, NY 10005, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in LM Realty 10C, LLC represented by the certificate number ___, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of LM Realty 10C, LLC.

Dated:        _____

Innovative Construction Group, Inc.


_____

By:

## ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**       Transferring Member       **Date:**   _____
LARMAR Foundation

Transferee
Yuri Vladimirovich Rozhkov

### RECITALS:

A.      LARMAR Foundation, a private foundation duly recorded at Filing Card FP-30959, Documents 1417508, of the Private Foundation Section of the Public Registry Office of the Republic of Panama and having its registered address at Panama Legal, 50 Street, Global Bank Tower, 18th Floor, Office 18-20, Panama, (the "Transferring Member"), is a member of LM Realty 10C, LLC, a limited liability company organized under the laws of the State of New York, (the "Company").

B.      The Transferring Member owns 95%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company executed heretofore, (the "Operating Agreement").

### AGREEMENTS:

**1.      ASSIGNMENT**

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

**2.      ACCEPTANCE**

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

**3.      PURCHASE PRICE**

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Transferring Member.

**4.      TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES**

The Transferring Member represents and warrants to the Transferee that:

i.      The Transferring Member is the sole owner of the Membership Interest;
ii.      The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.

iii.    The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

**5.      SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

**6.      MISCELLANEOUS PROVISIONS**

**6.1      Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

**6.2      Governing Law.** This assignment will be governed by the laws of the State of New York.

**6.3      Entire Agreement.**  This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

**6.4      Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.

**Transferring Member**                                 **Transferee**

LARMAR Foundation


_____                     _____

By: Ilya Geronim Bykov, Protector                   Yuri Vladimirovich Rozhkov

## ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST

**FOR VALUE RECEIVED**, LARMAR Foundation, a private foundation duly recorded at Filing Card FP-30959, Documents 1417508, of the Private Foundation Section of the Public Registry Office of the Republic of Panama and having its registered address at _____, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in LM Realty 10C, LLC represented by the certificate number ___, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of LM Realty 10C, LLC.

Dated: _____

LARMAR Foundation


_____
By: Ilya Geronim Bykov, Protector

## ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**        Transferring Member        **Date:**  _____
Innovative Construction Group, Inc.

Transferee
Yuri Vladimirovich Rozhkov

### RECITALS:

A.      Innovative Construction Group, Inc., a corporation formed under the laws of the State of New York and having its registered address at 2 Rector Street, Suite 1202, New York, NY 10005, (the "Transferring Member"), is a member of LM Realty 23H, LLC, a limited liability company organized under the laws of the State of New York, (the "Company").

B.      The Transferring Member owns 5%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company executed heretofore, (the "Operating Agreement").

### AGREEMENTS:

### 1.    ASSIGNMENT

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

### 2.    ACCEPTANCE

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

### 3.    PURCHASE PRICE

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Transferring Member.

### 4.    TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES

The Transferring Member represents and warrants to the Transferee that:

i.     The Transferring Member is the sole owner of the Membership Interest;
ii.    The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.
iii.   The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

5.    **SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

6.    **MISCELLANEOUS PROVISIONS**

6.1    **Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

6.2    **Governing Law.** This assignment will be governed by the laws of the State of New York.

6.3    **Entire Agreement.**  This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

6.4    **Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.

**Transferring Member**                              **Transferee**

Innovative Construction Group, Inc.


_____                    _____

By:                                                     Yuri Vladimirovich Rozhkov

## ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST

     **FOR VALUE RECEIVED**, Innovative Construction Group, Inc., a corporation formed under the laws of the State of New York and having its registered address at 2 Rector Street, Suite 1202, New York, NY 10005, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in LM Realty 23H, LLC represented by the certificate number ___, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of LM Realty 23H, LLC.

Dated:      _____

Innovative Construction Group, Inc.


_____

By:

## ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**          Transferring Member          **Date:**  _____
                     LARMAR Foundation

                     Transferee
                     Yuri Vladimirovich Rozhkov

### RECITALS:

A.      LARMAR Foundation, a private foundation duly recorded at Filing Card FP-30959, Documents 1417508, of the Private Foundation Section of the Public Registry Office of the Republic of Panama and having its registered address at Panama Legal, 50 Street, Global Bank Tower, 18th Floor, Office 18-20, Panama, (the "Transferring Member"), is a member of LM Realty 23H, LLC, a limited liability company organized under the laws of the State of New York, (the "Company").

B.      The Transferring Member owns 95%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company executed heretofore, (the "Operating Agreement").

### AGREEMENTS:

**1.      ASSIGNMENT**

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

**2.      ACCEPTANCE**

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

**3.      PURCHASE PRICE**

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Transferring Member.

**4.      TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES**

The Transferring Member represents and warrants to the Transferee that:

i.       The Transferring Member is the sole owner of the Membership Interest;
ii.      The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.
iii.     The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

**5.**     **SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

**6.**     **MISCELLANEOUS PROVISIONS**

**6.1**     **Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

**6.2**     **Governing Law.** This assignment will be governed by the laws of the State of New York.

**6.3**     **Entire Agreement.**  This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

**6.4**     **Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.


**Transferring Member**                  **Transferee**

LARMAR Foundation


_____        _____

By: Ilya Geronim Bykov, Protector        Yuri Vladimirovich Rozhkov

**ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST**

     **FOR VALUE RECEIVED**, LARMAR Foundation, a private foundation duly recorded at Filing Card FP-30959, Documents 1417508, of the Private Foundation Section of the Public Registry Office of the Republic of Panama and having its registered address at _____, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in LM Realty 23H, LLC represented by the certificate number ___, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of LM Realty 23H, LLC.

