# Exhibit C

**Execution version**

# Services Agreement

Dated  *25 December*  2020

Yuri Rozhkov (in his official capacity)
Avenir Realty Inc

# Contents

| | | |
|---|---|---:|
| 1 | Definitions and Interpretation | 2 |
| 2 | Effectiveness of this Agreement | 4 |
| 3 | Services to be Provided | 4 |
| 4 | Service Charges and Payment | 9 |
| 5 | Return of Service Charges | 10 |
| 6 | Representations and Warranties | 10 |
| 7 | Confidentiality | 12 |
| 8 | Relationship Between the Parties | 13 |
| 9 | Entire Agreement and Severance | 13 |
| 10 | Amendments | 13 |
| 11 | Assignment | 13 |
| 12 | Third Party Rights | 14 |
| 13 | Costs | 14 |
| 14 | Effect of Termination | 14 |
| 15 | Notices | 14 |
| 16 | Governing Law and Jurisdiction | 15 |
| 17 | Language | 16 |
| 18 | Counterparts | 16 |

## Services Agreement

Dated *25 December* 2020

**Between**

(1) **YURI VLADIMIROVICH ROZHKOV**, a citizen of the Russian Federation, acting in his capacity as trustee of Markus in the Russian Insolvency Proceedings (as defined below) and in his associated capacity as foreign representative of Markus in the US Bankruptcy Proceedings (as defined below) (**Rozhkov**); and

(2) **AVENIR REALTY INC**, a New York Corporation identified by DOS file # 5794294 with a DOS service address of 101 Greenwich Street, Suite 1202, New York, New York 10006, USA (**Avenir**)

(each a **Party** and together the **Parties**).

**Recitals**

A. Rozhkov has been appointed as the trustee (in Russian: *finansoviy upravlyayuschiy*) of Larisa Ivanovna Markus (**Markus**), a citizen of Russia, in the Russian Insolvency Proceedings (as defined per Clause 1.1.2) and, in that capacity, has been recognized as the "foreign representative" of Markus in the US Bankruptcy Proceedings (as defined below) within the meaning of Section 101(24) of Title 11 of the United States Code (and all references to Rozhkov in this Agreement are to him in such official capacity).

B. Rozhkov is a party to the Settlement Agreement (as defined below), pursuant to which the Targeted Parties (as defined in the Settlement Agreement) shall, *inter alia*, procure the transfer of ownership and control of the Companies (as defined below) to Rozhkov. Certain Companies (as defined below) are the owners of certain condominiums in the Borough of Manhattan in New York City, which are referred to in the Settlement Agreement and herein as the **Properties**.

C. Pursuant to the Settlement Agreement Rozhkov has agreed to appoint Avenir as his agent to assist in the management, marketing and sale of the Properties, and the administration and eventual liquidation of the Companies.

D. The Parties agreed to enter into this Agreement, pursuant to which Avenir will provide certain services as Rozhkov's agent in connection with the management, marketing and sale of the Properties and the administration and eventual liquidation of the Companies, on the terms and conditions set out in this Agreement.

**It is agreed:**

**1   Definitions and Interpretation**

**1.1   Definitions**

1.1.1   In this Agreement the following definitions shall apply:

**Bank Charges** means any bank charges assessed in the ordinary course by any sending bank, correspondent bank or receiving bank involved in the bank transfer of funds constituting a Proceeds Transfer.

**Companies** means:

(a) 550 Park Avenue LLC, a Delaware limited liability company identified by DOS ID# 5354823, with its a principal place of business at 2 Rector Street, Suite 1202, New York, New York 10006, USA;

(b) LM Property Management LLC, a New York limited liability company identified by DOS ID#: 368802, with its principal place of business at 2 Rector Street, Suite 1202, New York, New York 10006, USA;

(c) LM Realty 10C, LLC, a New York limited liability company identified by DOS ID# 4239584, with its principal place of business at 101 Greenwich Street, New York, New York 10006, USA;

(d) LM Realty 23H, LLC, a New York limited liability company identified by DOS ID# 3964308, with its principal place of business at 2 Rector Street, Suite 1202, New York, New York 10006, USA; and

(e) LM Realty 31B, LLC, a New York limited liability company identified by DOS ID#: 3955355, with its principal place of business at 2 Rector Street, Suite 1202, New York, New York 10006, USA.

**Proceeds Transfer** has the meaning given to that term in Clause 4.1.1.

**Property & Closing Expenses** shall mean in respect of any Property: all Taxes payable (including amounts subject to withholding on account of Tax) as a result of the sale of any Property; all amounts payable to the mortgagee to discharge the Mortgage Lien on any Property; outstanding common charges payable in respect of such Property; and all costs, fees, expenses, and liabilities payable (other than to a Targeted Party or its Respective Agent) reasonably incurred in connection with the sale of such Property (including for the avoidance of doubt any fees payable to any title company and/or broker involved in the sale).