Dated: _____

LARMAR Foundation

_____
By: Ilya Geronim Bykov, Protector

## ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**         Transferring Member              Date:  _____
                    Innovative Construction Group, Inc.

                    Transferee
                    Yuri Vladimirovich Rozhkov

### RECITALS:

A.      Innovative Construction Group, Inc., a corporation formed under the laws of the State of New York and having its registered address at 2 Rector Street, Suite 1202, New York, NY 10005, (the "Transferring Member"), is a member of LM Realty 31B, LLC, a limited liability company organized under the laws of the State of New York, (the "Company").

B.      The Transferring Member owns 5%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company executed heretofore, (the "Operating Agreement").

### AGREEMENTS:

**1.      ASSIGNMENT**

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

**2.      ACCEPTANCE**

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

**3.      PURCHASE PRICE**

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Transferring Member.

**4.      TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES**

The Transferring Member represents and warrants to the Transferee that:

i.      The Transferring Member is the sole owner of the Membership Interest;
ii.     The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.
iii.    The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

### 5. SURVIVAL OF REPRESENTATIONS AND WARRANTIES

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

### 6. MISCELLANEOUS PROVISIONS

**6.1 Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

**6.2 Governing Law.** This assignment will be governed by the laws of the State of New York.

**6.3 Entire Agreement.** This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

**6.4 Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.

**Transferring Member**                                    **Transferee**

Innovative Construction Group, Inc.


_____                    _____

By:                                                                          Yuri Vladimirovich Rozhkov

## **ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST**

**FOR VALUE RECEIVED**, Innovative Construction Group, Inc., a corporation formed under the laws of the State of New York and having its registered address at 2 Rector Street, Suite 1202, New York, NY 10005, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in LM Realty 31B, LLC represented by the certificate number ___, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of LM Realty 31B, LLC.

Dated:        _____

Innovative Construction Group, Inc.


_____

By:

## ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**     Transferring Member          **Date:** _____
                LARMAR Foundation

                Transferee
                Yuri Vladimirovich Rozhkov

### RECITALS:

A.     LARMAR Foundation, a private foundation duly recorded at Filing Card FP-30959, Documents 1417508, of the Private Foundation Section of the Public Registry Office of the Republic of Panama and having its registered address at Panama Legal, 50 Street, Global Bank Tower, 18th Floor, Office 18-20, Panama, (the "Transferring Member"), is a member of LM Realty 31B, LLC, a limited liability company organized under the laws of the State of New York, (the "Company").

B.     The Transferring Member owns 95%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company executed heretofore, (the "Operating Agreement").

### AGREEMENTS:

**1.     ASSIGNMENT**

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

**2.     ACCEPTANCE**

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

**3.     PURCHASE PRICE**

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Transferring Member.

**4.     TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES**

The Transferring Member represents and warrants to the Transferee that:

i.     The Transferring Member is the sole owner of the Membership Interest;
ii.     The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.
iii.     The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

**5.      SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

**6.      MISCELLANEOUS PROVISIONS**

**6.1      Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

**6.2      Governing Law.** This assignment will be governed by the laws of the State of New York.

**6.3      Entire Agreement.**  This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

**6.4      Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.

**Transferring Member**                                    **Transferee**

LARMAR Foundation

_____               _____

By: Ilya Geronim Bykov, Protector                    Yuri Vladimirovich Rozhkov

## ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST

**FOR VALUE RECEIVED**, LARMAR Foundation, a private foundation duly recorded at Filing Card FP-30959, Documents 1417508, of the Private Foundation Section of the Public Registry Office of the Republic of Panama and having its registered address at _____, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in LM Realty 31B, LLC represented by the certificate number ___, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of LM Realty 31B, LLC.

Dated:        _____

LARMAR Foundation


_____
By: Ilya Geronim Bykov, Protector

Part C: Form of Transfer Instrument for 550 Park Avenue LLC

### ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**        Transferring Member        **Date:**  _____
Larisa Ivanovna Markus

Transferee
Yuri Vladimirovich Rozhkov

### RECITALS:

A.      Larisa Ivanovna Markus, having her registered address at 26 Zoologicheskaya Street, Bld. 1, Apt. 24, Moscow, Russian Federation, (the "Transferring Member"), is the sole member of 550 Park Avenue LLC, a limited liability company organized under the laws of the State of Delaware, (the "Company").

B.      The Transferring Member owns 100%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company entered into the 20th day of June, 2013, (the "Operating Agreement").

### AGREEMENTS:

**1.**      **ASSIGNMENT**

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

**2.**      **ACCEPTANCE**

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

**3.**      **PURCHASE PRICE**

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Transferring Member.