**Property Management Account** means the account currently being maintained by LM Property Management LLC at Wells Fargo (ending in 4156) over which Avenir and Rozhkov shall exercise joint control as set forth in Clause 3.5.4 of the Settlement Agreement.

**Service Charges** has the meaning given to that term in Clause 4.2.1.

**Services** has the meaning given to that term in Clause 3.1.1.

**Settlement Agreement** means the Settlement Agreement entered into on or about the date of this Agreement by, among others, Rozhkov, Markus, and the Companies in connection with the US Bankruptcy Proceedings and certain other proceedings.

**Tenants** means the lessees from time to time of the Properties.

**US Bankruptcy Proceedings** means the proceedings in Case No. 19-10096 (MG), *In re Larisa Markus, as Debtor in a Foreign Proceeding*, pending in the US Bankruptcy Court for the Southern District of New York, commenced under Chapter 15 of the Bankruptcy Code in connection with the Russian Insolvency Proceedings.

1.1.2   Words and expressions defined in the Settlement Agreement shall have the same meanings in this Agreement unless they are expressly defined otherwise in this Agreement.

**1.2    Construction**

1.2.1   The principles of construction set out in Clause 1 (*Definitions and Interpretation*) of the Settlement Agreement shall apply to this Agreement as if set out fully herein, *mutatis mutandis* (including in particular that any reference to the Settlement Agreement or any part thereof shall be construed respectively as a reference to this Agreement or to the corresponding or most closely equivalent part (if any) of this Agreement).

1.2.2   The recitals to this Agreement form part of this Agreement.

1.2.3   Unless a contrary intention appears, any reference in this Agreement to this **Agreement** is a reference to this Agreement as amended, varied, supplemented and replaced from time to time.

**2       Effectiveness of this Agreement**

**2.1    Approval of this Agreement**

The Parties acknowledge that, in the course of obtaining the Approval as further described in clause 3.1(a) of the Settlement Agreement:

(a)   this Agreement will be disclosed to the US Bankruptcy Court and the consent of the US Bankruptcy Court to the Parties' entry into this Agreement will be sought; and

(b)   the engagement of Avenir by Rozhkov pursuant to this Agreement (including the payment obligations of Rozhkov to Avenir hereunder) will be disclosed to the Russian Bankruptcy Court.

**2.2    Effectiveness of this Agreement**

Other than Clause 1, this Clause 2 and Clauses 7 through 18, no part of this Agreement shall enter into force until and unless the Approval has been obtained.

**3       Services to be Provided**

**3.1    Scope of Services**

3.1.1   Avenir shall render to Rozhkov the following services (the **Services**) in respect of the Properties and the Companies:

(a)   management, marketing and sale of the Properties;

(b)   administration of the Companies; and

(c)   dissolution of the Companies,

in each case as further described herein.

3.1.2   In carrying out the Services, Avenir shall:

(a)   act as agent of Rozhkov and as a fiduciary in the best interests of Rozhkov;

(b)   inform Rozhkov promptly of material developments concerning the Properties or the Companies;

Page 4

    (c)    comply with any lawful direction from Rozhkov or his Appointed Agent (if any, and as notified to Avenir from time to time) in relation to the performance of the Services; and

    (d)    comply with Applicable Laws.

3.1.3    Avenir shall not without the prior written consent of Rozhkov or the Appointed Agent engage any sub-contractor or agent to carry any part of the Services.

**3.2    Management, marketing and sale of the Properties**

3.2.1    Prior to the sale of any Property, Avenir shall manage and maintain each Property in a commercially reasonable manner, and in particular shall unless otherwise instructed by Rozhkov or the Appointed Agent in writing:

    (a)    ensure that pending its sale each Property is maintained in good repair, at the relevant Company's expense;

    (b)    engage, at the relevant Company's expense, and supervise specialist contractors (such as plumbers, electricians, HVAC technicians, handymen and so forth) on an as-needed basis to enable Avenir to manage, operate and maintain each Property, provided that Avenir shall obtain Rozhkov's or the Appointed Agent's prior written consent for any such expenses that exceed $500 (five hundred dollars);

    (c)    deal with the Tenant(s) of each Property on behalf of the Company, and without prejudice to the generality of the foregoing, timely invoice all Tenants and use commercially reasonable efforts, at such Company's expense, to collect all rent and other charges due and payable from any Tenant or from others for services provided in connection with each Property in the Property Management Account;