**4.**      **TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES**

The Transferring Member represents and warrants to the Transferee that:

i.      The Transferring Member is the sole owner of the Membership Interest;
ii.     The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.

    iii.    The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

**5.**    **SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

**6.**    **MISCELLANEOUS PROVISIONS**

**6.1**    **Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

**6.2**    **Governing Law.** This assignment will be governed by the laws of the State of Delaware.

**6.3**    **Entire Agreement.**  This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

**6.4**    **Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.

**Transferring Member**               **Transferee**


_____           _____

Larisa Ivanovna Markus                   Yuri Vladimirovich Rozhkov

## ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST

**FOR VALUE RECEIVED**, Larisa Ivanovna Markus, having her registered address at 26 Zoologicheskaya Street, Bld. 1, Apt. 24, Moscow, Russian Federation, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in 550 Park Avenue LLC represented by the certificate number ___, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of 550 Park Avenue LLC.

Dated:          _____

_____
Larisa Ivanovna Markus

Part D: Form of Transfer Instrument for CT Portfolio Debt LLC

## ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

**Parties:**          Transferring Member                    **Date:**  _____
                     550 Park Avenue LLC

                     Transferee
                     Yuri Vladimirovich Rozhkov

### RECITALS:

A.      550 Park Avenue LLC, a limited liability company organized under the laws of the State of Delaware and having its registered address at _____, (the "Transferring Member"), is a member of CT Portfolio Debt LLC, a limited liability company organized under the laws of the State of New York, (the "Company").

B.      The Transferring Member owns 1.85%, (the "Membership Interest"), in the Company under the terms of the operating agreement of the Company executed heretofore, (the "Operating Agreement").

### AGREEMENTS:

**1.      ASSIGNMENT**

By signing this assignment, the Transferring Member hereby transfers, assigns and conveys unto the Transferee all of Transferring Member's right, title and interest in and to the Membership Interest, to have and hold said Membership Interest, together with all rights and appurtenances thereto, including, without limitation, all of Transferring Member's rights, if any, solely with respect to the Membership Interest, to receive and share in the Company's: (a) income, gain, profits, losses, deductions, and credits as per the Operating Agreement; (b) capital contributions, and (c) distributions as per the Operating Agreement.

**2.      ACCEPTANCE**

By signing this assignment, the Transferee hereby accepts the assignment and transfer of the Membership Interest in the Company and agrees to be bound by all of the terms and provisions of the Operating Agreement as if the Transferee were named as a party to the Operating Agreement.

**3.      PURCHASE PRICE**

The purchase price for the Membership Interest is $1.00 and other good and valuable consideration.

**4.      TRANSFERRING MEMBER'S REPRESENTATIONS AND WARRANTIES**

The Transferring Member represents and warrants to the Transferee that:

i.       The Transferring Member is the sole owner of the Membership Interest;
ii.      The Membership Interest is free and clear of any and all liens or encumbrances, and the Transferring Member will defend the same against all claims and demands of all persons.
iii.     The Membership has a good right to assign and transfer the Membership Interest upon the Transferee.

5.      **SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All warranties and representations made in this assignment will survive the closing of the transfer of the Membership Interest upon the Transferee.

6.      **MISCELLANEOUS PROVISIONS**

6.1     **Binding Effect.** The provisions of this assignment are binding upon and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties.

6.2     **Governing Law.** This assignment will be governed by the laws of the State of New York.

6.3     **Entire Agreement.**   This assignment constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this assignment will be binding unless executed in writing by all parties.

6.4     **Authority.** Each individual executing this assignment on behalf of an entity warrants that he or she is authorized to do so and that this assignment constitutes the legally binding obligation of the entity that the individual represents.

**Transferring Member**                          **Transferee**

550 Park Avenue LLC


_____                    _____
By:                                            Yuri Vladimirovich Rozhkov


**CONSENT**

TBSG LLC hereby consents to the assignment and transfer of the Membership Interest upon the Transferee.

TBSG LLC


_____
By:

## ASSIGNMENT OF CERTIFICATE OF MEMBERSHIP INTEREST

**FOR VALUE RECEIVED**, 550 Park Avenue LLC, a limited liability company organized under the laws of the State of Delaware and having its registered address at _____ and having its registered address at _____, hereby assigns and transfers unto Yuri Vladimirovich Rozhkov all of its membership interest in CT Portfolio Debt LLC represented by the certificate number ____, and does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer the said membership interest on the books of CT Portfolio Debt LLC.

Dated: _____

550 Park Avenue LLC

_____

By:

## Schedule 6 – Form of Consent to Change of Counsel

Part A: Form of Consent to Change of Counsel for 20A Foreclosure Proceedings

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| 40 BROAD STREET PORTFOLIO, LLC, | |
| Plaintiff, | Index No.: **850252/2017** |
| - against - | |
| LM REALTY 20A, LLC, Board of Managers of The Setai Condominium Residences at 40 Broad Street, and New York State Department of Taxation and Finance, | **CONSENT TO CHANGE ATTORNEYS_____** |
| Defendants. | |

**IT IS HEREBY CONSENTED** that [____INCOMING ATTORNEY____] be

substituted as attorneys of record for DEFENDANT LM REALTY 20A, LLC in the above-

captioned action in place and instead of THE LAW OFFICES OF DANIEL A. SINGER

PLLC, 630 Third Avenue, 18th Floor, New York, New York 10017, as of the date hereof.

This consent may be executed in counterparts and a facsimile and/or electronic copy shall be

deemed an original.