    (d)    represent the interests of the relevant Company before the board of managers and other unit owners of the building where each Property is located and, at the Company's expense, engage any third parties (including, without limitation, attorneys) to assist in such representation;

    (e)    ensure that each Company, at such Company's expense, timely pays the common charges, Taxes, and other fees and expenses assessed by the board of managers of the building where such Company's Property is located (provided, that the Parties acknowledge that certain such expenses are in arrears as set forth in the Settlement Agreement, and it is expressly understood by the Parties that it shall not be deemed a breach of this Agreement if the relevant creditor applies any future payments of current charges to arrears rather than to the current charges to which such payments are directed);

    (f)    furnish each Company (with a copy to the Appointed Agent) monthly with a statement of cash receipts, repair & maintenance, improvement and other expenses and disbursements from the operation of each Property;

    (g)    not extend or renew the term of lease of any Tenant without prior written consent of Rozhkov or the Appointed Agent;

    (h)    as may be requested by Rozhkov or the Appointed Agent from time to rime, use commercially reasonable efforts to obtain new tenants for a vacant Property at prevailing market rates, it being understood that if and to the extent that this involves

        retention of a broker or other third party, the payment of any fees to such broker or third party shall be deemed a Company expense;

(i)    obtain and verify bills for Taxes assessed in relation to the Properties (including real estate and personal property taxes, general and special real property assessments and other like charges) which are, or may become, liens against each Property and procure the payment (at the Company's expense) or appeal such Taxes as Avenir may decide, in its reasonable judgment, to be prudent and, to the extent this involves the retention of an attorney or any other third party and/or the incurrence of any out-of-pocket expense, the fees paid to such attorney or third party and the incurrence of any such out-of-pocket expense shall be deemed a Company expense, provided that Avenir has first obtained Rozhkov's consent to such retention of an attorney or other third party and/or the incurrence of such expenses;

(j)    maintain at its office or electronically (on a cloud-based server or otherwise) orderly files containing rent records, insurance policies, leases and subleases, correspondence, receipted bills and vouchers, debit and credit memos, and all other documents and papers pertaining to each Property or the operation thereof; and such files shall be readily accessible during normal business hours to each Company, Rozhkov and the Appointed Agent;

(k)    retain or obtain information about each Property necessary for the preparation and filing by each Company of its income or other tax returns required by any governmental authority, including annual statements;

(l)    consider and record Tenant service requests in systematic fashion showing the action taken with respect to each;

(m)    check all bills received for the services, work and supplies ordered in connection with maintaining and operating each Property and, at the Company's expense, procure the payment of such bills when due and payable;

(n)    not knowingly permit the use of any Property for any purpose that might void any policy of insurance held by any Company or that might render any loss thereunder uncollectible;

(o)    at the relevant Company's expense, obtain and keep in force adequate insurance against physical damage and against liability for loss, damage or injury to property or persons that might arise out of the occupancy, management, operation or maintenance of each Property. Such insurance shall be obtained for the relevant Company and shall specify the relevant Company (and any mortgagee of such Property, to the extent required by the terms of the applicable mortgage) as a named insured; and

(p)    retain copies of all records relating to any Property, which for the avoidance of doubt shall be the property of the relevant Company and shall be made available to such Company, Rozhkov and/or the Appointed Agent upon request.

3.2.2    Unless otherwise agreed to by the parties in writing, Avenir shall engage Elliot Bogod of A&I Broadway Realty Inc. as broker on an exclusive basis for a term of six (6) months (commencing upon the granting of the Approval) for the marketing and sale of the Properties, subject to a maximum commission being payable out of the proceeds of any sale of such Property to such broker in an amount not to exceed six (6) percent of the sales price achieved

for the relevant Property. Avenir shall not extend the term of such engagement or engage any other broker without the prior written approval of Rozhkov or the Appointed Agent. Consistent with Clause 12, nothing herein shall be deemed to imply that Elliot Bogod and/or A&I Broadway Realty Inc. are third party beneficiaries of this Agreement.

3.2.3   Where this Clause 3.2 expressly provides that Avenir's actions shall be taken at a Company's expense (e.g. to defray the actual costs, expenses, taxes, commissions and fees payable from time to time to third parties in connection with the maintenance, marketing and sale of the Properties), such expenses shall be covered by the funds currently available to each Company in the Property Management Account (including the currently available income from rental of the Properties and any further income from rental of the Properties available to each Company from time to time). If there are insufficient funds in the Property Management Account to cover the expense, then:

   (a)   Avenir shall notify Rozhkov and/or Rozhkov's Appointed Agent at least five (5) Business Days prior to the due date for payment of such expense (or, if such expense must be paid in less than five (5) Business Days then as early as practicable); and

   (b)   Rozhkov shall cause the relevant invoice to be paid out of the Client Account (or if there are insufficient funds in the Client Account to cover such expenses, then such sums shall be paid by Rozhkov and/or his Appointed Agent).