Dated:  New York, New York
          __, 2020

                                        **LM REALTY 20A, LLC**


                                        By:_____
                                             Name: ILYA BYKOV
                                             Title: Manager



                                        **INCOMING ATTORNEY**:


                                        _____
                                        Name:
                                        Law Firm:
                                        Address:
                                        Email:
                                        Phone:
                                        *Incoming Attorney*
                                        *for Defendant LM Realty 20A, LLC*

94

**OUTGOING ATTORNEY**:

_____

Daniel A. Singer, Esquire
THE LAW OFFICES OF DANIEL A.
SINGER PLLC
630 Third Avenue 18th Floor
New York, New York 10017
dan@dasingerlaw.com
(212) 569-7853
*Outgoing Attorney*
*for Defendant LM Realty 20A, LLC*


                                      )ss.:

COUNTY OF _____        )



On the _____ day of _____ _____, in the year 2020, before me, the
undersigned, personally appeared ILYA BYKOV, who, being by me duly sworn, is
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument, did depose and say that he is
the Manager of LM REALTY 20A, LLC, the entity described in and which executed the
above instrument; and that he signed his name thereto by authority and in his capacity; and
acknowledged that by his signature on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.



   (Signature, seal and office of person taking acknowledgment.)

Part B: Form of Consent to Change of Counsel for 24C Foreclosure Proceedings

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

40 BROAD STREET PORTFOLIO, LLC,

                                        Plaintiff,               Index No.: **850254/2017**

          - against -

LM REALTY 24C, LLC, Board of Managers of The Setai          **CONSENT TO CHANGE**
Condominium Residences at 40 Broad Street, and New          **ATTORNEYS_____**
York State Department of Taxation and Finance,
                                        Defendants.

      **IT IS HEREBY CONSENTED** that [_____INCOMING ATTORNEY_____] be

substituted as attorneys of record for DEFENDANT LM REALTY 24C, LLC in the above-

captioned action in place and instead of THE LAW OFFICES OF DANIEL A. SINGER

PLLC, 630 Third Avenue, 18th Floor, New York, New York 10017, as of the date hereof.

This consent may be executed in counterparts and a facsimile and/or electronic copy shall be

deemed an original.

Dated:  New York, New York
      __, 2020

                         **LM REALTY 24C, LLC**


                         By:_____
                             Name: ILYA BYKOV
                             Title: Manager


                         **INCOMING ATTORNEY**:


                         _____
                         Name:
                         Law Firm:
                         Address:
                         Email:
                         Phone:
                         *Incoming Attorney*
                         *for Defendant LM Realty 24C, LLC*

**OUTGOING ATTORNEY**:

_____
Daniel A. Singer, Esquire
THE LAW OFFICES OF DANIEL A.
SINGER PLLC
630 Third Avenue 18th Floor
New York, New York 10017
dan@dasingerlaw.com
(212) 569-7853
*Outgoing Attorney*
*for Defendant LM Realty 24C, LLC*


)ss.:

COUNTY OF _____          )


On the _____ day of _____ _____, in the year 2020, before me, the
undersigned, personally appeared ILYA BYKOV, who, being by me duly sworn, is
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument, did depose and say that he is
the Manager of LM REALTY 24C, LLC, the entity described in and which executed the
above instrument; and that he signed his name thereto by authority and in his capacity; and
acknowledged that by his signature on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.


(Signature, seal and office of person taking acknowledgment.)

Part C: Form of Consent to Change of Counsel for 31B Foreclosure Proceedings

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

HSBC BANK USA, N.A.,

Plaintiff,

- against -

Index No.: **850323/2018**

LM REALTY 31B, LLC, LARISA MARKUS, BIG
ATLANTIC INC., PEOPLE OF THE STATE OF NEW
YORK, NEW YORK CITY DEPARTMENT OF
FINANCE, BOARD OF MANAGERS OF 10 WEST
END AVENUE CONDOMINIUM, JOHN DOE (Those
unknown tenants, occupants, persons, or corporations or
their heirs, distributes, executors, administrators, trustees,
guardians, assignees, creditors or successors, claiming an
interest in the mortgaged premises),

**CONSENT TO CHANGE**
**ATTORNEYS_____**

Defendants.

**IT IS HEREBY CONSENTED** that [_____INCOMING ATTORNEY_____] be

substituted as attorneys of record for DEFENDANT LM REALTY 31B, LLC in the above-

captioned action in place and instead of THE LAW OFFICES OF DANIEL A. SINGER

PLLC, 630 Third Avenue, 18th Floor, New York, New York 10017, as of the date hereof.

This consent may be executed in counterparts and a facsimile and/or electronic copy shall be

deemed an original.

Dated: New York, New York
__, 2020

**LM REALTY 31B, LLC**

By:_____
         Name: ILYA BYKOV
         Title: Manager

**INCOMING ATTORNEY**:

_____
Name:
Law Firm:
Address:
Email:
Phone:
*Incoming Attorney*
*for Defendant LM Realty 31B, LLC*

**<u>OUTGOING ATTORNEY</u>**:


_____
Daniel A. Singer, Esquire
THE LAW OFFICES OF DANIEL A.
SINGER PLLC
630 Third Avenue 18th Floor
New York, New York 10017
dan@dasingerlaw.com
(212) 569-7853
*Outgoing Attorney*
*for Defendant LM Realty 31B, LLC*


)ss.:


COUNTY OF _____        )



On the _____ day of _____ _____, in the year 2020, before me, the
undersigned, personally appeared ILYA BYKOV, who, being by me duly sworn, is
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument, did depose and say that he is
the Manager of LM REALTY 31B, LLC, the entity described in and which executed the
above instrument; and that he signed his name thereto by authority and in his capacity; and
acknowledged that by his signature on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.