   For the avoidance of doubt, all such expenses (regardless of whether paid from the Property Management Account, Client Account or from another account of Rozhkov or the Appointed Agent) shall be deemed part of the Property & Closing Expenses and (without double counting) shall be deductible for the purposes of calculating the amount of the Proceeds Transfer.

3.2.4   During the period between the Approval and the sale of each Property, Avenir shall notify Rozhkov in writing at least once per calendar month of the accrued and outstanding amounts of Property & Closing Expenses in respect of such Property.

3.2.5   If any use of the funds available in the Property Management Account in accordance with this Agreement requires the approval of the US Bankruptcy Court, the Parties agree to use their respective best efforts to obtain such approval.

**3.3   Administration of the Companies**

3.3.1   In regard to each Company, Avenir shall:

   (a)   manage and control the conduct of the business of each Company in accordance with its articles of incorporation, including but not limited to ensuring that all requirements of Applicable Laws and of the Company's articles of incorporation are complied with;

   (b)   maintain the due existence and good standing of each Company;

   (c)   prepare financial statements of each Company required under Applicable Laws;

   (d)   be authorized to sign and file all and any Tax returns, formal applications and forms on behalf of each Company subject to such instructions and/or restrictions as may have been agreed upon by Rozhkov or the Appointed Agent;

    (e)    keep custody of each Company's books and records as prescribed in accordance with the Applicable Laws; and

    (f)    represent the interests of each Company in routine matters involving Governmental Authorities (but not, for the avoidance of doubt, in relation to the US Bankruptcy Proceedings or the VPB US Proceedings).

3.3.2    It is agreed that:

    (a)    Avenir shall have joint signature authority over the Property Management Account. However, Avenir shall obtain the prior consent of Rozhkov for any payment or withdrawal from the Property Management Account (alone or as part of any series of related transactions) (i) exceeds $500 (five hundred dollars) and is made in the ordinary course of business of the Company; or (ii) is in any amount and is made other than in the ordinary course of business of the Company. Notwithstanding the foregoing, in the instance that Avenir needs to take urgent action in the fulfillment of its obligation under this Agreement and Rozhkov and/or his Appointed Agent do not respond within the time necessary to perform such action, Avenir may take such action even if it involves incurring an expense in excess of $500.00.

    (b)    Rozhkov and/or his Appointed Agent shall respond expeditiously to any request that Avenir has with respect to management of the Properties including, without limitation, requests to pay expenses in excess of $500.00. The Parties acknowledge that Rozhkov shall have the final say on issues relating to the marketing of, sales price of, and acceptance or refusal of any offer to buy, each Property (save with respect to the Foreclosed Property in the event it is sold in a foreclosure sale). Rozhkhov agrees to use reasonable efforts to act diligently in selling each Property with the goal of maximizing the sale price achieved, but for the avoidance of doubt he shall not owe any fiduciary duty to any Targeted Party or Avenir.

### 3.4    Dissolution of the Companies

3.4.1    Following each completion of the sale of a Property by a Company, Avenir shall take all actions necessary to:

    (a)    settle at its expense all outstanding liabilities for Taxes and liabilities to third parties (if any) of such Company, other than the Property & Closing Expenses and expenses, which shall be paid as described in Clause 3.4(e) of the Settlement Agreement (nothing herein shall require Avenir to be responsible for any expense relating to any service performed under this Agreement which is performed at the Company's expense);

    (b)    defend (or, with Rozhkov's prior consent, settle at its own expense) any Claim by a third party against such Company (other than a Claim for payment of Property & Closing Expenses),

and Avenir shall additionally take all actions at its expense necessary to:

    (c)    prepare the final accounts for such Company; and

    (d)    cause the dissolution of such Company.

3.4.2    Avenir's agreement to bear certain costs, expenses and liabilities under Clause 3.4.1 shall not be construed to prejudice any right that it may have to claim contribution against Bykov in

relation to the same insofar he has also agreed in the Settlement Agreement to bear the same. For the avoidance of any doubt, any obligation to be performed under this Agreement or the Settlement Agreement by Bykov shall be deemed to have been performed if such obligation is performed by Avenir and any obligation to be performed under this Agreement or the Settlement Agreement by Avenir shall be deemed to have been performed if such obligation is performed by Bykov.