  (Signature, seal and office of person taking acknowledgment.)

Part D: Form of Consent to Change of Counsel for 31C Foreclosure Proceedings

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

HSBC BANK USA, N.A.,

Plaintiff,

Index No.: **850078/2019**

- against -

LM PROPERTY MANAGEMENT LLC, PEOPLE OF
THE STATE OF NEW YORK, NEW YORK CITY
DEPARTMENT OF FINANCE, BOARD OF
MANAGERS OF 10 WEST END AVENUE
CONDOMINIUM, JOHN DOE (Those unknown tenants,
occupants, persons, or corporations or their heirs,
distributes, executors, administrators, trustees, guardians,
assignees, creditors or successors, claiming an interest in
the mortgaged premises),

Defendants.

**CONSENT TO CHANGE**
**ATTORNEYS_____**

     **IT IS HEREBY CONSENTED** that [_____INCOMING ATTORNEY_____] be

substituted as attorneys of record for DEFENDANT LM PROPERTY MANAGEMENT LLC

in the above-captioned action in place and instead of THE LAW OFFICES OF DANIEL A.

SINGER PLLC, 630 Third Avenue, 18th Floor, New York, New York 10017, as of the date

hereof.  This consent may be executed in counterparts and a facsimile and/or electronic copy

shall be deemed an original.

Dated: New York, New York
      __, 2020

                       **LM PROPERTY MANAGEMENT**
                       **LLC**

                       By:_____
                           Name: ILYA BYKOV
                           Title: Manager

                       **INCOMING ATTORNEY**:


                       _____
                       Name:
                       Law Firm:
                       Address:
                       Email:
                       Phone:
                       *Incoming Attorney for Defendant LM*
                       *PROPERTY MANAGEMENT LLC*

**<u>OUTGOING ATTORNEY</u>**:

_____
Daniel A. Singer, Esquire
THE LAW OFFICES OF DANIEL A.
SINGER PLLC
630 Third Avenue 18th Floor
New York, New York 10017
dan@dasingerlaw.com
(212) 569-7853
_Outgoing Attorney_
_for Defendant LM PROPERTY_
_MANAGEMENT LLC_



               )ss.:

COUNTY OF _____        )



On the _____ day of _____ _____, in the year 2020, before me, the undersigned, personally appeared ILYA BYKOV, who, being by me duly sworn, is personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, did depose and say that he is the Manager of LM PROPERTY MANAGEMENT LLC, the entity described in and which executed the above instrument; and that he signed his name thereto by authority and in his capacity; and acknowledged that by his signature on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.



   (Signature, seal and office of person taking acknowledgment.)

Part E: Form of Consent to Change of Counsel for 23H Civil Proceedings

## CIVIL COURT OF THE CITY OF NEW YORK
## COUNTY OF NEW YORK

LM REALTY 23H, LLC,

Plaintiff,

Index No.: **3407/2019**

- against -

JEFF HARRINGTON and CAROLYN HARRINGTON,

Defendants.

**CONSENT TO CHANGE
ATTORNEYS**

    **IT IS HEREBY CONSENTED** that [    INCOMING ATTORNEY    ] be substituted as attorneys of record for DEFENDANT LM REALTY 23H, LLC in the above-captioned action in place and instead of THE LAW OFFICES OF DANIEL A. SINGER PLLC, 630 Third Avenue, 18th Floor, New York, New York 10017, as of the date hereof. This consent may be executed in counterparts and a facsimile and/or electronic copy shall be deemed an original.

Dated: New York, New York
    __, 2020

**LM REALTY 23H, LLC**

By:_____
    Name: ILYA BYKOV
    Title: Manager

**INCOMING ATTORNEY**:

_____
Name:
Law Firm:
Address:
Email:
Phone:
*Incoming Attorney for Defendant* LM
REALTY 23H, LLC

**OUTGOING ATTORNEY**:

_____
Daniel A. Singer, Esquire

THE LAW OFFICES OF DANIEL A.
SINGER PLLC
630 Third Avenue 18th Floor
New York, New York 10017
dan@dasingerlaw.com
(212) 569-7853
*Outgoing Attorney*
*for Defendant* LM REALTY 23H, LLC


STATE OF NEW YORK          )
                                             )ss.:
COUNTY OF _____        )


On the _____ day of _____ _____, in the year 2020, before me, the undersigned, personally appeared ILYA BYKOV, who, being by me duly sworn, is personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, did depose and say that he is the Manager of LM REALTY 23H, LLC, the entity described in and which executed the above instrument; and that he signed his name thereto by authority and in his capacity; and acknowledged that by his signature on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


   (Signature, seal and office of person taking acknowledgment.)