## 4 Service Charges and Payment

### 4.1 Entitlement to Service Charges

4.1.1 On and subject to the other terms of this Clause 4 and subject to Clause 5, in consideration of the provision of the Services Avenir shall be entitled to be paid Service Charges by Rozhkov (as further described in Clause 4.2) in relation to the following transfers of proceeds relating to the disposition of the Properties and the dissolution of the Companies (each a **Proceeds Transfer**):

(a) the net proceeds (after payment of (i) the Property & Closing Expenses, and (ii) any Taxes payable by Rozhkov in connection with the transfer of all right, title and interest in the Companies pursuant to Clause 3.5.3 of the Settlement Agreement (but without double-counting) from the sale of any Property (provided that each Company retains sufficient funds to discharge all of its other Liabilities); and

(b) (without double-counting any amount captured by sub-clause (a) above) the net amount (after payment of (i) the Property & Closing Expenses, and (ii) any Taxes payable by Rozhkov in connection with the transfer of all right, title and interest in the Companies pursuant to Clause 3.5.3 of the Settlement Agreement (but without double-counting), and provided that each Company has paid, or retains sufficient funds to discharge, all of its other Liabilities) of any dividend or distribution by any Company (including upon its liquidation).

### 4.2 Service Charges amount

4.2.1 Subject to Clause 4.2.2, the amount of the service charges payable by Rozhkov to Avenir from time to time for rendering by Avenir of the Services shall be an amount equal to ten per cent (10%) of each Proceeds Transfer (net of any Bank Charges) (the **Service Charges**), less the amount of $100,000 (one hundred thousand dollars), which shall be deducted from the amount of the first Services Charge (or if the net amount of such first Services Charge is less than $100,000, then to the fullest extent possible from that first Services Charge with the remaining balance being deducted from the next subsequent Services Charge(s)).

4.2.2 The Parties agree that the aggregate amount of the Services Charges payable to Avenir with respect to all Proceeds Transfers shall not in any event exceed the equivalent of $2,900,000 (two million nine hundred thousand dollars).

### 4.3 Service Charges statement

4.3.1 On the date when any Proceeds Transfer is transferred to the Markus Russian BK Estate, Rozhkov shall notify Avenir of:

(a) the amount (net of Bank Charges) of the Proceeds Transfer that is being transferred to the Markus Russian BK Estate; and

Page 9

  (b)  the Service Charges payable to Avenir in respect of such Proceeds Transfer.

Absent manifest error, Rozhkov's determination of the Service Charges payable in respect of any Proceeds Transfer shall be final and binding.

**4.4 Payment of Service Charges**

Each Service Charge payable in respect of a Proceeds Transfer pursuant to this Agreement shall be payable by Rozhkov to Avenir simultaneously with the corresponding transfer of any Proceeds Transfer to the Markus Russian BK Estate upon approval of the same by the US Bankruptcy Court.

**4.5 Currency of Service Charges**

The Service Charges shall be payable to Avenir in US dollars.

**4.6 Exclusions from Service Charges**

If Bykov (or any other Targeted Party) materially breaches his (its) obligations under the US Settlement Agreement and fails to cure such breach (if it is susceptible of being cured) within ten (10) Business Days of a written demand to do so being delivered by Rozhkov (or the Appointed Agent on his behalf) to Bykov in accordance with the US Settlement Agreement), then Rozhkov (or his Appointed Agent) shall have the right to suspend payments of any Services Charges due to be paid to Avenir in respect of any Proceeds Transfer under this Agreement pending resolution by the U.S. Bankruptcy Court of any claim by Rozhkov in respect of such breach. If the US Bankruptcy Court determines that any monies are payable to the Prosecuting Parties or either of them as a result of the breach by Bykov (or any other Targeted Party) of his (its) obligations under the US Settlement Agreement, then the amount found to be due and owing to the Prosecuting Parties shall be deducted from the Services Charges otherwise payable to Avenir under this Agreement. If the US Bankruptcy Court determines that Bykov (or any other Targeted Party) did not materially breach any of his (its) obligations under the US Settlement Agreement and/or that no monies are payable to the Prosecuting Parties as a result of such breach, Rozhkov (or his Appointed Agent) shall release the suspended payments of the Services Charges due to be paid to Avenir under this Agreement within ten (10) Business Days of the relevant decision of the US Bankruptcy Court. Nothing herein shall be deemed a waiver of any Parties' right to appeal such a decision concerning the alleged breach.