## Schedule 7– Form of Stipulations and Proposed Orders

**Part A: Form of Joint Stipulation of Dismissal of Adversary Proceedings**

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>　Foreign Economic Industrial Bank Limited,<br>　"Vneshprombank" Ltd.,<br>　　　Debtor in a Foreign Proceeding. | Chapter 15<br>Case No. **16-13534** (MG) |
| In re:<br>Larisa Markus,<br>　Debtor in a Foreign Proceeding. | Chapter 15<br>Case No. **19-10096** (MG) |
| The State Corporation "Deposit Insurance Agency",<br>　Plaintiff,<br><br>　　　v.<br><br>LARMAR Foundation; Ilya Bykov; BG Atlantic, Inc.; LM Realty 31B, LLC; LM Realty 27D, LLC; LM Realty 24C, LLC; LM Realty 23H, LLC; LM Realty 20A, LLC; LM Realty 18 West, LLC; LM Realty 10C, LLC; LM Property Management LLC; Innovative Construction Group, Inc.; First Integrated Construction, Inc.; and Larisa Markus,<br>　Defendants. | **Adversary Proc. No. 19-01413 (MG)** |
| Yuri Rozhkov,<br>　Plaintiff,<br>v.<br>LARMAR Foundation; Ilya Bykov; BG Atlantic, Inc.; LM Realty 31B, LLC; LM Realty 27D, LLC; LM Realty 24C, LLC; LM Realty 23H, LLC; LM Realty 20A, LLC; LM Realty 18 West, LLC; LM Realty 10C, LLC; LM Property Management LLC; Innovative Construction Group, Inc.; First Integrated Construction, Inc.; and Larisa Markus,<br>　Defendants. | **Adversary Proc. No. 19-01414 (MG)** |

### PROPOSED ORDER OF VOLUNTARY DISMISSAL, WITHOUT PREJUDICE, OF ADVERSARY PROCEEDINGS

Whereas the plaintiffs in the above-captioned adversary proceedings are The State Corporation "Deposit Insurance Agency" ("**DIA**"), in its capacity as the authorized Trustee and Foreign Representative ("***Bank* FR**") of Foreign Economic Industrial Bank Limited "Vneshprombank" Ltd. ("**Bank**") and Yuri Rozhkov, in his capacity as the authorized

Trustee and Foreign Representative ("**_Markus_ FR**") of Larisa Markus ("**Markus**"), (together,

"**Plaintiffs**");

Whereas, defendants LARMAR Foundation; Ilya Bykov; LM Realty 31B, LLC; LM

Realty 27D, LLC; LM Realty 24C, LLC; LM Realty 23H, LLC; LM Realty 20A, LLC; LM

Realty 18 West, LLC; LM Realty 10C, LLC; LM Property Management LLC; Innovative

Construction Group, Inc.; and First Integrated Construction, Inc. (collectively, "**LM/Protax**

**Entity Defendants**") have appeared in the above-captioned adversary proceedings and have

been represented by The Law Offices of Daniel A. Singer PLLC, 630 Third Avenue, 18th

Floor, New York, New York 10017;

Whereas, defendants Larisa Markus ("**Defendant Markus**") and BG Atlantic, Inc.

("**Defendant BG Atlantic**") have not appeared in the in the above-captioned adversary

proceedings and are not represented by counsel in these actions; and

Whereas, none of the Defendants have filed an answer or motion for summary

judgment.

NOW, therefore, pursuant to Federal Rules of Bankruptcy Procedure Rule 7041

(which incorporates Fed. R. Civ. P. 41), the above-captioned adversary proceedings are

dismissed without prejudice, with each party bearing their owns costs (with no costs being

taxed to either party), legal fees, expenses, and disbursements.


SO ORDERED:

_____
MARTIN GLENN,
United States Bankruptcy Judge

**Part B: Form of Proposed Order of Dismissal**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>    Foreign Economic Industrial Bank Limited,<br>    "Vneshprombank" Ltd.,<br>        Debtor in a Foreign Proceeding. | Chapter 15<br>Case No. **16-13534** (MG) |
| In re:<br>Larisa Markus,<br>    Debtor in a Foreign Proceeding. | Chapter 15<br>Case No. **19-10096** (MG) |

### [PROPOSED] ORDER DISMISSING PROCEEDINGS
### AS TO THE LM ENTITIES AND PROTAX ENTITIES WITHOUT PREJUDICE[3]

IT IS HEREBY ORDERED that pursuant to Federal Rules of Bankruptcy Procedure Rule 7041 (which incorporates Fed. R. Civ. P. 41) the above-referenced proceedings are dismissed without prejudice as to the LM Entities and Protax Entities with such dismissal including, without limitation, a dismissal with respect to all discovery obligations, motion practice, and other relief being sought therein as to the LM Entities and Protax Entities, with the LM Entities; Protax Entities; and Foreign Representatives and Trustees[4], each bearing their own costs (with no costs being taxed to the other) legal fees, expenses, and disbursements.

**SO ORDERED**:



MARTIN GLENN
United States Bankruptcy Judge

---

[3] The "**LM Entities**" are: LM Realty 31B, LLC ("**LM 31B**"); LM Realty 27D, LLC ("**LM 27D**"); LM Realty 24C, LLC ("**LM 24C**"); LM Realty 23H, LLC ("**LM 23H**"); LM Realty 20A, LLC ("**LM 20A**"); LM Realty 18 West, LLC ("**LM 18West**"); LM Realty 10C, LLC ("**LM 10C**"); LM Property Management LLC ("**LM Property Management**"); First Integrated Construction, Inc. ("**FIC**"); Innovative Construction Group, Inc. ("**ICG**"); 550 Park Avenue, LLC ("**550 Park**"); Larisa Markus Revocable Trust ("**LM Trust**"); and The Larmar Foundation ("**Larmar**").