**5 Return of Service Charges**

If any Proceeds Transfer is challenged in a court of applicable jurisdiction with the result that such court orders that the Proceeds Transfer (or any part thereof) is required to be returned from the Markus Russian BK Estate, Avenir shall pay to Rozhkov an amount equal to the amount of Service Charges which it has received with respect to such Proceeds Transfer (or the relevant part thereof).

**6 Representations and Warranties**

6.1 Avenir represents and warrants to Rozhkov that as of the date of this Agreement each of the following statements is true and accurate and not misleading and will remain true and accurate and not misleading as of the date of the Approval:

(a) it is duly organised and in good standing under the laws of its jurisdiction of incorporation;

(b) it has the right, power and authority to execute (including as applicable by the person purporting to sign this Agreement on its behalf), deliver and exercise its rights, and perform its obligations, under this Agreement (having regard for Clause 2.2 which provides that certain provisions of this Agreement only enter into force when and if the Approval has been obtained);

(c) it has received all authorizations and all consents, licenses, waivers, or exemptions, and has given all notices, required by Applicable Law or the usual practice of any Governmental Authority or its constitutional documents in order to enter into and perform its obligations under this Agreement (having regard for Clause 2.2 which provides that certain provisions of this Agreement only enter into force when and if the Approval has been obtained);

(d) upon execution and delivery of this Agreement by both Parties hereto, this Agreement shall constitute valid and binding obligations of Avenir, which are enforceable in accordance with their terms (having regard for Clause 2.2 which provides that certain provisions of this Agreement only enter into force when and if the Approval has been obtained);

(e) compliance with the terms of this Agreement shall not breach or constitute a default under (i) any agreement or instrument to which Avenir is a party or by which it is bound; or (ii) any order, judgment, decree or other restriction applicable to Avenir; and

(f) it is not insolvent or unable to pay its debts within the meaning of the insolvency legislation applicable to it, nor has it stopped paying its debts as they fall due, nor has any process been instituted which could lead to it being dissolved and its assets being distributed among its creditors, shareholders or other contributors.

6.2 Rozhkov represents and warrants to Avenir that as of the date of this Agreement each of the following statement is true accurate and not misleading and will remain true and accurate and not misleading as of the date of the Approval:

(a) he has the right, power and authority, to execute, deliver and exercise his rights, and perform his obligations, under this Agreement (having regard for Clause 2.2 which provides that certain provisions of this Agreement only enter into force when and if the Approval has been obtained);

(b) he has received all authorizations and all consents, licenses, waivers, or exemptions required by Applicable Law or the usual practice of any Governmental Authority in order to enter into and perform his obligations under this Agreement (having regard for Clause 2.2 which provides that certain provisions of this Agreement only enter into force when and if the Approval has been obtained);

(c) he has been duly appointed as the trustee of Markus in the Russian Insolvency Proceedings;

(d) upon execution and delivery of this Agreement by all Parties hereto, this Agreement shall constitute valid and binding obligations on Rozhkov which are enforceable in accordance with their terms (having regard for Clause 2.2 which provides that certain

provisions of this Agreement only enter into force when and if the Approval has been obtained); and

(e) compliance with the terms of this Agreement shall not breach or constitute a default under (i) any agreement or instrument to which Rozhkov is a party or by which Rozhkov is bound; or (ii) any order, judgment, decree or other restriction applicable to Rozhkov (having regard for Clause 2.2 which provides that certain provisions of this Agreement only enter into force when and if the Approval has been obtained).

## 7 Confidentiality

### 7.1 No announcements without agreement

Save as required by law or with the prior written consent of Rozhkov (such consent not to be unreasonably withheld or delayed) Avenir shall not make any statement or announcement of any nature relating to the subject matter of or to the transactions referred to in this Agreement.

### 7.2 Confidentiality obligations

(a) Subject to Clause 7.2(b), each Party shall at all times to keep confidential the terms of this Agreement and shall keep confidential and not use any confidential information which it has acquired from any other Party as part of this Agreement, save for any information:

   (i) which is publicly available or becomes publicly available otherwise than as a result of a breach of this Clause 7.2;

   (ii) which is disclosed to such Party by a third party which did not acquire the information under an obligation of confidentiality;

   (iii) which is required to be disclosed in connection with the Russian Insolvency Proceedings, the VPB Russian Proceedings, the US Bankruptcy Proceedings, the Adversary Proceedings, the VPB US Proceedings or any other legal proceedings under this Agreement or the Settlement Agreement; or

   (iv) which is required to be disclosed by Applicable Law, provided that to the extent permitted by Applicable Law the Party required to make such disclosure shall first inform the other Party.

(b) Notwithstanding Clause 7.2(a), Rozhkov may disclose confidential information to DIA and/or the Appointed Agent, provided that DIA and/or the Appointed Agent (as applicable) is first bound by an equivalent duty of confidentiality.