The "**Protax Entities**" are: Protax Services Inc.; Protax Services Consulting, Inc.; and Ilya Bykov ("**Bykov**").

[4] The State Corporation "Deposit Insurance Agency" is the authorized Trustee and Foreign Representative of Foreign Economic Industrial Bank Limited "Vneshprombank" Ltd. Yuri Rozhkov is the authorized Trustee and Foreign Representative of Larisa Markus.

Part C: Form of Proposed Order for Transfer of $100,000

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 15 |
| **Foreign Economic Industrial Bank** | |
| **Limited, "Vneshprombank" Ltd.**, | Case No. **16-13534** (MG) |
| Debtor in a Foreign Proceeding. | |

-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 15 |
| **Larisa Markus**, | |
| Debtor in a Foreign Proceeding. | Case No. **19-10096** (MG) |

-------------------------------------------------------------x

## ORDER REGARDING THE RELEASE AND TRANSFER OF CERTAIN FUNDS CURRENTLY BEING HELD IN THE ESCROW ACCOUNT OF THE LAW OFFICES OF DANIEL A. SINGER PLLC

WHEREAS, by order data November 7, 2019 (the "November 7, 2019 Order", case no 19-10096 dkt no. 201; case no. 16-13534 dkt no. 170), Judge Martin Glenn ordered that certain funds being held at Citibank in accounts titled to LM Realty 23H LLC (account ending in 2278); LM Realty 10C LLC (account ending in 4716); LM Realty 20A LLC (account ending in 2868); LM Realty 24C LLC (account ending in 2243); LM Realty 31B LLC (account ending in 0889); LM Property Management LLC (account ending in 6353); 550 Park Avenue LLC (account ending in 1507, hereinafter the "550 Park Avenue Account"); and Prolegal International Inc. (account ending in 3476)(collectively, the "Subject Accounts") be transferred to the escrow account of The Law Offices of Daniel A. Singer PLLC (the "Singer Escrow Account") as Citibank had advised that they were closing the Subject Accounts;

WHEREAS, the amount transferred to the Singer Escrow Account pursuant to the November 7, 2019 Order, totaled $231,730.36 (the "Transfer Amount");

WHEREAS, consistent with the November 7, 2019 Order, the Transfer Amount continues to remain in the Singer Escrow Account;

107

WHEREAS, these actions and the relating adversary proceedings bearing case nos 19-01413 and 19-01414, respectively (the "Subject Adversary Proceedings") have been settled as set forth in the settlement agreement (the "Settlement Agreement") which was approved by this Court on _____ (the "Approved Agreement" *dkt no.*_____);

WHEREAS, the Approved Agreement sets forth how the Transfer is to be distributed;

WHEREAS, pursuant to Clause 3.5.5 (d) of the Approved Agreement, a separate stipulation has been submitted to the Court to be "So Ordered" directing that $78,029.93 of the Transfer Amount- representing the amount in the 550 Park Avenue Account prior to its closure by Citibank- be transferred to what has been termed therein as the Client Account, which is the account titled to_____ at_____ bearing the last 4 digits of_____; and

WHEREAS, Clause 3.5.13(a) of the Settlement Agreement directs how the $153.700.43 balance of the Transfer Amount (the "$153,700.43 Balance") is to be distributed.

IT IS HEREBY ordered as follows:

1. Within ten (10) days of the signing of this order (the "Order"), The Law Offices of Daniel A. Singer PLLC (the "Singer Law Office") shall transfer by wire or other means the $153,700.43 Balance as follows:

   a. $53,700.43 to the Client Account.

   b. _____ shall be transferred from the Singer Escrow Account to the operating account of the Singer Law Office, such amount constituting the amount of outstanding legal fees and disbursements due to be paid to the Singer Law Office pursuant to the Approved Agreement.

   c. The balance of _____ shall be transferred to the account at _____ titled to Protax Services Corp. d/b/a Protax Service Inc. bearing the last 4 digits of_____ and such balance shall be used by Ilya Bykov to

pay legal fees and disbursements pursuant to the terms set forth in the Approved

Agreement.

2.  This Court shall retain jurisdiction over the enforcement of this Order.

**IT IS SO ORDERED.**


Dated: _____, 2020
      New York, New York

                                                    _____
                                                        MARTIN GLENN
                                    United States Bankruptcy Judge

## Schedule 8– Form of Termination Letter

**ILYA GERONIM BYKOV**
101 Greenwich Street, Suite 1202
New York, NY 10006


_____

Larisa Ivanovna Markus
26 Zoologicheskaya Street, Bld. 1, Apt. 24
Moscow, Russian Federation

Re:      Termination of Professional Relationship

Dear Ms. Markus:

I, on my own behalf, and on behalf of Protax Services Corp. d/b/a Protax Services Inc., Protax Services Consulting, Inc. and Prolegal International, Inc. (the "Protax Entities"), would like to inform you that my and Protax Entities' professional relationship with you is terminated as of the date of this letter.