(c) The Parties shall submit this Agreement to the US Bankruptcy Court under provisional seal for the US Bankruptcy Court's review, and shall petition the US Bankruptcy Court to keep this Agreement (or as much of its contents as the US Bankruptcy Court will allow) under seal. If this Agreement is required to be publicly filed then, without prejudice to Clause 7.1, it will no longer be confidential. If a portion of the Agreement is required to publicly filed then the remaining portions of the Agreement shall remain confidential.

    (d)    Neither Party shall use any confidential information acquired in relation to the other Party pursuant to the performance of this Agreement for any purpose other than to carry out the transactions contemplated by this Agreement, without the prior consent in writing of that Party.

    (e)    In the instance that this Agreement and/or any of its contents must be produced as a result of a legal order or because of a subpoena, the receiving Party shall notify the other Party by email promptly upon receipt of same.  Under no circumstances shall the receiving Party be required to take any action to prevent disclosure of the same and absent an order obtained by any other Party preventing such disclosure, such disclosure will occur.

### 7.3   Duration of confidentiality obligations

The obligations in this Clause shall continue to apply after termination of this Agreement and after any Party has ceased to be party to this Agreement without limit in time.

## 8   Relationship Between the Parties

8.1   The relationship between the parties is one of agent (Avenir) and principal (Rozhkov). Nothing in this Agreement, and no action taken under this Agreement, shall create a partnership between any of the Parties or otherwise authorise either Party to bind the other Party for any purpose.

## 9   Entire Agreement and Severance

### 9.1   Entire agreement

This Agreement together with the documents referred to in it (including in particular the Settlement Agreement) sets out the entire agreement between the Parties, and supersedes any previous agreement between them, in relation to the subject matter of this Agreement.

### 9.2   Severance

If any provision of this Agreement or any part thereof is rendered void, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

## 10   Amendments

This Agreement may not be changed, altered, waived or terminated without the written consent of the Parties.

## 11   Assignment

11.1   Avenir may not assign its rights or purport to assign, transfer or novate its obligations under this Agreement without the written consent of Rozhkov.

11.2   Rozhkov may assign his rights and/or novate his obligations under this Agreement to any successor trustee of Markus that is appointed by the Russian Bankruptcy Court.  For the avoidance of any doubt, any such assignee or transferee will continue to be obligated to perform all the obligations and will enjoy all the rights that Rozhkov has under this Agreement.

**12   Third Party Rights**

The Parties do not intend that any term of this Agreement shall be enforceable by any person who is not a party to this Agreement. The Parties may rescind, vary, waive, release, assign, novate or otherwise dispose of all or any of their respective rights or obligations under this Agreement without the consent of any person who is not a party to this Agreement.

**13   Costs**

Except where this Agreement provides otherwise, each Party shall pay its own costs relating to the negotiation, preparation, execution and performance by it of this Agreement and each other document related thereto or referred to therein.

**14   Effect of Termination**

Termination of this Agreement shall not affect:

(a)   rights and obligations in respect of antecedent breaches of this Agreement; and

(b)   rights and obligations under any transfer act that has been executed and delivered by the parties thereto.

**15   Notices**

**15.1   Service**

Any notice or other communication to be given by one Party to the other Party under, or in connection with, this Agreement shall be in writing and signed by or on behalf of the Party giving it and shall be made by email (sent simultaneously to the email addresses set forth for such receiving party in 15.3). If desired, the Party giving the notice may (and shall, in the event it receives an automated message of delivery failure as described in Clause 15.2) also do so by personal delivery or express courier delivery (such as FedEx or DHL).

**15.2   Receipt**

Any such notice or other communication shall be addressed as provided in Clause 15.3 and, if so addressed, shall be deemed to have been duly given or made at the time that the email is delivered to the recipient's email server (and provided that such server does not return an automated message that delivery has failed). In the instance that an automated message of delivery failure is received, then such notice or other communication shall be deemed to have been given (a) in the case of personal delivery, at the time of personal delivery or (b) in the case of express courier delivery, at the time the express courier delivery service records the notice of other communication as having been delivered provided, however, in each case that if the notice would thereby be deemed to have been duly made or given on a day that is not a Business Day or after 5:30 p.m. (local time of the addressee) on a Business Day, such notice shall instead be deemed to have been given or made at 9:30 a.m. (local time of the recipient) on the next successive Business Day.