Very truly yours,


Ilya Geronim Bykov

Signature Page to Settlement Agreement

**IN WITNESS WHEREOF** the Parties have executed and delivered this Agreement on the date first
written above.

_____

**Larisa Ivanovna Markus**
Date:

_____

**Ilya Geronim Bykov**
Date:

**LARMAR Foundation**

By:_____
Name:
Title:
Date:

**Larisa Markus Revocable Trust**

By:_____    By: _____
Name: Ilya Geronim Bykov        Name: Larisa Ivanovna Markus
Title: Trustee                  Title: Trustee
Date:                           Date:

**LM Realty 31B, LLC**

By:_____
Name:
Title:
Date:

**LM Realty 27D, LLC**

By:_____
Name:
Title:
Date:

Signature Page to Settlement Agreement

**IN WITNESS WHEREOF** the Parties have executed and delivered this Agreement on the date first written above.

_____
**Larisa Ivanovna Markus**
Date:

_____
**Ilya Geronim Bykov**
Date: 01/05/21

**LARMAR Foundation**
By: _____
Name: ILYA GERONIM BYKOV
Title: PROTECTOR
Date: 01/05/21

**Larisa Markus Revocable Trust**

By: _____                By: _____
Name: Ilya Geronim Bykov                    Name: Larisa Ivanovna Markus
Title: Trustee                              Title: Trustee
Date: 01/05/21                              Date:

**LM Realty 31B, LLC**
By: _____
Name: ILYA GERONIM BYKOV
Title: MANAGER
Date: 01/05/21

**LM Realty 27D, LLC**
By: _____
Name: ILYA GERONIM BYKOV
Title: MANAGER
Date: 01/05/21

Signature Page to Settlement Agreement

**LM Realty 24C, LLC**

By: _____
Name: ILYA GERONIM BYKOV
Title: MANAGER
Date: 01/05/21

**LM Realty 23H, LLC**

By: _____
Name: ILYA GERONIM BYKOV
Title: MANAGER
Date: 01/05/21

**LM Realty 20A, LLC**

By: _____
Name: ILYA GERONIM BYKOV
Title: MANAGER
Date: 01/05/21

**LM Realty 18 West, LLC**

By: _____
Name: ILYA GERONIM BYKOV
Title: MANAGER
Date: 01/05/21

**LM Realty 10C, LLC**

By: _____
Name: ILYA GERONIM BYKOV
Title: MANAGER
Date: 01/05/21

Signature Page to Settlement Agreement

**LM Property Management LLC**

By: _____
Name: ILYA GERONIM BYKOV
Title: MANAGER
Date: 01/05/21

**Innovative Construction Group, Inc.**

By: _____
Name: ILYA GERONIM BYKOV
Title: DIRECTOR
Date: 01/05/21

**First Integrated Construction Group, Inc.**

By: _____
Name: ILYA GERONIM BYKOV
Title: DIRECTOR
Date: 01/05/21

**550 Park Avenue LLC**

By: _____
Name: ILYA GERONIM BYKOV
Title: MANAGER
Date: 01/05/21

**ProTax Services Corp. d/b/a ProTax Services Inc.**

By: _____
Name: ILYA GERONIM BYKOV
Title: PRESIDENT
Date: 01/05/21

## Signature Page to Settlement Agreement

**ProTax Services Consulting Inc.**

By: _____

Name: *ILYA GERONIM BYKOV*

Title: *PRESIDENT*

Date: *01/05/21*


**Prolegal International, Inc.**

By: _____

Name: *ILYA GERONIM BYKOV*

Title: *DIRECTOR*

Date: *01/05/21*


**BG Atlantic, Inc.**

By: _____

Name:

Title:

Date:

**114**

Signature Page to Settlement Agreement

**ProTax Services Consulting Inc.**

By:_____
Name:
Title:
Date:

**Prolegal International, Inc.**

By:_____
Name:
Title:
Date:

**BG Atlantic, Inc.**

By:_____
Name: Ludmila Granit
Title: Director
Date: 12/26/20

## Signature Page to Settlement Agreement

**Yuri Rozhkov** (solely in his capacity as trustee of Larisa Markus, a Debtor in the Russian Insolvency Proceedings)

By:_____ Yuri Vladimirovich Rozhkov

Name:

Title:

**Yuri Rozhkov** (solely in his capacity as foreign representative of Larisa Markus, a Debtor in the US Bankruptcy Proceedings)

By:_____ Yuri Vladimirovich Rozhkov

Name:

Title:

**State Corporation Deposit Insurance Agency** (solely in its capacity as trustee of Vneshprombank, a Debtor in the VPB Russian Proceedings)

By:_____

Name:

Title:

**State Corporation Deposit Insurance Agency** (solely in its capacity as foreign representative of Vneshprombank, a Debtor in the VPB US Proceedings)

By:_____

Name:

Title:

Signature Page to Settlement Agreement

**Yuri Rozhkov** (solely in his capacity as trustee of Larisa Markus, a Debtor in the Russian Insolvency
Proceedings )

By:_____
Name:
Title:

**Yuri Rozhkov** (solely in his capacity as foreign representative of Larisa Markus, a Debtor in the US
Bankruptcy Proceedings )

By:_____
Name:
Title:

**State Corporation Deposit Insurance Agency** (solely in its capacity as trustee of Vneshprombank,
a Debtor in the VPB Russian Proceedings)

By:_____
Name: _Khalizev Alexander Victorovich_
Title: _Authorized Representative of the trustee of Vneshprombank_

**State Corporation Deposit Insurance Agency** (solely in its capacity as foreign representative of
Vneshprombank, a Debtor in the VPB US Proceedings)

By:_____
Name: _Khalizev Alexander Victorovich_
Title: _Authorized Representative of the trustee of Vneshprombank_