**15.3   Addresses**

The addresses and email addresses of the Parties for the purpose of this Clause 15 are as follows:

<u>for Rozhkov</u>:
Mr. Yuri Rozhkov
Address: 123104, Russian Federation, Moscow, Malaya Bronnaya street, 20 bld. 2, entrance 3
Email: RozhkovYV@yandex.ru

<u>for Avenir</u>:

For the attention of: Avenir c/o The Law Offices of Daniel A. Singer PLLC
Address: 630 Third Avenue, 18th Floor, New York, New York 10017
Email: avenirrealtyllc@gmail.com; info@dasingerlaw.com

**15.4**   **Change of addresses**

A Party may notify the other Party to this Agreement of a change to its name, relevant addressee, address or email address for the purposes of this Clause 15 provided that such notification shall only be effective on:

(a)   the date specified in the notification as the date on which the change is to take place; or

(b)   if no date is specified as the date on which the change is to take place or the date specified is less than 5 (five) Business Days after the date on which notice is given, the date falling 5 (five) Business Days after notice of any such change has been given.

**16**   **Governing Law and Jurisdiction**

**16.1**   **Governing law**

This Agreement (including any contractual or non-contractual dispute or claim arising out of it) shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of laws provisions.

**16.2**   **Jurisdiction**

Each Party irrevocably agrees that the exclusive jurisdiction for the resolution of any disputes arising out of this Agreement is the U.S. Bankruptcy Court for the Southern District of New York and such court shall hear and decide any suit, action or proceedings that may arise out of or in connection with this Agreement unless the US Bankruptcy Court for the Southern District of New York declines to exercise such jurisdiction in which case the matter shall be adjudicated in a New York State court of applicable jurisdiction and such New York State court shall have exclusive jurisdiction over same.

**16.3**   **Service agent**

(a)   Avenir hereby irrevocably appoints Mr. Daniel A. Singer, Esq. to be its agent for the receipt of any pleadings, submissions, applications, notices, orders or judgments or other documents relating to any Proceedings initiated pursuant to Clause 16.2 or otherwise in connection with such Proceedings (in this Clause 16.3, **Service Documents**). Not later than within 30 days of the date of this Agreement, Rozhkov shall notify Avenir of the identity and address (within the Borough of Manhattan) of

      the person appointed as its agent for purposes of this Clause 16.3, and, in the interim, such agent shall be Rozhkov's Counsel.

(b)     Each Party agrees that Service Documents may be effectively served on it in connection with Proceedings in New York by service on its agent effected by (i) by email (and in the case of Singer, such email address is info@dasingerlaw.com) and (ii) in any manner permitted by the New York CPLR.

(c)     Each Party agrees that failure by the agent to notify the relevant Party of the process will not invalidate the Proceedings concerned.

(d)     If an agent does not accept its appointment pursuant to Clause 16.3(a) or at any time ceases for any reason to act as agent for any Party, such Party shall immediately (and in any event within fourteen (14) days of such event taking place) appoint a replacement agent having an address for service in the borough of Manhattan of the City of New York and shall notify the other Party of the name and address of the replacement agent. The provisions of this Clause 16.3 applying to service on an agent apply equally to service on a replacement agent.

(e)     Until the affected Party notifies the other Party of a change in its agent or in the address of its agent, any Party may effectively serve any Service Document on the affected Party by service to the last known agent at the last known address notified to that Party by the affected Party notwithstanding that such agent is no longer found at such address or has ceased to act.

## 17   Language

This Agreement is executed in the English language. All notices, demands, requests, statements, certificates or other documents or communications shall be in English unless otherwise agreed by the Parties. Any translation of this Agreement into the Russian or any other language shall be for informational purposes only. In the event of any discrepancies between the English text and the Russian or any other text of this Agreement or any dispute regarding the interpretation of any provision in such texts, the English text of this Agreement shall prevail and questions of interpretation shall be addressed solely in the English language.

## 18   Counterparts

This Agreement may be executed in any number of counterparts, each of which when executed and delivered constitutes an original of this Agreement, but all the counterparts shall together constitute one and the same agreement. No counterpart shall be effective until each Party has executed at least one counterpart.

**Executed** and delivered on the date appearing at the beginning of this document.

**SIGNATURE PAGE TO SERVICES AGREEMENT**

Executed by **YURI VLADIMIROVICH ROZHKOV**
(as trustee and foreign representative of Larisa Markus)

_____

Executed by **AVENIR REALTY INC**
acting by

_____
name:
title:

## SIGNATURE PAGE TO SERVICES AGREEMENT

Executed by **YURI VLADIMIROVICH ROZHKOV**
(as trustee and foreign representative of Larisa Markus)

_____

Executed by **AVENIR REALTY INC**
acting by

_____
name: *[signature]* Yevgeny Okun
title: Secretary